Brian H. Polovoy
Henry Weisburg
Paula Howell
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
bpolovoy@shearman.com

Attorneys for Respondent
GTI S.A.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                                :

| | |
|---|---|
| MatlinPatterson Global Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners (Cayman) II L.P., and Volo Logistics LLC, | : <br> : <br> : <br> : <br> : <br> : |
| Petitioners, | :   No. 08 CV 4697 (RJH) <br> : |
| v. | :   ECF Case <br> : |
| GTI S.A. and The ICC International Court of Arbitration of the International Chamber of Commerce, | : <br> : <br> : <br> : |
| Respondents. | : <br> : |

----------------------------------------------------------x

## NOTICE OF FILING OF RECORDS AND PROCEEDINGS

        Pursuant to Rule 81.1 of the Local Civil Rules of the United States District Court

for the Southern District of New York, respondent GTI S.A. ("GTI") files herewith a true and

correct copy of all records and proceedings in the Supreme Court of the State of New York, New York County, from which this action was removed by Notice of Removal, dated May 19, 2008.

1.      Attached hereto as Exhibit A is a true and correct copy of the Petition to Stay Arbitration Pursuant to Article 75 of the CPLR, dated April 17, 2008.

2.      Attached hereto as Exhibit B is a true and correct copy of the proposed Order to Show Cause, which is undated.

3.      Attached hereto as Exhibit C is a true and correct copy of the Affidavit of Lawrence M. Teitelbaum in Support of Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction and Petition to Stay Arbitration Pursuant to Article 75 of the CPLR, with exhibits attached thereto, dated April 17, 2008.

4.      Attached hereto as Exhibit D is a true and correct copy of the Order approving petitioners' withdrawal of their proposed Order to Show Cause, entered April 23, 2008.

5.      Attached hereto as Exhibit E is a true and correct copy of the Notice of Petition, dated May 9, 2008.

6.      Attached hereto as Exhibit F is a true and correct copy of the Notice of Motion for Preliminary Injunction, dated May 9, 2008.

7.      Attached hereto as Exhibit G is a true and correct copy of the Affirmation of David A. Shargel in Support of Preliminary Injunction, dated May 8, 2008.

8.      Attached hereto as Exhibit H is a true and correct copy of the Memorandum of Law in Support of Motion for a Preliminary Injunction Pending Determination of Petition to Stay Arbitration, dated May 8, 2008.

9.      Attached hereto as Exhibit I is a true and correct copy of the Affidavit of Service of the Notice of Petition, Petition to Stay Arbitration Pursuant to Article 75 of the CPLR, and Affidavit of Lawrence M. Teitelbaum in Support of Temporary Restraining Order on Alfredo C. Flores, Law clerk, dated May 9, 2008.

10.     Attached hereto as Exhibit J is a true and correct copy of the Affidavit of Service of the Notice of Motion for Preliminary Injunction, Affirmation of David A. Shargel in Support, Memo of Law in Support, and Affidavit of Lawrence M. Teitelbaum in Support of Temporary Restraining Order on Tony Garcia, Office services, dated May 9, 2008.

11.     Attached hereto as Exhibit K is a true and correct copy of the Notice of Removal to the United States District Court for the Southern District of New York, dated May 20, 2008.

GTI has not been served with process in this matter.  The filing of this notice and the exhibits attached hereto shall not be deemed or construed to constitute a waiver of any defenses available to GTI.


Dated:      New York, New York
            June 5, 2008


                              SHEARMAN & STERLING LLP


                              By: /s/ Brian H. Polovoy
                                  Brian H. Polovoy
                                  Henry Weisburg
                                  Paula Howell

                              599 Lexington Avenue
                              New York, NY 10022-6069
                              Telephone: (212) 848-4000
                              Facsimile: (212) 848-7179
                              bpolovoy@shearman.com

                              Attorneys for Respondent
                              GTI S.A.

At the Ex-Parte Office at the
Supreme Court of the State of
New York, held in and for the
County of New York on the ___
day of April, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of the application of MatlinPatterson
Global Opportunities Partners II L.P., MatlinPatterson
Global Opportunities Partners (Cayman) II L.P. and
Volo Logistics LLC for a temporary restraining order
and preliminary injunction in the special proceeding
pending in the Supreme Court of the State of New
York, County of New York entitled:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                              Petitioners,

            v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                              Respondents.

Index No.

**PETITION TO STAY
ARBITRATION
PURSUANT TO
ARTICLE 75 OF THE CPLR**

          Petitioners MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson

Global Opportunities Partners (Cayman) II L.P. (together, the "MP Funds") and Volo

Logistics LLC ("Volo") (together, the MP Funds and Volo shall be referred to as

"petitioners"), by their attorneys, Bracewell & Giuliani LLP, for their Petition to Stay

Arbitration, hereby allege as follows:

## INTRODUCTION

1.      On or about March 28, 2007, Respondent GTI S.A. ("GTI"), Varig Logistica S.A. ("VarigLog") and Volo do Brasil S.A. ("VDB") executed a Purchase and Sale Agreement (the "Agreement") pursuant to which VarigLog and VDB agreed to sell to GTI all of their shares of VRG Linhas Aereas S.A. ("VRG"), a Brazilian passenger airline.

2.      The Agreement was signed by VarigLog, VDB, VRG, GTI and GTI's parent company, Gol Linhas Aereas Inteligentes S.A. ("GOL").  (A true and correct copy of the Agreement, as translated from Portuguese, is attached as Exhibit ("Ex.") A).[1]

3.      Petitioners MP Funds and Volo were not signatories to the Agreement.

4.      Months after the Agreement was executed, a dispute allegedly arose among GTI, VarigLog and VDB concerning certain post-closing adjustments.  GTI thus commenced an arbitration in Sao Paulo, Brazil, under the auspices of Respondent ICC International Court of Arbitration ("ICC"), Arbitration No. 15372/JRF (the "Arbitration").  (A true and correct copy of GTI's Request for Arbitration, as translated from Portuguese, is attached as Ex. B.)  GTI's Request for Arbitration names as respondents not only VarigLog and VDB -- GTI's counterparties to the Agreement -- but also the MP Funds and Volo.  Petitioners, however, are not signatories to the Agreement, did not agree to be bound by the Agreement and did not agree to arbitrate (or be parties to) any dispute arising out of the Agreement.  Petitioners, therefore, are not proper parties to the Arbitration.

5.      Accordingly, pursuant to Article 75 of the New York Civil Practice Law and Rules ("CPLR"), petitioners request a stay of the Arbitration against them pending the resolution of this petition.

PARTIES

6.      Petitioner MatlinPatterson Global Opportunities Partners II L.P. is a limited partnership organized under the laws of the State of Delaware having its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York, 10022.

7.      Petitioner MatlinPatterson Global Opportunities Partners (Cayman) II L.P. is a limited partnership organized under the laws of the Cayman Islands having its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York, 10022.

8.      Petitioner Volo is a limited liability company organized under the laws of the State of Delaware having its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York, 10022.

9.      Upon information and belief, Respondent GTI is a Brazilian corporation having its principal place of business at Rua Tamoios, No. 246, Jardim Aeroporto, Sao Paulo, Brazil.

10.     Upon information and belief, Respondent ICC is an international organization with a New York office at 1212 Avenue of the Americas, New York, New York, 10036.

JURISDICTION AND VENUE

11.     This action arises under Article 75 of the CPLR and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

12.     Venue is proper in this county under CPLR § 7502(a)(ii).

---

[1] Exhibits A and B, referenced herein, are certified translations of the original Portuguese documents. The exhibits are attached to the Affidavit of Lawrence M. Teitelbaum that is being filed contemporaneously herewith.

## FACTS ENTITLING PETITIONER TO RELIEF

A.    The Relationship Among The Relevant Entities

13.    The MP Funds hold and invest certain investment capital of, *inter alia*, governmental institutions, universities, pension funds and other public and private entities and individuals. The MP Funds are advised by MatlinPatterson Global Advisers LLC ("MatlinPatterson").

14.    The MP Funds indirectly wholly own Volo as an investment subsidiary.

15.    At the time that GTI entered into the Agreement with VDB and VarigLog, Volo owned 60% of VDB's capital stock, but only 20% of VDB's voting stock. VDB, in turn, wholly-owned VarigLog. VarigLog owned more than 99% of VRG, and VDB owned the remainder of VRG.

B.    Petitioners Are Not Parties To The Agreement

16.    GTI has alleged that, in early 2007, it "was approached, in New York, by respondents [petitioners in this proceeding in New York], which presented them with an offer for GTI to purchase all shares of [VRG]." Ex. B ¶ 1. GTI has further alleged that, "[f]rom then on, all discussions, negotiations and meetings took place with the representatives of [petitioners] . . . ." Ex. B ¶ 1.

17.    On or about March 28, 2007, the negotiations culminated with the execution of the Agreement, pursuant to which VarigLog and VDB agreed to sell to GTI a collective total of 122,958,198 class A common shares, 30,739,549 class B common shares and 153,697,746 preferred shares of VRG in exchange for the Brazilian currency equivalent of $275 million. Ex. A. The signatories to the Agreement were VarigLog, VDB, VRG, GTI and GTI's parent company, GOL.

18.    Petitioners were not signatories to the Agreement.

19.  Among other things, the Agreement provided that a price adjustment be made within 180 days of the sale based upon an updated balance sheet of VRG that would be prepared by PriceWaterhouseCoopers ("PWC"). Ex. A, Clauses 5.1, 5.1.1. If there was a positive difference between the balance sheet prepared at the time of the Agreement and the updated balance sheet, GTI would pay the difference to VarigLog. Ex. A, Clause 5.2(a). Conversely, if there was a negative difference between the old and new balance sheets, the difference would be paid by VarigLog to GTI. Ex. A, Clause 5.2(b).

20.  GTI later sought from VarigLog and VDB a price adjustment pursuant to Clause 5.2 of the Agreement. That issue forms the basis for the Arbitration commenced by GTI before the ICC.

C.    GTI Files A Request For Arbitration

21.  The Agreement contains an arbitration clause that provides, among other things:

> Clause 14.1 -- All the disputes arising out of or related to this Agreement included, among others, those involving its validity, effectiveness, violation, interpretation, expiration, termination and related matters, shall be settled by arbitration pursuant to the provisions in Law 9307/96 ("Arbitration Law"), in accordance with the below stipulated conditions.
>
> Clause 14.2 -- The dispute shall be submitted to the CCI ("CCI"), pursuant to its Regulation ("Regulation") in effect on the date the arbitration request is filed. . . .
>
> Clause 14.6 -- This Agreement shall be construed and governed by the Brazilian laws, and the Arbitration Panel shall decide the dispute and litigation in accordance with the Brazilian laws, without taking into consideration any international private law rule which may cause the laws of any other country or jurisdiction than Brazil to be applicable.

22.  On or about December 27, 2007, GTI submitted its Request for Arbitration to the ICC. The Request for Arbitration alleges that, on March 28, 2007, VarigLog and VDB

"executed an Agreement with GTI whereby they sold the latter all VRG shares for the total price" of $275 million.  Ex. B ¶ 4.

      23.    The Request for Arbitration further alleges that "[v]arious controversial points emerged" with respect to the price adjustment, and thus requests that, "given the impossibility of making such price adjustment as contractually provided for," the ICC "settle the divergences between" the balance sheets and "determine the price adjustment amount provided for in [the Agreement]."  Ex. B ¶¶ 7, 10, 17.

      24.    The Request for Arbitration does not allege, nor could it, that the MP Funds or Volo were signatories to the Agreement.  Nevertheless, GTI named the MP Funds and Volo as respondents in the Arbitration.

D.    The MP Funds And Volo Object To Arbitration

      25.    The Arbitration is in its earliest stages.  Arbitrators have not yet been appointed or empanelled.

      26.    Petitioners have presented to the ICC an objection to being named as respondents to the Arbitration because they are not parties to the underlying Agreement.  The ICC, however, has deferred a decision on that issue until the arbitrators are appointed and, instead, has set a deadline of April 25, 2008, for petitioners to answer the Request for Arbitration.

      27.    With the date for answering the Request for Arbitration approaching, petitioners now seek to enjoin the Arbitration from proceeding as against them.

E.    The MP Funds And Volo Are Likely To Succeed On The Merits

      28.    Petitioners are not signatories to the Agreement.  GTI acknowledges as much.

29.     GTI has not, and cannot, allege facts sufficient to support a veil piercing or alter ego argument -- i.e., that the MP Funds and Volo were somehow the alter egos of VDB and VarigLog at the time the Agreement was executed.

30.     Indeed, in July 2007, Volo commenced litigations against VDB and VarigLog in Brazil, New York and Switzerland.  VDB and VarigLog have commenced numerous actions against Volo in Brazil.  Thus, far from being in control of VDB and VarigLog, Volo has been litigating against VarigLog and VDB in three separate countries, including an action that was filed in this Court based on VDB's and VarigLog's default on eight loans from Volo (and a related entity) totaling approximately $88 million.  See Volo v. VarigLog, Index No. 602536/07 (Honorable Richard B. Lowe III).

31.     There is simply no basis for the suggestion that the MP Funds and Volo, which controlled only 20% of the voting stock of VDB, somehow controlled VDB and VarigLog when they entered into the Agreement.

F.     Irreparable Injury To The MP Funds And Volo

32.     Petitioners are not parties to the Agreement and have never agreed to arbitrate any dispute with GTI relating to the Agreement.  Nevertheless, GTI named petitioners as parties to the Arbitration.

33.     In the absence of an immediate stay of the Arbitration, petitioners will suffer irreparable injury by having to incur the costs and expenses associated with participating in the Arbitration.  This burden would be exacerbated by the fact that the Arbitration will take place in Brazil, that every aspect of the arbitration is to be conducted in Portuguese, and that it will be governed by the laws of Brazil.  Ex. A, Clauses 14.3; 14.6.  Petitioners will not be able to recover the expenses or lost time and effort defending against GTI's claims in the Arbitration should this Court later stay the Arbitration as against petitioners.

34.    Petitioners, moreover, will suffer irreparable harm if they are required to proceed with the Arbitration in Brazil while this proceeding is pending. Petitioners' answers to the Request for Arbitration must be filed on or before April 25, 2008. If petitioners refuse or fail to file their answers, the ICC Rules of Arbitration provide that "the arbitration shall proceed notwithstanding such refusal or failure." See ICC Rules of Arbitration, Art. 6(3). Petitioners thus would risk entry of an unfavorable award by default. If, on the other hand, petitioners file answers, they may be deemed to have "participated in the arbitration" and thus may be precluded from obtaining a stay of arbitration from this Court. Petitioners should not be left with this "Catch 22."

G.    The Balance Of Hardships

35.    The balance of hardships weighs in petitioners' favor.

36.    As noted above, in the absence of an injunction, petitioners will be faced with two troubling alternatives: (a) file answers in the Arbitration (in which case they will not only incur costs and expenses that may not be recoverable at a later date, but may also be deemed to have "participated in the arbitration," rendering a stay from this Court unavailable under § 7503(b)), or (b) refuse to file answers in the Arbitration (in which case the arbitration will proceed without petitioners, leaving the prospect of having a default award entered against them).

37.    GTI, by contrast, will suffer no harm if the Court stays the Arbitration against petitioners. GTI may continue to pursue its claims against the actual signatories to the Agreement -- i.e., VarigLog and VDB. Or, alternatively, GTI may request that the Arbitration be stayed in its entirety pending this Court's determination of this petition for a permanent stay.

AS AND FOR PETITIONERS' CAUSE OF ACTION
(Stay Of Arbitration Under CPLR § 7503(b))

38.     Petitioners repeat and reallege each and every allegation in paragraphs 1 through 37 of this Petition.

39.     The MP Funds and Volo have never agreed, in writing or otherwise, to arbitrate any dispute with GTI related to the Agreement.

40.     Thus, no valid agreement exists between the MP Funds, Volo and GTI that would make petitioners proper parties to the Arbitration that GTI commenced before the ICC.

41.     As such, this Court should stay the Arbitration by GTI against the MP Funds or Volo.

WHEREFORE, Petitioners MP Funds and Volo demand a judgment against GTI, and seek an order:

(i)     Staying the Arbitration in its entirety pending the resolution of this Petition;

(ii)    Enjoining GTI, its agents, servants, officers, employees, and all those acting under its control and/or on its behalf and/or in connection with it, preliminarily and permanently, from pursuing the Arbitration with the MP Funds and Volo as respondents;

(iii)   Enjoining the ICC, its agents, servants, officers, employees, and all those acting under its control and/or on its behalf and/or in connection with it, preliminarily and permanently, from pursuing the Arbitration with the MP Funds and Volo as respondents;

(iv)    Granting petitioners their costs, disbursements, expenses and attorney's fees in this proceeding; and

(v)    Granting petitioners such other relief as this Court deems fair, just and proper.

Dated: New York, New York
      April 17, 2008

                                    Respectfully submitted,

                                    BRACEWELL & GIULIANI LLP

                                    By: _____

                                          Kenneth A. Caruso
                                          A Member of the Firm
                                  1177 Avenue of the Americas
                                  New York, New York  10036
                                  (212) 508-6100

                                  Attorneys for Petitioners

Of Counsel:
      Kenneth A. Caruso
      Jeffrey I. Wasserman
      Daniel S. Meyers

At the Ex-Parte Office at the
Supreme Court of the State of New
York, held in and for the County of
New York on the ___ day of
April, 2008

Present:_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of the application of MatlinPatterson
Global Opportunities Partners II L.P., MatlinPatterson
Global Opportunities Partners (Cayman) II L.P. and
Volo Logistics LLC for a temporary restraining order
and preliminary injunction in the special proceeding
pending in the Supreme Court of the State of New          Index No.
York, County of New York entitled:


MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL          **ORDER TO SHOW CAUSE**
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                              Petitioners,

              v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                              Respondents.

Upon the annexed affidavit of Lawrence M. Teitelbaum, sworn to on April 17, 2008, the

affirmation of David A. Shargel, sworn to on April 17, 2008, the Petition dated April 17, 2008

and upon all the papers, exhibits and proceedings herein, and good cause appearing therefore;

LET the respondents GTI S.A. ("GTI") and the ICC International Court of Arbitration

("ICC"), or their attorneys, show cause before this Court at the ex-parte motion term of the

Supreme Court of the State of New York, New York County, at the Courthouse, located at 60

Centre Street, New York, New York, 10007, on the ____ day of April, 2008, at ____ ___.M, or as

soon thereafter as counsel can be heard, why an order should not be made and entered herein,

pursuant to Article 75 of the CPLR, (1) preliminarily enjoining GTI and the ICC from

proceeding with an ICC arbitration, Ref. 15372/JRF, against petitioners; and (2) granting such

other relief as the Court deems fair, just and proper; and it is further

ORDERED that pending further order of this Court, GTI and the ICC are hereby

temporarily restrained, during the pendency of this proceeding, from taking any action to

proceed with an ICC arbitration, Ref. 15372/JRF, against petitioners; and it is further

ORDERED that service of a copy of this Order to Show Cause, together with the

underlying papers upon which it is granted, shall be deemed good and sufficient service if made

on or before April ___, 2008 at ___ ___.M, (1) upon GTI by (a) Federal Express (or other

overnight courier) at GTI S/A, Rua Tamoios, n 246, Jardim Aeroporto, CEP 04630-000, Sao

Paulo, Brazil (the address for GTI in its Request for Arbitration); and (2) upon the ICC, by hand

delivery, at the ICC's New York office at 1212 Avenue of the Americas, New York, New York,

10036; and it is further

ORDERED that answering papers, if any, be filed with this Court, and served by

electronic mail upon petitioners by serving their counsel, Bracewell & Giuliani LLP, 1177

Avenue of the Americas, New York, New York, 10036, attn: Jeffrey I. Wasserman

(jeffrey.wasserman@bgllp.com) on or before April ___, 2008 at ___ ___.M.; and it is further

ORDERED that reply papers, if any, be filed with this Court, and served by electronic

mail upon GTI or its attorneys and the ICC or its attorneys, to the same electronic mail addresses

from which GTI and the ICC served their answering papers, on or before April _____, 2008 at

___ __.M.; and it is further

ORDERED that oral argument shall be required on the return date of this motion.

ENTER,

_____
Justice of the Supreme Court

At the Ex-Parte Office at the
Supreme Court of the State of
New York, held in and for the
County of New York on the ___
day of April, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of the application of MatlinPatterson
Global Opportunities Partners II L.P., MatlinPatterson
Global Opportunities Partners (Cayman) II L.P. and
Volo Logistics LLC for a temporary restraining order
and preliminary injunction in the special proceeding
pending in the Supreme Court of the State of New
York, County of New York entitled:

Index No.

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

**AFFIDAVIT OF LAWRENCE
M. TEITELBAUM IN
SUPPORT OF TEMPORARY
RESTRAINING ORDER AND
ORDER TO SHOW CAUSE
FOR A PRELIMINARY
INJUNCTION AND
PETITION TO STAY
ARBITRATION
PURSUANT TO
ARTICLE 75 OF THE CPLR**

Petitioners,

v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

Respondents.

State of New York    )
                     ) s.s.
County of York       )

LAWRENCE M. TEITELBAUM, being duly sworn, deposes and says,

1.      I am the Chief Financial Officer of MatlinPatterson Global Advisers LLC

("MatlinPatterson").  MatlinPatterson serves as investment advisor to MatlinPatterson Global

Opportunities Partners II LP and MatlinPatterson Global Opportunities Partners (Cayman) II

LP (the "MP Funds"). The MP Funds are the owners of petitioner Volo Logistics, LLC

("Volo") (together, the MP Funds and Volo will be referred to as "petitioners"). I make this

Affidavit based upon my personal knowledge unless otherwise indicated.

2.      I submit this affidavit in support of petitioners' motion, brought on by order to

show cause, for a temporary restraining order and a preliminary injunction, pursuant to

Articles 63 and 75 of the CPLR, enjoining respondents from proceeding with an arbitration

against petitioners under the auspices of the ICC International Court of Arbitration ("ICC"),

Arbitration No. 15372/JRF (the "Arbitration").

A.    Introduction

3.      On or about March 28, 2007, Respondent GTI S.A. ("GTI"), Varig Logistica

S.A. ("VarigLog") and Volo do Brasil S.A. ("VDB") executed a Purchase and Sale

Agreement (the "Agreement") pursuant to which VarigLog and VDB agreed to sell to GTI all

of their shares of VRG Linhas Aereas S.A. ("VRG"), a Brazilian passenger airline.

4.      The Agreement was signed by VarigLog, VDB, VRG, GTI and GTI's parent

company, Gol Linhas Aereas Inteligentes S.A. ("GOL"). (A true and correct copy of the

Agreement, as translated from Portuguese, is attached as Exhibit ("Ex.") A).[1]

5.      Petitioners MP Funds and Volo were not signatories to the Agreement.

6.      Months after the Agreement was executed, a dispute allegedly arose among

GTI, VarigLog and VDB concerning certain post-closing adjustments. GTI thus commenced

an arbitration in Sao Paulo, Brazil, under the auspices of Respondent ICC International Court

of Arbitration ("ICC"), Arbitration No. 15372/JRF (the "Arbitration"). (A true and correct

copy of GTI's Request for Arbitration, as translated from Portuguese, is attached as Ex. B.)

---

[1]  Exhibits A and B, referenced herein, are certified translations of the original Portuguese documents.

7.    GTI's Request for Arbitration names as respondents not only VarigLog and

VDB -- GTI's counterparties to the Agreement -- but also the MP Funds and Volo.

Petitioners, however, are not signatories to the Agreement, did not agree to be bound by the

Agreement and did not agree to arbitrate (or be parties to) any dispute arising out of the

Agreement.

B.    The Relationships Among The Relevant Entities

8.    The MP Funds hold and invest certain investment capital of, *inter alia*,

governmental institutions, universities, pension funds and other public and private entities

and individuals.

9.    The MP Funds indirectly wholly own Volo as an investment subsidiary.

10.    At the time that GTI entered into the Agreement with VDB and VarigLog,

Volo owned 60% of VDB's capital stock, but only 20% of VDB's voting stock. VDB, in

turn, wholly-owned VarigLog. VarigLog owned more than 99% of VRG, and VDB owned

the remainder.

C.    Petitioners Are Not Parties To The Agreement

11.    GTI has alleged that, in early 2007, it "was approached, in New York, by

respondents [petitioners in this proceeding in New York], which presented them with an offer

for GTI to purchase all shares of [VRG]." Ex. B ¶ 1. GTI has further alleged that, "[f]rom

then on, all discussions, negotiations and meetings took place with the representatives of

[petitioners] . . . ." Ex. B ¶ 1.

12.    On or about March 28, 2007, the negotiations culminated with the execution

of the Agreement, pursuant to which VarigLog and VDB agreed to sell to GTI a collective

total of 122,958,198 class A common shares, 30,739,549 class B common shares and

153,697,746 preferred shares of VRG in exchange for the Brazilian currency equivalent of $275 million. Ex. A. The signatories to the Agreement were VarigLog, VDB, VRG, GTI and GTI's parent company, GOL.

13.    Petitioners were not signatories to the Agreement.

14.    Among other things, the Agreement provided that a price adjustment be made within 180 days of the sale based upon an updated balance sheet of VRG that would be prepared by PriceWaterhouseCoopers ("PWC"). Ex. A, Clause 5.1.

15.    If there was a positive difference between the balance sheet prepared at the time of the Agreement and the updated balance sheet, GTI would pay the difference to VarigLog. Ex. A, Clause 5.2(a). Conversely, if there was a negative difference between the old and new balance sheets, the difference would be paid by VarigLog to GTI. Ex. A, Clause 5.2(b).

16.    GTI later sought from VarigLog and VDB a price adjustment pursuant to Clause 5.2 of the Agreement. That issue forms the basis for the Arbitration commenced by GTI before the ICC.

D.    GTI Files A Request For Arbitration

17.    The Agreement contains arbitration provisions. Ex. A, Clauses 14.1, 14.2, 14.6.

18.    Thus, on or about December 27, 2007, GTI submitted its Request for Arbitration to the ICC. The Request for Arbitration alleges that, on March 28, 2007, VarigLog and VDB "executed an Agreement with GTI whereby they sold the latter all VRG shares for the total price" of $275 million. Ex. B ¶ 4.

19.    The Request for Arbitration further alleges that "[v]arious controversial points emerged" with respect to the price adjustment, and thus requests that, "given the impossibility of making such price adjustment as contractually provided for," the ICC "settle the divergences between" the balance sheets and "determine the price adjustment amount provided for in [the Agreement]." Ex. B ¶¶ 7, 10, 17.

20.    The Request for Arbitration does not allege that the MP Funds or Volo were signatories to the Agreement. Nevertheless, GTI named the MP Funds and Volo as respondents in the Arbitration.

21.    The Request for Arbitration does not allege, nor could it, that the MP Funds and Volo were alter egos of VDB and VarigLog at the time the Agreement was executed.

22.    In fact, in July 2007, Volo commenced litigations against VDB and VarigLog in Brazil, New York and Switzerland. VDB and VarigLog have commenced numerous actions against Volo in Brazil. Thus, far from being in control of VDB and VarigLog, Volo has been litigating against VDB and VarigLog in three separate countries, including an action that was filed in this Court based on VDB's and VarigLog's default on eight loans from Volo (and a related entity) totaling approximately $88 million. See Volo v. VarigLog, Index No. 602536/07 (Honorable Richard B. Lowe III).

E.    The MP Funds And Volo Object To Arbitration

23.    The Arbitration is in its earliest stages. Arbitrators have not yet been appointed or empanelled.

24.    Petitioners have presented to the ICC an objection to being named as respondents to the Arbitration because they are not parties to the underlying Agreement. The ICC, however, has deferred a decision on that issue until the arbitrators are appointed and,

instead, has set a deadline of April 25, 2008, for petitioners to answer the Request for Arbitration.

25.    With the date for answering the Request for Arbitration approaching, petitioners now seek to enjoin the Arbitration from proceeding as against them.

LAWRENCE M. TEITELBAUM

Sworn to before me this
17 day of April 2008

Notary Public

ROBERT H WEISS
Notary Public, State of New York
No. 02WE6117442
Qualified in New York County
Commission Expires Oct. 25, 2008

Exhibit A



**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10,980.430,884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet n° 19 |
|---|---|---|

I, the undersigned, a Public Certified Translator and Commercial Interpreter, hereby certify and attest, for the due purposes, that on this date a document written in Portuguese was presented to me, identified as "Agreement", which I translate into English as follows:

---

## AGREEMENT FOR PURCHASE AND SALE OF THE SHARE CONTROL OF VRG LINHAS AÉREAS S/A AND OTHER COVENANTS

By this private instrument and in the best form of law, the parties hereinbelow:

**Parties:**

On the one side, as **SELLERS**:

- **Varig Logística S/A**, a Brazilian corporation with head-office in the City of São Paulo, State of São Paulo, at Rua Fidêncio Ramos, n° 223, 14° andar, Vila Olímpia, CEP 04551-010, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 04.066.143/0001-57, herein represented by a power of attorney granted by its Directors, namely Marco Antonio Audi, Brazilian, divorced, bearer of Identity Card RG no. 11.418.188-3-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 012.577.138-09, resident and domiciled in the City of Barueri, State of São Paulo, at Avenida Piracicaba, 675, CEP 06458-130, and Luiz Eduardo Gallo, Brazilian, married, bearer of Identity Card RG no. 17.944.538-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 153.612.778-78, resident and domiciled in the City of São Paulo, State of São Paulo, at Rua Cotovia, 180, apartamento 212, CEP 04517-000;

- **Volo do Brasil S/A**, a Brazilian corporation with head-office in the City of Rio de Janeiro, State of Rio de Janeiro, at Rua Visconde de Inhaúma, n° 77, 10° andar, parte, Centro, CEP 20091-007, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 07.574.036/0001-28, herein represented by a power of attorney granted by its Directors, namely Marco Antonio Audi, Brazilian, divorced, bearer of Identity Card RG no. 11.418.188-3-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under no. 012.577.138-09, resident and domiciled in the City of Barueri, State of São Paulo, at Avenida Piracicaba, 675, CEP 06458-130 and Luiz Eduardo Gallo, Brazilian, married, bearer of Identity Card RG n° 17.944.538-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 153.612.778-78, resident and domiciled in the City of São Paulo, State of São Paulo, at Rua Cotovia, 180, apartamento 212, CEP 04517-000;

On the other side, as **PURCHASER**:

Rua Crítios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma. Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

---

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  nº 19

---

I, the undersigned, a Public Certified Translator and Commercial Interpreter, hereby certify and attest, for the due purposes, that on this date a document written in Portuguese was presented to me, identified as "Agreement", which I translate into English as follows:

---

### AGREEMENT FOR PURCHASE AND SALE OF THE SHARE CONTROL OF VRG LINHAS AÉREAS S/A AND OTHER COVENANTS

By this private instrument and in the best form of law, the parties hereinbelow:

**Parties:**

On the one side, as SELLERS:

- **Varig Logística S/A**, a Brazilian corporation with head-office in the City of São Paulo, State of São Paulo, at Rua Fidêncio Ramos, nº 223, 14º andar, Vila Olímpia, CEP 04551-010, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 04.066.143/0001-57, herein represented by a power of attorney granted by its Directors, namely Marco Antonio Audi, Brazilian, divorced, bearer of Identity Card RG no. 11.418.188-3-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 012.577.138-09, resident and domiciled in the City of Barueri, State of São Paulo, at Avenida Piracicaba, 675, CEP 06458-130, and Luiz Eduardo Gallo, Brazilian, married, bearer of Identity Card RG no. 17.944.538-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 153.612.778-78, resident and domiciled in the City of São Paulo, State of São Paulo, at Rua Cotovia, 180, apartamento 212, CEP 04517-000;

- **Volo do Brasil S/A**, a Brazilian corporation with head-office in the City of Rio de Janeiro, State of Rio de Janeiro, at Rua Visconde de Inhaúma, nº 77, 10º andar, parte, Centro, CEP 20091-007, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 07.574.036/0001-28, herein represented by a power of attorney granted by its Directors, namely Marco Antonio Audi, Brazilian, divorced, bearer of Identity Card RG no. 11.418.188-3-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under no. 012.577.138-09, resident and domiciled in the City of Barueri, State of São Paulo, at Avenida Piracicaba, 675, CEP 06458-130 and Luiz Eduardo Gallo, Brazilian, married, bearer of Identity Card RG nº 17.944.538-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 153.612.778-78, resident and domiciled in the City of São Paulo, State of São Paulo, at Rua Cotovia, 180, apartamento 212, CEP 04517-000;

On the other side, as **PURCHASER**:

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.684 - CCM 8.542.687-3

---

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet   n° 19 |
| --- | --- | --- |

I, the undersigned, a Public Certified Translator and Commercial Interpreter, hereby certify and attest, for the due purposes, that on this date a document written in Portuguese was presented to me, identified as "Agreement", which I translate into English as follows:

---

### AGREEMENT FOR PURCHASE AND SALE OF THE SHARE CONTROL OF VRG LINHAS AÉREAS S/A AND OTHER COVENANTS

By this private instrument and in the best form of law, the parties hereinbelow:

**Parties:**

On the one side, as **SELLERS**:

- **Varig Logística S/A**, a Brazilian corporation with head-office in the City of São Paulo, State of São Paulo, at Rua Fidêncio Ramos, n° 223, 14° andar, Vila Olímpia, CEP 04551-010, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 04.066.143/0001-57, herein represented by a power of attorney granted by its Directors, namely Marco Antonio Audi, Brazilian, divorced, bearer of Identity Card RG no. 11.418.188-3-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 012.577.138-09, resident and domiciled in the City of Barueri, State of São Paulo, at Avenida Piracicaba, 675, CEP 06458-130, and Luiz Eduardo Gallo, Brazilian, married, bearer of Identity Card RG no. 17.944.538-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 153.612.778-78, resident and domiciled in the City of São Paulo, State of São Paulo, at Rua Cotovia, 180, apartamento 212, CEP 04517-000;

- **Volo do Brasil S/A**, a Brazilian corporation with head-office in the City of Rio de Janeiro, State of Rio de Janeiro, at Rua Visconde de Inhaúma, n° 77, 10° andar, parte, Centro, CEP 20091-007, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 07.574.036/0001-28, herein represented by a power of attorney granted by its Directors, namely Marco Antonio Audi, Brazilian, divorced, bearer of Identity Card RG no. 11.418.188-3-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under no. 012.577.138-09, resident and domiciled in the City of Barueri, State of São Paulo, at Avenida Piracicaba, 675, CEP 06458-130 and Luiz Eduardo Gallo, Brazilian, married, bearer of Identity Card RG n° 17.944.538-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 153.612.778-78, resident and domiciled in the City of São Paulo, State of São Paulo, at Rua Cotovia, 180, apartamento 212, CEP 04517-000;

On the other side, as **PURCHASER**:

*Gilda Barreto Mello da Silva*
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  n°  20

- GTI S/A, a Brazilian corporation with head-office in the City of São Paulo, State of São Paulo, at Rua Tamoios, n° 246, Jardim Aeroporto, CEP 04630-000, enrolled with the CNPJ under number 06.985.282/0001-95, herein represented by its Chief Executive Officer, Constantino de Oliveira Júnior, bearer of Identity Card RG n° 929.100-SEP/DF and enrolled with the CPF under number 417.942.901-25 and by its Officer, Henrique Constantino, bearer of Identity Card RG n° 1.022.856-SEP/DF and enrolled with the CPF (Individual Taxpayer Registry) under number 443.609.911-34;

## Witnesseth

I – **WHEREAS** in the course of Judicial Recovery proceeding no. 2005.001.072887-7, which was brought with the 8th Lower Entrepreneurial Court of the Judicial District of Rio de Janeiro, the creditors in attendance of a Creditors Meeting decided to dispose of Varig Productive Business (hereinafter simply referred to as UPV), pursuant to the terms of article 60, sole paragraph, of Federal Law n° 11.101 of 2005, which disposal contemplated, among other things, VARIG brand, routes, frequencies, hotrans, slots and airport areas, title to which belonged to VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A (hereinafter collectively referred to as "Companies Under Judicial Recovery");

II – **WHEREAS,** on May 11, 2005, the 8th Lower Entrepreneurial Court of Rio de Janeiro, upon request from the State of Rio de Janeiro Public Prosecutor Office, declared that the UPV to be disposed of under the terms of article 60, sole paragraph, of Federal Law no. 11.101 of 2005, would further contemplate all the routes, slots, frequencies, hotrans and airport areas, title to which belonged to the Companies Under Judicial Recovery;

III – **WHEREAS,** under the same decision, the Judicial Recovery Court froze the routes, slots, frequencies, hotrans, slots and airport areas, title to which belonged to the Companies Under Judicial Recovery, ordering summons to be served on the National Civil Aviation Agency – ANAC;

IV – **WHEREAS,** on May 30, 2006 the ANAC sent to the Companies Under Judicial Recovery a list of all the routes, slots, frequencies and hotrans held by the referred Companies (Attachment I);

V – **WHEREAS,** on June 23, 2006, after a previous auction of the UPV, VarigLog filed with the case records of the Judicial Recovery Proceeding a proposal for acquisition of the UPV, establishing, in the "Main Purposes

*Rua Críbos 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  n° 21

pursuant to item I of the document, among other things, the *"Maintenance of employees in the positions required for the operation and progressive hiring of new employees as necessary for the projected growth of the operations"* (Attachment II);

VI – **WHEREAS,** on July 05, 2006, VarigLog filed with the case records of the Judicial Recovery Proceeding a document named *"Terms and Conditions for Acquisition of a Separate Productive Business called Varig Productive Business"*, in which it detailed the above mentioned proposal;

VII – **WHEREAS,** on July 10, 2006, VarigLog filed with the case records of the Judicial Recovery Proceeding explanations related to its proposal for acquisition of the UPV, as an answer to the questions submitted by the Court-appointed Trustee during the Special Hearing designated by the 1st Lower Entrepreneurial Court of Rio de Janeiro;

VIII – **WHEREAS,** in the above mentioned Special Meeting, after consent from the Court-appointed Trustee and the Rio de Janeiro Public Prosecutor Office, the 1st Lower Entrepreneurial Court of Rio de Janeiro designated a Creditors Meeting to be held for examining the new Proposal for Amendment to the Judicial Recovery Plan, contemplating the sale of the UPV in the manner provided for in the proposal submitted by VarigLog;

IX – **WHEREAS,** the referred Creditors Meeting was held on July 17, 2006 and approved the Proposal for Amendment to the Judicial Recovery Plan contemplating the sale of the UPV in the manner provided for in the proposal submitted by VarigLog;

X – **WHEREAS,** on July 20, 2006, a judicial auction of Varig Productive Business was held and confirmed, pursuant to the terms of article 60, sole paragraph, and article 142, of LRE, in which VRG Linhas Aéreas (formerly named Aéreo Transportes Aéreos S/A) was declared the winner;

XI – **WHEREAS,** on December 14, 2006 the ANAC granted to VRG Linhas Aéreas S.A. a Concession for Regular Air Transportation, as provided for in a Concession Agreement entered into between them;

XII – **WHEREAS,** on December 15, 2006, the 1st Lower Entrepreneurial Court of Rio de Janeiro confirmed VRG Linhas Aéreas S.A. as the owner of the UPV, thus confirming the compliance with the conditions precedent provided for in item 47 of the Judicial Recovery Plan;

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30,178          Livro /Book  302          Fls/Sheet  nº 22

XIII – **WHEREAS** GTI is able to immediately allocate aircraft for increasing VARIG operations in addition to keeping all the aircraft that are already part of the fleet of VRG Linhas Aéreas S/A, pursuant to a business plan to be further submitted, thus making possible an increase in the number of jobs offered;

**Now, therefore,** the parties have agreed to enter into this Private Instrument, hereinafter simply referred to as "Agreement", which shall be governed by the following clauses:

### Clause One
DEFINITIONS

**Clause 1.1.** Terms initialed in capital letters shall have the meanings provided for in this Clause:

"ADR" means American Depositary Receipts issued by GLAI and traded at the New York Stock Exchange.

"Affiliate" means, with respect to any Person, any other Person which, directly or indirectly, by one or more intermediate Parties, controls, is controlled by or is under common control with the first Person.

"ANAC" means *Agência Nacional de Aviação Civil* (National Civil Aviation Agency), created by Federal Law nº 11.182/2005.

"General Creditors Meeting" means the general creditors meeting held on July 17, 2006, in compliance with Federal Law nº 11.101/2005, for the purpose of approving the Proposal for Amendment to the Judicial Recovery Plan, as submitted by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A.

"Government Authorizations" means the ANAC and CADE authorizations, as provided for by law.

"Bovespa" means São Paulo Stock Exchange

"CCI" means CCI Internacional – International Arbitration Court, with head-office in Paris, France, 36, Cours Albert, 75006.

"To control" and the related terms "control" and "controlling" mean, with respect to any Person, another Person's power to (a) conduct or materially influence over the management, administration and definition of business policies of such Person, either by exercise of voting rights arising out of the ownership of shares,

*Gilda Barreto Mello da Silva*

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.684 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet   nº 25

"Volo" means Volo do Brasil S.A, one of the Sellers of the Acquisition Shares hereunder.

"VRG" means VRG Linhas Aéreas S.A., whose shares are the Acquisition Shares under this Agreement, acting herein as Intervening-Consenting Party.

"VarigLog" means Varig Logística S.A, one of the Sellers of the Acquisition Shares hereunder.

## Clause Two
### PURPOSES AND CONCEPTS

**Clause 2.1** – The purpose of this Agreement is to provide for the principles, terms and conditions that will govern the purchase, sale and transfer of all VRG shares owned by VarigLog and by Volo to GTI.

**Clause 2.2** – The concepts governing this transaction, as provided for herein, shall at all times, without limitation, abide by honesty and good faith principles, as set forth in art. 422 of the Civil Code in effect, the principles provided for in Federal Law no. 8884/94 as well as the principles governing judicial recovery, especially those provided for in art. 47 of the LRE, which were applied to the Judicial Recovery Proceeding of VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S.A. and Nordeste Linhas Aéreas S.A. brought before the 1st Lower Entrepreneurial Court of Rio de Janeiro, Case Records nº 2005.001.072887-7, in the course of which the UPV was identified and sold to VRG, pursuant to the provisions in article 60, sole paragraph, and article 142 of LRE.

**Clause 2.3** – GTI, after the Prior Authorization provided for in Clause 9.2 hereof is granted by the ANAC, will undertake the responsibility of causing VRG to comply with all such liabilities as are ascribed thereto under the terms of the Invitation to Bid, as well as, to the extent it shall be conditioned on its own acts or omissions, for maintaining the integrity of the UPV transferred to VRG and the legal protection applicable to this kind of transaction, especially as set forth in art. 60, sole paragraph, and art. 142 of Federal Law no. 11.101/05, with due regard, further, to the provisions in Clause 6.1 of this Agreement.

**Clause 2.4** – After verification of the due compliance with the condition provided for in clause 9.2., all eventual risks related to the approval and implementation of the transaction agreed to in this Agreement shall be fully undertaken by GTI.

*Rua Critos 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

---

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet   nº 24

---

"LRE" means Companies Recovery Law (Lei de Recuperação de Empresas) such as it is defined in Federal Law nº 11.101/2005.

"NYSE" means New York Stock Exchange

"Transition Period" means the period defined in Clause Ten hereof.

"Person" means any individual, company, association, corporation, joint venture, investment fund, condominium, trustee, bankrupt estate, limited company or any other kind of entity or organization;

"Judicial Recovery Proceeding" means Judicial Recovery Proceeding nº 2005.001.072887-7 brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A.

"Proposal for Amendment to the Judicial Recovery Plan" means the proposal for amendment to the judicial recovery plan submitted on July 17, 2006 by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A, which was approved by the Creditors Meeting held on July 20, 2006, the purpose of which proposal was to make the sale of Varig Productive Business compliant with the requirements of Judicial Recovery Proceeding nº 2005.001.072887-7 brought before the 1st Lower Entrepreneurial Court of Rio de Janeiro, as well as with the acquisition proposals submitted by Varig Logística S/A.

"VarigLog's Proposals" mean the proposals submitted by Varig Logística S/A on June 23, 2006, July 05, 2006 and July 10, 2006, in the case records of Judicial Recovery Proceeding no. 2005.001.072887-7 brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A, the purpose of which proposals was the acquisition of Varig Productive Business.

"Smiles" means the mileage plan offered to VARIG's customers.

"UPV" means Varig Productive Business, as defined in the Invitation to Bid which governed the judicial auction held on July 20, 2006, in connection with Judicial Recovery Proceeding no. 2005.001.072887-7 brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A before the 1st Lower Entrepreneurial Court of Rio de Janeiro.

"VARIG" means the identifying brand of the products of VRG Linhas Aéreas S/A

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet   n° 23 |
|---|---|---|

rights set forth in shareholders' agreements or similar contracts or otherwise, or (b) elect the majority of the directors, officers or of members of any similar corporate body of such Person, either by exercise of voting rights arising out of the ownership of shares, rights provided for in shareholders' agreements or similar contracts or otherwise.

"CADE" means the Administrative Council for Economic Defense, created by Federal Law no. 4.137/1962 and amended by Federal Law no. 8884/1994.

"DAC" means the Civil Aviation Department.

"Invitation to Bid" means the invitation to bid that governed the judicial auction held on July 20, 2006, in connection with Judicial Recovery Proceeding n° 2005.001.072887-7, brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A before the 1st Lower Entrepreneurial Court of Rio de Janeiro, the purpose of such auction having been the sale of Varig Productive Business.

"Companies Under Judicial Recovery" means, collectively (Viação Aérea Rio Grandense S/A), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A.

"GOLL4 Shares" means Gol Linhas Aéreas Inteligentes S/A shares traded in São Paulo Stock Exchange (Bovespa).

"GTI" means GTI S/A, the Purchaser of the Acquisition Shares hereunder.

"Recovery Court" means the 1st Lower Entrepreneurial Court of Rio de Janeiro before which Judicial Recovery Proceeding no. 2005.001.072887-7 was brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A.

"Auction" means the judicial auction held on July 20, 2006, in connection with Judicial Recovery Proceeding no. 2005. 001. 072887-7 brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A, before the 1st Lower Entrepreneurial Court of Rio de Janeiro, the purpose of such auction having been the sale of Varig Productive Business.

"Previous Auction" means the judicial auction held in June 2006, in connection with Judicial Recovery Proceeding no. 2005.001.072887-7 brought by VARIG S/A (Viação Aérea Rio Grandense), Rio Sul Linhas Aéreas S/A and Nordeste Linhas Aéreas S/A before the 1st Lower Entrepreneurial Court of Rio de Janeiro, the purpose of such auction having been the sale of Varig Productive Business, the winner of the referred auction having failed to fulfill its payment obligation.

*Rua Critios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

*Gilda Barreto Mello da Silva*
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet  n° 26 |
|---|---|---|

**Clause 2.5** – Any eventual default, either by GTI and/or by VRG, at whatever title it may be, in the obligations arising out of the Invitation to Bid and of Clauses 6.1 and 6.3 of this Agreement, which may adversely affect VRG, VarigLog, Volo, their shareholders and directors/officers with respect to the tax, labor, social security and civil liabilities of the Companies Under Judicial Recovery, shall be fully undertaken by GTI as from the time the ANAC shall have granted the prior authorization provided for in Clause 9.2.

**Clause 2.6** – This transaction is carried out based on VRG's operating capacity, which comprises, among other things: (i) rights to perform one hundred and fifty-one (151) constant flights of VRG's official flight network, as approved by the ANAC's Collegiate Board of Directors on January 23, 2007; (ii) additional twenty-two (22) slots in Congonhas Airport, in São Paulo, as acknowledged by a judicial decision rendered on January 25, 2007 by the Recovery Court; (iii) VRG's rights referring to international routes and corresponding benefits awarded on December 14, 2006, with due regard to the terms of Ordinance CGAC/569; and (iv) VRG's rights referring to concessions for use of airport areas to which VRG was subrogated by reason of the judicial sale of the UPV.

### Clause Three
### Purpose

**Clause 3.1** – Subject to the terms provided for below, VarigLog and Volo, in the best form of law, hereby sell to GTI, and GTI hereby purchases from VarigLog and Volo, all VRG's shares, with all the rights pertaining thereto, including the right to share profits, bonuses and any other rights, free and clear of all liens, claims and encumbrances, as follows:

    **a)** VarigLog sells one hundred and twenty-two million, nine hundred and fifty-eight thousand, one hundred and ninety-eight (122,958,198) class A common shares, twenty-nine million, two hundred and two thousand, five hundred and seventy-two (29,202,572) class B common shares and one hundred and fifty-two million, one hundred and sixty thousand, seven hundred and sixty-nine (152,160,769) preferred shares of VRG; and

    **b)** Volo sells one million, five hundred and thirty-six thousand, nine hundred and seventy-seven (1,536,977) class B common shares and one million, five hundred and thirty-six thousand, nine hundred and seventy-seven (1,536,977) preferred shares of VRG.

**Clause 3.2** – The purpose of this agreement also comprises the assignment by VarigLog, on a free-of-cost basis, of the debenture issued by VRG on its behalf,

**_Gilda Barreto Mello da Silva_**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.864 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  n° 27

on January 11, 2007, in the amount of one hundred and one million, three hundred and fifty thousand, seven hundred reais (R$ 101,350,700.00), with all the rights pertaining thereto, whereby VarigLog is undertaken, concomitantly with the payment of installment 4.2.b, to perform all the acts required for the perfection of the above referred assignment.

### Clause Four
ACQUISITION PRICE AND PAYMENT TERMS

**Clause 4.1.** The price agreed to between the parties for the purchase and sale of the shares subject matter of this agreement ("Acquisition Price") is the amount in Brazilian currency equivalent to two hundred and seventy-five million North-American Dollars (US$ 275,000,000.00), which shall be paid as follows:

(a) the amount of two hundred and seventy-two million, two hundred and fifty thousand North-American Dollars (US$ 272,250,000.00) shall be paid to VarigLog; and

(b) the amount of two million, seven hundred and fifty thousand North-American Dollars (US$ 2,750,000.00) shall be paid to Volo, with due regard to the provisions in Clause 4.2 below.

**Clause 4.2.** The Acquisition Price shall be paid from GTI to VarigLog and to Volo in the manner provided for below, with due regard, always, to the average of the PTAX 800, option 5 Conversion Rate, as disclosed by the Brazilian Central Bank for the day preceding each of the following events:

(a) The amount in Brazilian currency equivalent to thirty million North-American Dollars (US$ 30,000,000.00), shall be paid on the execution date of this Agreement, of which twenty-seven million, two hundred and fifty thousand North-American Dollars (US$ 27,250,000.00) are due to VarigLog and two million, seven hundred and fifty thousand North-American Dollars (US$ 2,750,000.00) correspond to the full amount provided for in Clause 4.1(b) due to Volo, it being understood that both payments shall be made by transfer to specific bank accounts held by the Sellers, as designated in writing at the time of the payment;

(b) The amount in Brazilian currency equivalent to two hundred and forty-five million North-American Dollars (US$ 245,000,000.00) shall be payable to VarigLog within up to three (3) business days after the publication in the Federal Official Gazette (Diário Oficial da União) of the minutes of the Meeting of ANAC's Collegiate Board of Directors in which the granting of the

Rua Crílios 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 - 3744-2522 - São Paulo, SP

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178        Livro /Book  302        Fls/Sheet   nº 28

Prior Authorization for the perfect transfer of the Acquisition Shares is approved by the ANAC, as set forth in Clause 9.2.1 below, as follows:

(i)    The amount equivalent to one hundred and seventy-seven million North-American Dollars (US$ 177,000,000.00) shall be paid from GTI to VarigLog in preferred shares issued by Gol Linhas Aéreas Inteligentes S/A ("GOLL4 Shares"). The value equivalent to one hundred and eight per cent (108%) of the average daily unit price weighted by the amount of shares traded in the State of São Paulo Stock Exchange – BOVESPA in the thirty (30) calendar days preceding the execution of this agreement will be adopted for establishing the share value, that is, the following formula shall be applied:

*[average daily unit price weighted by the amount of shares traded in the State of São Paulo Stock Exchange -- BOVESPA in the thirty (30) calendar days preceding the execution of this agreement] x 1.08 = [Share price for purposes of establishing the amount of shares]*

(ii)    The amount in Brazilian currency equivalent to sixty-eight million North-American Dollars (US$ 68,000,000.00) shall be paid by transfer to a specific bank account held by VarigLog, to be designated in writing at the time of the payment.

**Clause 4.3.** In compliance with the restrictions provided for in clause 4.5 below, the bank acting as custodian of GOLL4 Shares given as payment in kind in the manner set forth in Clause 4.2.(b).(i) above shall be directed to prevent the sale and/or transfer of the mentioned shares at any title whatsoever before the dates mentioned in the referred clause 4.5. GTI is since now irrevocably and irreversibly undertaken to, jointly with VarigLog and at the latter's expense, on the date this transaction is approved by the ANAC (clause 9.2), enter into an agreement with a first-class trustee, the sole obligation under the referred agreement being the release of the shares for sale in the form and on the dates provided for in the schedule described in Clauses 4.5 and 4.6 below.

**Clause 4.4.** All GLAI shares given as payment in kind of the Acquisition Price shall be transferred to VarigLog, with all the rights pertaining thereto, including the right to profit share, bonus and any other rights, free and clear of any liens, claims and encumbrances whatsoever.

**Clause 4.5.** VarigLog may dispose of the GLAI shares received by it as part of the Acquisition Price, pursuant to clause 4.2.(b.(i), as follows:

Rua Críbos 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 – São Paulo, SP

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  n° 29

ten per cent (10%) within up to three (3) months after the execution of this Agreement;

fifteen per cent (15%) between the third (3rd) and the sixth (6th) months after the execution of this Agreement;

twenty-five per cent (25%) between the sixth (6th) and the twelfth (12th) month after the execution of this Agreement;

twenty-three per cent (23%) between the twelfth (12th) and the eighteenth (18th) month after the execution of this Agreement; and

twenty-eight per cent (28%) thirty (30) months after the execution of this Agreement.

**Clause 4.6.** Additionally to the restrictions provided for in Clause 4.5 above, VarigLog will be subject to the limit of ten per cent (10%) of the maximum volume of GOLL4 shares traded in the previous day in the Bovespa or of the ADRs in the NYSE, in case the shares have been converted into ADRs, which conversion of shares into ADR shall not to occur unless after their release for sale as mentioned in clause 4.5.

**Clause 4.7.** Each party shall bear all the expenses, charges, taxes, including on eventual capital gains, arising out of this Agreement, as imposed by law on taxpayers.

### Clause Five
ADJUSTMENTS TO THE ACQUISITION PRICE

**Clause 5.1.** Annexed to this Agreement ( as Attachment III) is a balance sheet revised by PriceWaterhouseCoopers reflecting the items agreed to on this date between the Parties for this transaction, which items must be considered, solely, for effect of price adjustment, including the following:

(a)    As current assets

(i)
(ii)



**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411 258-25 - IAPAS 10.980.430.884 - CCM 8 542 687-:

---

Tradução/Translation 30.17!        Livro /Book  30%        Fls/Sheet  n° 3(

---

(iv)    Guarantee Deposits – VISA;
(v)    Related Companies (Leasing of Aircraft Holds– Logistics)

**(b)**    Non-Current Assets
Guarantee deposits: Guarantee deposit – Euroatlantics; Guarantee deposit – Sojitz; Guarantee deposit – Aircraft – Aeroturbine; Guarantee deposit – Aircraft – SR Tecnics; Guarantee deposit – Aircraft – FOCUS; Guarantee deposits – Wells Fargo; Guarantee deposits – BSP; Other Accounts Receivable;

**(c)**    Current Liabilities
Suppliers: Suppliers – IBM; Suppliers – other
Loans, financing, debentures: Fees, taxes and duties; Fees, taxes and duties – INFRAERO; Fees, taxes and duties – IR (Income Tax) on PAYROLL; Fees, taxes and duties – Other
Wages and payroll charges;
Leasing payable – leasing;
Leasing payable – maintenance reserve;
Related Companies; Accounts payable;
Accounts payable – Insurance;
Accounts payable – Crew member's daily allowances;
Air transport liability;
Provisions for vacation pay and payroll charges;
Provisions for flight equipment maintenance.

**(d)**    Non-Current Liabilities, excluding the debentures provided for in clauses 3.2, 6.3(a) and 6.3(b).

**Clause 5.1.1.** Not later than one hundred and eighty (180) days from the base date of the balance sheet mentioned in Clause 5.1 above, PriceWaterhouseCoopers will prepare a new duly audited balance sheet, considering solely and exclusively the same items as well as the same methodology referred to in clause 5.1, the base date of which will be the day preceding the event referred to in Clause 9.2.

**Clause 5.1.2.** The costs with the audit procedures provided for in this Clause shall be borne by VarigLog, it being GTI's duty, however, to ensure unrestricted access to VarigLog's representatives, accompanied by PriceWaterhouseCoopers auditors, including, without limitation, (i) the inventory, (ii) the documents related to the items shown in the restricted balance sheet, (iii) the employees, officers or service providers of VRG and, further, (iv) VRG's facilities.

*Rua Crítios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

*Gilda Barreto Mello da Silva*

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430,884 - CCM 8.542.687-3

Tradução/Translation 30.178    Livro /Book  302    Fls/Sheet   n° 31

**Clause 5.1.3.** In order to comply with the provisions set forth in clauses 5.1.1 and 5.1.2, GTI is undertaken to allow PriceWaterhouseCoopers, in its capacity as auditor appointed by the Sellers, to carry out the due diligence procedures and have access to the necessary VRG's information.

**Clause 5.1.3.1** -- GTI shall be entitled, within five (5) business days after the presentation of the balance sheet mentioned in clause 5.1.1., to appoint a first-class audit company to validate the referred balance sheet, in such a manner as to check the amounts ascertained therein. Such validation shall be made within not later than forty-five (45) days from the delivery of the balance sheet duly revised by PriceWaterhouseCoopers to GTI, since now pointing out whether there are divergences or not in relation to the balance sheet presented by PriceWaterhouseCoopers. Should there be any divergence as for the referred amounts, the two audit companies shall, in common agreement select a third first-class audit company, whose fees shall be paid on a 50/50 basis by GTI and by VarigLog, in order to settle the referred divergences. This third audit company shall have a maximum period of twenty (20) days, as from its appointment, to present a conclusive report, which the parties since now accept to be final.

**Clause 5.2.** Within up to five (5) business days after the conclusion of the audit procedures provided for in Clause 5.1.1 above:

> **(a)** if it is determined that the difference between the balances shown in the specific balance sheet mentioned in Clause 5.1 and the specific balance sheet mentioned in Clause 5.1.1 above is a positive balance, such balance will be fully paid from GTI to VarigLog in Brazilian currency, to an account to be designated by VarigLog, within three (3) business days;

> **(b)** if it is determined that the difference between the balances shown in the specific balance sheet mentioned in Clause 5.1 and the specific balance sheet mentioned in Clause 5.1.1 above is a negative balance, such balance will be fully paid from VarigLog to GTI in Brazilian currency, to an account to be designated by GTI, within three (3) business days.

**Clause 5.3.** A settlement of accounts is in progress between VRG and the Companies Under Judicial Recovery in relation to the period beginning on the Auction date and ending on the date of the judicial sale of the UPV, limited to those items listed in Attachment IV. The parties agree that VarigLog will, under its exclusive responsibility, conduct the negotiations related to the above mentioned items with the Companies Under Judicial Recovery and, for such

*Rua Crítios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet nº 32 |
|---|---|---|

purpose, a specific *ad negotia* power of attorney, with specific powers for granting an *ad judicia* power of attorney, will be granted to it by VRG at the time mentioned in Clause 9.2 of this Agreement. As soon as the amounts arising out of the above mentioned settlement of accounts shall become payable, either by reason of agreement between the parties thereto, or by final court decision, such amounts will be assigned on a free-of-cost basis to VarigLog, which, on its turn, agrees to pay eventual debts arising out of the above mentioned settlement of accounts. In both cases, the eventual payment or assignment shall be made within not later than fifteen (15) days. The powers of attorney to be granted to VarigLog shall be valid for one hundred and eighty (180) days, being renewable for as many equal periods as may be necessary, until the final settlement of the pending matters.

**Clause 5.3.1.** In any case, VarigLog shall be liable for the costs incurred and/or generated by VRG as a result of the receipt of the amounts provided for in this clause, whether such costs are in the nature of taxes, fees and/or any other nature.

**Clause 5.4.** For effects of this Agreement, the Parties on this date fix at twenty-two million, five hundred thousand North-American Dollars (US\$ 22,500,000.00) the amount for redemption of each of the debentures provided for in Clause 6.3.(a) and 6.3.(b). In the event the amount actually paid for the redemption is higher than the amount established above, VarigLog agrees to refund the difference to GTI, said refund being limited to the face value of these debentures. In the event the amount actually paid for the redemption is less than the amount established above, GTI agrees to supplement the Acquisition Price, in Brazilian currency, in an equal amount. In both cases mentioned above, the payment shall be made within three (3) business days after the actual redemption of the debentures, to an account to be designated by the payee.

**Clause 5.5.** Until the date of presentation of the balance sheet provided for in clause 5.1.1, the Parties shall, in common agreement, ascertain the variations in the SMILES Program, as provided for in clause 6.3.1. In case of any variation in excess of the limits established in the referred clause 6.3.1, VarigLog shall refund the corresponding amount to GTI, within three (3) business days, which amount shall be calculated in accordance with the same criteria adopted for accounting for the miles referring to the SMILES Program.

**Clause Six**
GTI's Representations, Warranties and Covenants

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  nº 33

I.      With respect to the Obligations Set Forth in the Invitation to Bid of
the UPV Auction

**Clause 6.1.** -- GTI irrevocably and irreversibly represents and agrees that, in
order to protect the governing principles of the LRE which gave rise to the UPV,
it will comply with the provisions of the Invitation to Bid of the Auction, including,
without limitation, the following:

(a)     Not to perform any acts which may cause a reduction in UPV's
operating potential, such as it is defined in the Invitation to Bid and
provided for in Clause 2.6 above;

(b)     To ensure that GOL and VARIG brands will be used separately
after the perfection of this transaction;

(c)     To keep the Smiles loyalty and mileage program in effect and to
comply with all the obligations arising out of such program;

(d)     If and where necessary, that the administrative and operating
changes in VRG will abide by the principle that no unreasonable
reduction in the number of jobs currently existing or a reduction in the
expansion potential of VARIG operations will be made; and

(e)     Preference will be given to hiring employees of the Companies
Under Judicial Recovery at the time of the expansion of VARIG
operations, in accordance with the principles governing the Judicial
Recovery, as well as with VarigLog's Proposals for Purchase of the UPV.

**Clause 6.2.** GTI hereby irrevocably and irreversibly agrees to make its best
efforts in order to take all the necessary steps for implementing international
route services not yet operated whose rights belong to VRG, within one hundred
and eighty (180) days counted from the judicial sale of the UPV, pursuant to
decisions rendered by the Judicial Recovery Court in connection with the
Companies Under Judicial Recovery and, further, in compliance with the terms
of DAC's Ordinance DGAC/569, with due regard to the business plan annexed
hereto (Attachment V).

**Clause 6.3.** GTI agrees to fulfill all the obligations provided for in the Invitation
to Bid of the Auction, which governed the sale of the UPV, namely:

(a)     Transfer, on behalf of Class II and Class III Creditors, of one sole
non-transferable debenture, in the face value of fifty million reais (R$
50,000,000.00) and maturity term of ten (10) years, with fixed interests of

Rua Críbos 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

*Gilda Barreto Mello da Silva*
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8 542.587-3

Tradução/Translation 30.178        Livro /Book  302        Fls/Sheet  n° 34

four million, two hundred thousand reais (R$ 4,200,000.00) yearly, paid on a monthly basis, free and clear of any liens, with possibility of conversion into stock in the same percentage, under the terms of item 3.2 "a" of the Invitation to Bid of the Auction, and of the *"Private Indenture of Subordinated Debentures of VRG Linhas Aéreas S/A issued to Class I and Class II and Off-Composition Creditors"* approved in accordance with the *"Minutes of the Special Meeting of Shareholders held on January 11, 2007"*, annexed to pages 23.059/23.093 of the Judicial Recovery Proceeding (Attachment VI);

(b)    Transfer, on behalf of Class I Creditors, of one sole non-transferable debenture, in the face value of fifty million reais (R$ 50,000,000.00) and maturity term of ten (10) years, with fixed interests of four million, two hundred thousand reais (R$ 4,200,000.00) yearly, paid on a monthly basis, free and clear of any liens, with possibility of conversion into stock in the same percentage, under the terms of item 3.2 "a" of the Invitation to Bid of the Auction, and of the *"Private Indenture of Subordinated Debentures of VRG Linhas Aéreas S/A issued to Class I and Class II and Off-Composition Creditors"* approved in accordance with the *"Minutes of the Special Meeting of Shareholders held on January 11, 2007"*, annexed to pages 23.059/23.093 of the Judicial Recovery Proceeding (Attachment VI);

(c)    Execution by the Companies Under Judicial Recovery of selected aircraft chartering contracts under the ACMI ("Aircraft, Crew, Maintenance and Insurance") system, under usually adopted market conditions and standards, ensuring a minimum consideration of five million reais (R$ 5,000,000.00) yearly, for a term of three (3) years, totaling a minimum value of fifteen million reais (R$ 15,000,000.00), pursuant to the terms of item 3.2.c. of the Invitation to Bid;

(d)    Compliance with all the obligations provided for in the *"Technical Training Service Agreement"* (*"Contrato de Serviço de Treinamento Técnico"*) entered into on November 27, 2006 between VRG and Viação Aérea Rio Grandense – under judicial recovery, through the Varig Flight Training Center, pursuant to Clause 3.2.d of the Invitation to Bid;

(e)    Assumption of all the obligations related to the SMILES program, including all the tickets issued in good faith until the date of the Court Confirmation of the Judicial Sale of the UPV, subject, in both cases, to the availability of unsold seats in the flights of Varig Productive Business and to the routes maintained by the UPV, pursuant to the terms of item 3.2, "b", and item II, "b" of the Invitation to Bid;

Rua Critios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

*Gilda Barreto Mello da Silva*

Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178        Livro /Book  302        Fls/Sheet  n° 35

(f)    Payment, for a period of up to six (6) months counted from the court confirmation of the judicial sale, of a monthly rent equivalent to 0.8% of the market value of the real properties owned by the Companies Under Judicial Recovery, whose direct possession, at VRG's discretion, may be transferred upon it, under the terms of item 3.2.g of the Invitation to Bid. After the mentioned period of six (6) months is elapsed, the lease will be subject to usual duration and financial terms adopted on the market for lease of real properties of the same type as well as to VRG's convenience;

(g)    Assumption of the air transport liabilities, subject to the availability of flights, routes and unsold seats in VRG's flights, pursuant to item 3.2.h and to item II.a of Attachment II to the Invitation to Bid.

**Clause 6.3.1.** Annexed to this Agreement (Attachment VII) is a spreadsheet showing the amount of miles of the SMILES Program and other figures of the mentioned mileage program updated until February 02, 2007, which were calculated based on the methodology described in the same Attachment. The parties accept that (a) the regular market variation in the number of miles in the period from the date of preparation of the above mentioned spreadsheet until the day preceding the event described in Clause 9.2, and (b) the variation resulting from the conversion into SMILES Program miles of air transport liability (ATL) in the amount equivalent to seven million reais (R$ 7,000,000.00) provided for in Clauses 6.3 (e) and (g), shall not imply any consequence for purposes of adjustment to the Acquisition Price.

**II – In relation to the ANAC**

**Clause 6.4.** GTI agrees to submit to the ANAC evidence of its payment, in Brazilian currency, of the second portion of the capital increase resolved at the AGE (Special Meeting of Shareholders) held on September 18, 2006, in the amount of one hundred and one million, four hundred and forty-seven thousand, nine hundred and ninety-three reais (R$ 101,447,993.00), until June 15, 2007, forwarding copies of pages of the Journal containing the Instrument of Opening and respective accounting entries related to the payment of the capital stock, signed by the Accountant and by at least one officer of the company, as set forth in the Authorization for Legal Operation granted to VRG and published in the Federal Official Gazette on September 26, 2006. The financial responsibility for the payment of the capital stock as provided for herein is undertaken by VarigLog in the form of Clause 7.7 below.

**III – Miscellaneous**

Rua Critios 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book   302          Fls/Sheet   nª 36

---

Clause 6.5. GTI represents to be aware of the legal situation of VRG by reason of a due diligence procedure, based on the documents requested and examined by GTI, which are annexed to this Agreement as Attachment VIII.

Clause 6.6. GTI represents to be aware of the financial situation of VRG, as shown in the unaudited Balance Sheet and other financial statements prepared on March 15, 2006.

Clause 6.7. GTI represents and warrants that all the rights to brands owned by VarigLog, in all their variations, names and logos, including those containing the name "VARIG", shall not be impaired or restricted in any manner whatsoever, provided that they are always used together with an indication of cargo or logistic activity or, further, with the abbreviation "Log". GTI represents that it has knowledge of and will not oppose itself to the use, by VarigLog, of the brands "VarigLog", "Velog" or similar brands, under penalty of payment of the corresponding losses and damages. GTI further agrees to assign to VarigLog, on a free-of-charge basis, the brands "Varig Encomenda Express", "Varig Cargo" and "VEX", registered under numbers 821261843, 819790850 and 822636328, respectively, with the National Industrial Property Institute.

Clause 6.8. In the event of any restriction imposed by any Authority on the rights to the brands owned by Variglog, in all their variations, names and logos, the parties shall immediately enter into all the agreements and contracts as may be required for overcoming such restriction, allowing VarigLog to continue to use such brands for an indefinite term for identification of its products without any money payment or other kind of consideration whatsoever.

Clause 6.9. On this date, GTI further represents and warrants to VarigLog that:

    (a)    GTI is a company duly organized, validly existing and in regular standing in relation to the laws of the country where it is organized. GTI has power and authority to own, lease or otherwise hold and dispose of its properties and assets, as well as to conduct and develop its business as it is currently conducted.

    (b)    GTI represents that it has met all the requirements provided for in the Brazilian Aeronautic Code for the exercise of the activities provided for in its Bylaws, as well as for the exercise of the activities provided for in the Bylaws of its Affiliates and Controlled Companies.

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178        Livro /Book  302        Fls/Sheet  n° 37

(c)    GTI represents that it is a subsidiary of GLAI, without any warrant or other conversion instrument having been issued to or being in possession of third parties not belonging to its economic group.

(d)    GTI is fully empowered to enter into this Agreement and perform its obligations provided for hereunder. GTI's execution of this Agreement and performance of the transactions provided for herein have been duly and validly effected in accordance with GTI's respective Bylaws and no other act or procedure is required from GTI for authorizing the execution, delivery and performance of this Agreement or of the transactions contemplated herein.

(e)    The execution and compliance of this Agreement by GTI and the performance of the transactions contemplated herein by GTI shall not give rise to violation or default of any agreement or Law.

(f)    There is no lawsuit involving GTI, whether pending or threatened, or known to GTI, before any judicial or arbitration court, or Government Authority, which, if adversely decided, will materially interfere with its capacity to comply with its obligations hereunder.

(g)    This Agreement and eventual amendments hereto constitute lawful, valid and binding obligations of GTI, enforceable against it, in conformity with their terms.

### Clause Seven
REPRESENTATIONS, WARRANTIES AND COVENANTS OF VARIGLOG AND VOLO

**Clause 7.1.** VRG represents that it has not omitted the existence of any association, consortium or purchase of share or corporate interest, or other agreements relating to any entities, legal entities or enterprises.

**Clause 7.2.** This Agreement constitutes VarigLog's and Volo's lawful, valid and binding obligation, enforceable against them, in conformity with its terms.

**Clause 7.3.** All VRG operations are and have always been carried out in strict compliance with the applicable laws and regulations, having been duly, correctly and fully recorded according to generally accepted accounting principles, applied on a consistent basis.

**Clause 7.4.** VarigLog and Volo represent that they have conducted VRG business with due regard to diligence, loyalty and business judgment rules principles and duties, as provided for by law. Without prejudice to the provisions



Rua Critios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet  nº 38 |
|---|---|---|

in Clause 8.3.(c), any eventual loss arising out of strategic or commercial decisions made by VarigLog and by Volo in compliance with such parameters shall not be subject to indemnity or discount of the Acquisition Price.

**Clause 7.5.** VRG has provided to GTI a full list of the bank accounts held by it, as set forth for in Attachment IX,.

**Clause 7.6.** There are not any commitments to sell any of VRG's permanent assets in effect up to this date. Sales carried out prior to this date are duly recorded in VRG's accounting records. There are neither any pending commitments for acquisition of any properties to be added to VRG's permanent assets.

**Clause 7.7.** VarigLog irrevocably and irreversibly agrees to pay-in, in Brazilian currency, the second portion of the capital increase resolved at the AGE (Special Meeting of Shareholders) held on September 18, 2006, in the amount of one hundred and one million, four hundred and forty-seven thousand, nine hundred and ninety-three reais (R$ 101,447,993.00) until the date of the event mentioned in Clause 9.2.

**Clause 7.8.** VRG performed and has continued to perform all its obligations, of whatever nature they may be, including civil, commercial, tax, labor, social security or other obligations. VRG has timely paid all the taxes payable by it, as well as those levied on its income, properties, rights and business. All eventual tax returns and tax assessments required by law have been properly and timely prepared and filed with whom in law admitted. VRG has not failed to pay any social security contributions or other liabilities of a labor or tax nature owed by it up to this date.

**Clause 7.9.** As of this date, there are not any protested bills or any actions, demands, pleading or claims of any nature whatsoever which may affect this purchase and sale of shares or VarigLog's and Volo's capacity to comply with all the provisions set forth herein.

**Clause 7.10.** As of this date, no indemnity or termination pay of a labor nature with respect to VRG's employees is due by VRG with respect to employment contracts entered into by it with effective date after the judicial sale of the UPV, pursuant to the terms of the Invitation to Bid. VRG represents that it fully performed and has continued to fully perform all labor obligations to which it is bound, the referred employment contracts being in perfect legal order.

*Rua Critios 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

*Gilda Barreto Mello da Silva*

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  nº 39

**Clause 7.11.** Except for the obligations listed in this Agreement and those disclosed in the course of the due diligence that preceded the execution of this Agreement, VRG does not have, as of this date, any obligations or liabilities arising out of any loans or credit facilities, bank account guarantee agreements, or guarantee agreements of any kind whatsoever, including on third party's behalf, or for debentures or securities of any nature, nor has it undertaken any other obligations, with respect to its own or third parties' debt, either for cash payment or for performance of other obligations. No agreements have been entered into by VRG with respect to loan to any third parties.

**Clause 7.12.** VRG has regularly paid all the charges and fees required for the maintenance of the title held by it to trademark registrations or registration applications, which applications as well as the registrations are in full force and effect, without any third parties' concurrence or interference. VRG is not in violation of, nor has violated, any third party's Intellectual Property rights. Attachment X hereto contains a list of all registrations or registration applications for trademarks used by VRG.

**Clause 7.13.** Attachment XI hereto contains (a) a full list of all the powers of attorney granted by VRG for commercial purposes in effect as of this date and (b) a list of attorneys-at-law appointed by VRG for judicial purposes.

**Clause 7.14.** No information provided by VarigLog, Volo and VRG contains any misrepresentation or omission of any fact which could lead GTI to judgment error in relation to the information provided.

**Clause 7.15.** No other agreement has been entered into between VRG, Volo and VarigLog, except for those listed in Attachment VIII hereto.

**Clause 7.16.** VarigLog and Volo represent and warrant to GTI the following:

(a)    VarigLog is company duly organized, validly existing and in regular standing under the laws of the Federative Republic of Brazil and has the capacity and all the powers required for the conduction of its business as it is currently conducted. VarigLog has performed all the acts required in its Bylaws for the execution of this Agreement.

(b)    VRG is a company duly organized, validly existing and in regular standing under the laws of the Federative Republic of Brazil and has the capacity and all the powers required for the conduction of its business as it is currently conducted. VRG is managed in compliance with general

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet  n° 40 |

accepted financial and accounting principles, and does not exercise or has exercised any activities beyond the limits of its corporate objectives.

(c)    VRG is a concessionaire of public services of scheduled air transportation of passengers and cargo, both in the domestic and international markets, pursuant to the terms of the Concession Agreement entered into between VRG and the National Civil Aviation Agency on December 14, 2006, which is still valid and in full force and effect.

(d)    The capital stock of VRG is three hundred and seven million, three hundred and ninety-five thousand, four hundred and ninety-three reais (R$ 307,395,493.00), represented by three hundred and seven million, three hundred and ninety-five thousand, four hundred and ninety-three (307,395,493) shares, of which one hundred and twenty-two million, nine hundred and fifty-eight thousand, one hundred and ninety-eight (122,958,198) are Class A common shares, thirty million, seven hundred and thirty-nine thousand, five hundred and forty-nine (30,739,549) are Class B common shares and one hundred and fifty-three million, six hundred and ninety-seven thousand, seven hundred and forty-six (153,697,746) are preferred shares, all of them registered and with no face value. Class B common shares may not be converted into class A common shares and may not exceed twenty per cent (20%) of the total number of common shares issued by the company. VarigLog holds ninety-nine per cent (99%) of the subscribed shares.

(e)    VarigLog and Volo are lawful holders, owners and possessors of all the shares issued by VRG, which shares, as of this date, are free and clear of any and all liens, charges, restrictions, debts, options, preferences, third party's rights or encumbrances, requirements, contracts, sale commitments, voting or veto agreements, pledge, seizure and escrows whatsoever.

**Clause 7.17.** Except for the representations and warranties set forth in this Chapter, VarigLog, by itself and/or by intermediaries and/or by Related Parties does not make any other representation or warranty, whether express or implicit, on GTI's behalf, with reference to any other matter.

## Clause Eight
### INDEMNITIES

**Clause 8.1.** – GTI agrees to indemnify, defend and hold VarigLog, Volo and/or their respective direct or indirect shareholders, as well as, as the case may be, their respective directors, officers, employees, agents, successors, assignees

*Rua Critiba 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet   nº 41 |
| --- | --- | --- |

and Affiliates, as well as, as the case may be, the respective directors, officers, employees, agents, successors, assignees and Affiliates (each of them, an "Indemnified Party"), harmless from and against any losses incurred by reason of:

(a)    misrepresentation, omission, error, unsuitability or inaccuracy of any representation or warranty made by GTI in the manner provided for in Clause Six of this Agreement; or

(b)    violation by GTI of any of its obligations set forth in this Agreement.

**Clause 8.2.** In case VarigLog and/or its direct or indirect shareholders, as well as its directors/officers, are served summons, notices, infraction notices, claims or process, inside or outside court, for any liability which, under the terms of this Agreement, should not be charged against them, VarigLog shall communicate such event by notice to GTI within a period which results, at least, in two thirds (2/3) of the legal term for file a defense or challenge against the claim. The notice sent by VarigLog, Volo and/or their direct or indirect shareholders as well as directors/officers to GTI must identify the nature of the liability and be enclosed with a copy of the relevant summons, notice, infraction notice, claim or service of process.

**Clause 8.2.1.** GTI, in this case, within the legal term for filing a defense or challenge against the claim, will be entitled to choose between: (a) settling the pending matter, by immediately providing the means and/or funds necessary for the referred payment to VarigLog, Volo and/or their direct or indirect shareholders, as well as their directors/officers, as the case may be, or (b) challenging or defending the claim, in which case a final non-appellable judgment will awaited in the lawsuit. If (a) the final non-appellable judgment is fully favorable, nothing shall be due; if (b) the decision is partially favorable, or completely unfavorable, GTI and/or VRG shall indemnify the full amount of the award, excluding costs and other expenses directly incurred by GTI and/or VRG. In case of full or partial default by VRG and/or by GTI, they will incur the losses suffered by VarigLog, Volo and/or their direct or indirect shareholders, as well as their directors/officers, upon prompt and full payment of the amount corresponding to the award, added by such losses.

**Clause 8.2.2.** GTI's decision either to settle the pending matter and immediately indemnify the losses suffered by VarigLog and/or its direct or indirect shareholders, as well as its officers, or to defend or challenge the above mentioned claim, shall be made during the legal term for filing a defense or challenge as mentioned in this clause, under penalty that, after the referred term is elapsed without any defense or challenge having been filed, the loss will be

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet  n° 42 |

deemed actually suffered by VarigLog and/or its direct or indirect shareholders, as well as its directors/officers and, after the calculation of the liability, added by the respective charges, it shall result in GTI's and/or VRG's obligation to immediately pay the indemnity owed to VarigLog and/or its direct or indirect shareholders, as well as its directors/officers, with respect to the loss arising out of the referred claim.

Clause 8.2.3. In either case in which GTI and/or VRG choose to defend or challenge the claim, they will bear all the charges and expenses in connection with the defense of VarigLog and/or its direct or indirect shareholders, as well as its directors/officers, as the case may be, such expenses including attorney's fees, legal costs (including appeal costs), expert examination, liability for payment of prevailing party's legal and court fees, delinquent interests, fine, monetary restatement, judicial and extrajudicial deposits, payments or performance of obligations arising out of injunctions granted by the court by way of advance relief or not subject to appeal with suspensive effect, and anything else as may be charged, timely effecting all necessary disbursements, deposits or payments, in conformity with the applicable laws. The counsels for defense of such lawsuits will be appointed by VRG and/or GTI. In case VarigLog and/or its direct or indirect shareholders, as well as its directors/officers, shall decide, as the case may be, to retain a different counsel than the one appointed by VRG or GTI, they shall bear the respective attorneys' fees.

Clause 8.2.4. If GTI and/or VRG shall decide to file a defense or challenge against the claim, under the terms of this clause, they since now agree to allow the work to be easily performed, by supplying and arranging for the supply, to the professionals selected by VarigLog and/or its direct or indirect shareholders, as well as its directors/officers, of all available data and information, as may be necessary for the defense of the claim, with the expenses resulting therefrom to be borne by GTI, and or by VRG.

Clause 8.2.5. Under the terms of this clause, the parties agree that, if GTI shall so decide, the claim shall be discussed until a final non-appellable judgment is rendered in the matter. It is understood, however, that GTI shall be entitled, if so previously communicated to VarigLog and/or its direct or indirect shareholders, as well as its directors/officers, to waive the filing of a lawsuit, in case of a decision rendered in an administrative proceeding, and to waive the filing of appeals, either in a judicial or administrative proceeding. In these cases, the final decision rendered in the lawsuit up to then, without any appeal, whether judicial or administrative, having been filed against it, shall be deemed as final and conclusive, for effect of determining the amount of the actual losses to be indemnified to VarigLog and/or its direct or indirect shareholders, as well as its directors/officers.

*Rua Critios 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book  302 | Fls/Sheet   nº 43 |
|---|---|---|

**Clause 8.2.6.** It is further agreed between the parties that any payments owed by GTI and/or VRG to VarigLog and/or its direct or indirect shareholders, as well as its directors/officers hereunder not effected within the term established for such purpose, shall be subject to monetary restatement, in conformity with the IGPM-FGV or any other index adopted in substitution thereof, until the date of the actual payment, added by all the charges and expenses suffered or incurred by VarigLog and/or its direct or indirect shareholders, as well as its directors/officers in the collection of such debts, added by interest of one per cent (1%) monthly and fine of two per cent (2%) on the final updated amount.

**Clause 8.2.7.** For effects of this Clause, it is since now agreed that "immediate" or "immediately" shall mean a term of up to five (5) business days, unless a shorter term is required.

**Clause 8.3.** VarigLog and Volo agree to indemnify, defend and hold VRG and/or GTI and/or their direct or indirect shareholders, as well as, as the case may be, their respective directors, officers, employees, agents, successors, assignees and Affiliates, as well as, as the case may be, their respective directors, officers, employees, agents, successors, assignees and Affiliates (each of them, an "Indemnified Party"), harmless from and against any losses incurred by reason of:

    (a)   misrepresentation, omission, error, unsuitability or inaccuracy of any representation or warranty made by VarigLog and/or Volo hereunder; and

    (b)   violation by VarigLog and/or Volo of any of their obligations set forth in this Agreement; and

    (c)   any and all liability, namely, any award without suspensive effect due to appeal or competent judicial or administrative remedy, arising solely out of actions or omissions on the part of VRG's directors/officers elected in conformity with the Bylaws, employees under employment contract with the company, or agents, originating from facts occurred as from July 21, 2006 until the date on which the suspensive condition set forth in Clause 9.2 has been satisfied.

**Clause 8.4.** In case GTI and/or its direct or indirect shareholders, as well as its directors/officers, are served summons, notices, infraction notices, claims or process, inside or outside court, for any liability which, under the terms of this Agreement, should not be charged against them, GTI shall communicate such event by notice to VarigLog within a period resulting in at least two thirds (2/3 of

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30,178          Livro /Book  302          Fls/Sheet  n° 44

the legal term for filing a defense or challenge against the claim. The notice sent by GTI and/or its direct or indirect shareholders, as well as its directors/officers, to VarigLog must identify the nature of the liability and be enclosed with a copy of the relevant summons, notice, infraction notice, claim or service of process.

Clause 8.4.1. VarigLog, in this case, within the legal term for filing a defense or challenge against the liability, will be entitled to choose between: (a) settling the pending matter, by immediately providing the means and/or funds necessary for the referred payment to GTI and/or its direct or indirect shareholders, as well as its directors/officers, as the case may be, or (b) challenging or defending the claim, in which case a final non-appealable judgment will awaited in the lawsuit. If (a) the final non-appealable judgment is fully favorable, nothing shall be due; if (b) the decision is partially favorable, or completely unfavorable, VarigLog shall indemnify the full amount of the award, excluding costs and other expenses directly incurred by GTI and/or VRG. In case of full or partial default by VarigLog, it will incur the losses suffered by GTI and/or its direct or indirect shareholders, as well as its directors/officers, upon prompt and full payment of the amount corresponding to the award, added by such losses.

Clause 8.4.2. VarigLog's decision either to settle the pending matter and immediately indemnify the losses suffered by GTI and/or its direct or indirect shareholders, as well as its officers, or to defend or challenge the above mentioned claim, shall be made during the legal term for filing a defense or challenge as mentioned in this clause, under penalty that, after the referred term is elapsed without any defense or challenge having been filed, the loss will be deemed actually suffered by GTI and/or its direct or indirect shareholders, as well as its directors/officers and, after the calculation of the liability, added by the respective charges, it shall result in VarigLog's and/or VRG's obligation to immediately pay the indemnity owed to GTI and/or its direct or indirect shareholders, as well as its directors/officers, with respect to the loss arising out of the referred claim.

Clause 8.4.3. In either case in which VarigLog chooses to defend or challenge the claim, it will bear all the charges and expenses in connection with the defense of GTI and/or its direct or indirect shareholders, as well as its directors/officers, as the case may be, such expenses including attorney's fees, legal costs (including appeal costs), expert examination, liability for payment of prevailing party's legal and court fees, delinquent interests, fine, monetary restatement, judicial and extrajudicial deposits, payments or performance of obligations arising out of injunctions granted by the court by way of advance relief or not subject to appeal with suspensive effect, and anything else as may be charged, timely effecting all necessary disbursements, deposits or payments, in conformity with the applicable laws. The counsels for defense of such lawsuits

Rua Crítios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet nº 45 |
| --- | --- | --- |

will be appointed by VarigLog. In case GTI and/or its direct or indirect shareholders, as well as its directors/officers, shall decide, as the case may be, to retain a different counsel than the one appointed by VarigLog, they shall bear the respective attorneys' fees.

**Clause 8.4.4.** If VarigLog shall decide to file a defense or challenge against the claim, under the terms of this clause, it since now agrees to allow the work to be easily performed, by supplying and arranging for the supply, to the professionals selected by GTI and/or its direct or indirect shareholders, as well as its directors/officers, of all available data and information, as may be necessary for the defense of the claim, with the expenses resulting therefrom to be borne by VarigLog.

**Clause 8.4.5.** Under the terms of this clause, the parties agree that, if VarigLog shall so decide, the claim shall be discussed until a final non-appellable judgment is rendered in the matter. It is understood, however, that VarigLog shall be entitled, if so previously communicated to GTI and/or its direct or indirect shareholders, as well as its directors/officers, to waive the filing of a lawsuit, in case of a decision rendered in an administrative proceeding, and to waive the filing of appeals, either in a judicial or administrative proceeding. In these cases, the final decision rendered in the lawsuit up to then, without any appeal, whether judicial or administrative, having been filed against it, shall be deemed as final and conclusive, for effect of determining the amount of the actual losses to be indemnified to GTI and/or its direct or indirect shareholders, as well as its directors/officers.

**Clause 8.4.6.** It is further agreed between the parties that any payments owed by VarigLog to GTI and/or its direct or indirect shareholders, as well as its directors/officers hereunder not effected within the term established for such purpose, shall be subject to monetary restatement, in conformity with the IGPM-FGV or any other index adopted in substitution thereof, until the date of the actual payment, added by all the charges and expenses suffered or incurred by GTI and/or its direct or indirect shareholders, as well as its directors/officers in the collection of such debts, added by interest of one per cent (1%) monthly and fine of two per cent (2%) on the final updated amount.

**Clause 8.4.7.** For effects of this Clause, it is since now agreed that "immediate" or "immediately" mean a term of up to five (5) business days, unless a shorter term is required.

**Clause Nine**
GOVERNMENT AUTHORIZATIONS AND APPROVALS

*Rua Critos 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo*

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet n° 46 |

**Clause 9.1.** VarigLog, Volo and GTI shall cooperate with each other by making available any additional information related to VRG, as may be reasonably requested by the other party, for the perfect conclusion of the transaction contemplated herein. As from the execution date of this Agreement, VarigLog, Volo and GTI shall cooperate and make their best efforts to obtain all the consents, approvals and agreements, providing all information and sending all notices and arranging for all filings before any Government Authorities as may be necessary in relation to the transactions contemplated hereunder.

**Clause 9.1.1.** All the information and documents necessary for preparing the mandatory notices established in Clause 9.1 shall be exchanged between the Parties under strict confidentiality and shall not be used for any other purposes than the mandatory notices provided for in applicable laws and related to this Agreement. Any market information necessary for preparing the notices to which the other Party shall not have access must be solely and exclusively exchanged between the independent counsels of the Parties.

**I – ANAC's Prior Authorization**

**Clause 9.2.** The transfer of the shares subject matter of this Agreement is subject to the condition precedent of Prior Approval by the ANAC, under the terms of articles 184 and 185 of the Brazilian Aeronautic Code, and for such purpose the Parties, as of this date, submit an official letter to that Agency and are undertaken to make their best efforts to such effect. The condition precedent mentioned herein shall be deemed to have been satisfied on the date of publication in the Federal Official Gazette of the minutes of the Meeting of the Collegiate Board of Directors of the ANAC in which a resolution was adopted regarding this matter.

**Clause 9.2.1.** Within three (3) business days from the publication in the Federal Official Gazette of the minutes of the Meeting of the Collegiate Board of Directors of the ANAC in which the Prior Approval provided for in this Clause shall have been granted, GTI shall effect the payment of the balance of the Acquisition Price, under the terms of Clause Four hereof.

**Clause 9.2.2.** On the date the Prior Approval provided for in this Clause is granted by the ANAC, GTI will become fully responsible for the management of the company.

**Clause 9.2.3.** In the event the ANAC does not grant the prior approval within fifteen (15) days from the date of submission of the corresponding request by the parties, the percentage already paid by GTI, as set forth in item (a) of

*Rua Cnbos 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet  n° 47 |
|---|---|---|

Clause 4.2 hereof, shall not be subject to refund or setoff and, at GTI's exclusive discretion, which decision will be communicated to VRG within thirty (30) days counted from ANAC's decision, may be converted into nine point three hundred and seventy-five per cent (9.375%) of the preferred shares of VRG with tag-along rights on the basis of one hundred per cent (100%), as result of which the transfer of the remainder of the shares of the capital stock of VRG subject matter of this Agreement shall be no longer effective, which fact shall be immediately communicated to the ANAC and to the CADE.

Clause 9.2.3.1 – In case GTI does not exercise the purchase option within the period provided for in the preceding clause, it will continue to have the right to exercise such option for up to six (6) months, provided, however, that the percentage of preferred shares shall be proportional to the current basis established by the parties, on a final character, as three hundred and twenty million North-American Dollars (USD 320,000,000.00).

## II – CADE's Approval

Clause 9.3. GTI shall be responsible for coordinating and submitting the transaction provided for in this Agreement to the CADE and to the other antitrust authorities, being responsible for following-up the respective process until final decision, save in the event of the final part of Clause 9.2.3 hereof, in which case it shall be coordinated and submitted by VRG, with GTI's cooperation. Under the terms of Clause 9.1, and as may be requested by GTI, VarigLog and Volo agree to cooperate with GTI and to provide the necessary assistance in order to timely meet all the requirements provided for by law or by the competent authorities in connection with any administrative and judicial proceedings related to this Agreement. VRG and/or the sellers shall not, at any time, file any notices or provide to the competent antitrust authorities any information related to the authorization process subject matter of this Clause without such notices or authorizations being previously submitted to and authorized by GTI.

Clause 9.3.1. All the related costs incurred for submission to and approval of the transaction contemplated in this Agreement by the CADE, including fees payable to the professionals involved in such approval, rates and charges related to the presentation, shall be solely borne by GTI. Excluded from such liability are the fees incurred by VarigLog with attorneys eventually retained exclusively by them, even though such attorneys may be involved in the collection of data and discussion of draft documents to be submitted to the competent authorities under the terms of Clause 9.3.

Clause 9.3.2. In the event the CADE shall condition the approval of the transaction to changes in the structure defined by the Parties hereunder, the



Rua Critios 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.864 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet nº 48 |
|---|---|---|

Parties shall make their best efforts to comply with such requirements in such a manner as to maintain the spirit and the economic balance of this transaction. In case the Parties are unable to agree in relation to the changes in the transaction structure, or if the CADE decides not to approve the transaction, it shall be GTI's sole duty to assign all the rights and obligations arising out of this Agreement to a third party that meets the necessary legal requirements, selected by GTI with VarigLog's consent, being undertaken before the latter to honor all the obligations provided for in this Agreement. GTI and GLAI undertake joint and several liability for the performance of all the obligations provided for in this Agreement in the event of the above mentioned assignment.

**Clause 9.3.3.** In the event the CADE shall grant a qualified approval to the transaction contemplated hereunder, GTI undertakes any and all responsibility for performing the obligations imposed thereby, including those arising out of possible changes in the UPV and of the protection set forth in art. 60, sole paragraph, and art. 142 of the LRE. The situation provided for in this Clause may not give rise to any claim of refund or recalculation of the Acquisition Price.

**Clause 9.4.** Any eventual delay or failure to obtain the Government Authorizations described in the clauses of this Chapter does not exempt GTI and GLAI from any responsibility undertaken by them hereunder, save if the referred delay or failure has been caused by VRG's and/or of VarigLog's actions or omissions.

### Clause Ten
#### TRANSITION

**Clause 10.1** – The Transition Period begins on the date the prior approval is granted by the ANAC and ends on the date of the final approval of the transaction contemplated hereunder by the CADE.

**Clause 10.2** – After the prior approval is granted by the ANAC, GTI shall undertake, under its sole responsibility, without any exception and in any case whatsoever, including in those cases provided for in Clauses 9.3.2 and 9.3.3, all the costs and expenses related to the company, either past due or falling due, including those necessary for ensuring the full enforcement of the operations as well as the rights acquired in the Auction.

### Clause Eleven
#### NON-COMPETITION

**I – On the part of VarigLog and Volo**

**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  nº 49

---

**Clause 11.1.** By this Agreement and in the best form of law, VarigLog and Volo agree, for a period of three (3) years counted from the date the prior approval is granted by the ANAC, not to: (i) hold, directly or indirectly, either as partners, shareholders or quotaholders or usufructuaries, any management, administration or consultancy positions in, or, participate, as employees, service providers, or self-employed works, in any companies, businesses or enterprises operating in Brazil in the same branch of activity as VRG, that is, all types of passenger air transportation; or (ii) solicit, entice or hire any person employed with and/or retained by VRG and/or by GTI and/or by its Affiliates, to leave such job or terminate his/her employment contract, for any reason or purpose whatsoever, which may give rise to violation of the other provisions set forth in this Clause.

**II – On the part of GTI**

**Clause 11.2.** VRG shall continue to exploit the activity of cargo transportation using the holds of aircraft used for passenger transportation, it being certain, however, that by this Agreement and in the best form of law, GTI and/or VRG agree, for a period of three (3) years counted from the date on which the prior approval is granted by the ANAC, not to: (i) operate, directly or indirectly, aircraft used exclusively for transportation of air cargo, as well as not to organize, directly or indirectly any company whose main objective is to engage in all types of air transportation of cargo; and (ii) solicit or entice any person employed with and/or retained by VarigLog, to leave such job or terminate his/her employment contract, for any reason or purpose whatsoever, which may give rise to violation of the other provisions hereof. VRG further agrees not to use "VARIG" brand, either separately or combined to other brands, for designating its air cargo transportation operations, without limit as for time.

**Clause Twelve**
CONFIDENTIALITY

**Clause 12.1.** The Parties, by themselves and by their directors, officers, employees and agents, agree to keep absolute secrecy of the existence and terms of this Agreement. The disclosure of any information about this Agreement shall not be admitted except upon consent, in writing, by all the Parties or if required under a legal obligation or by court order issued by a competent authority and, even in this case, to the exact extent in which it may be required.

**Clause 12.1.1.** In case either Party may be required to disclose the contents of this Agreement by reason of a judicial order issued by a Competent Authority, it

Rua Critios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP

*Gilda Barreto Mello da Silva*
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 316 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8,542.687-3

Tradução/Translation 30.178     Livro /Book 302     Fls/Sheet n° 50

shall do so by obtaining from the addressee a confidentiality agreement or, if such is impossible, by requesting confidential treatment to be awarded to the document.

**Clause 12.1.2.** VarigLog, by itself and/or by intermediaries, or by direct or indirect controlling parties, and/or by Persons Related thereto, is irreversibly and irrevocably undertaken not to disclose, under the penalties of law, to other third parties than GTI or persons indicated in writing by the latter, any information or data of an operating or technological nature, used in VARIG operations, of which they may have become aware by reason of their direct or indirect condition as shareholders or directors/officers of VRG.

### Clause Thirteen
MISCELLANEOUS

**Clause 13.1.** This Agreement is entered into on an irrevocable and irreversible basis and is binding upon the Parties and their respective successors and authorized assignees at any title. This Agreement (and the rights and obligations provided for hereunder) may not be assigned by either party without the prior consent, in writing, by the other parties hereto.

**Clause 13.2.**     (a) All notices or communications required or permitted to be made or arising out of the terms of this Agreement, by either Party to the other parties hereto, shall be made in writing, being sent to the addresses indicated below or to the addresses which any Parties may designate in writing to the other parties by notice sent under the terms hereof, and delivered personally or by registered mail (with return receipt or equivalent receipt), or by fac-simile or telegram, confirmed in writing as above mentioned, or by letter sent through a registry office or court. Any notice or communication delivered by any other form than through a registry office or court shall be deemed to have been received immediately, in case of personal delivery, within forty-eight (48) hours after its forwarding, in case of fac-simile, e-mail or telegram, and five (5) days after its mailing, in case of registered mail.

    (b) The parties shall receive notices at the addresses indicated below.

    **To VarigLog:**
Varig Logística S.A.
Att.: Mr. Marco Antonio Audi
Rua Fidêncio Ramos, n° 223, 14° andar, Vila Olímpia, CEP 04551-010
São Paulo/SP



*Rua Critios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

*Gilda Barreto Mello da Silva*
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  n° 51

To GTI:
GTI S.A.
Att.: Mr. Henrique Constantino
Cc: Mrs. Carla Andréa Coelho
Rua Gomes de Carvalho, 1629, Vila Olímpia, CEP 04547-006,
Paulo/SP.

To GLAI:
Gol Linhas Aéreas Inteligentes S/A
Att.: Mr. Henrique Constantino
Cc: Mrs. Carla Andréa Coelho
Rua Gomes de Carvalho, 1629, Vila Olímpia, CEP 04547-006,
Paulo/SP.

To Volo:
Volo do Brasil S/A
Att.: Mr. Marco Antonio Audi
Rua Visconde de Inhaúma, n° 77, 10° andar, parte, Centro, CEP 20091-
007, Rio de Janeiro/RJ

**Clause 13.3.** Any changes to the data of any of the Parties indicated in the
preceding item shall be promptly informed to the other Parties hereto upon
notice sent pursuant to the terms of this Clause.

**Clause 13.4.** Any term or provision hereof deemed to be invalid or non-
enforceable in any jurisdiction shall, in relation to such jurisdiction, be
unenforceable only to the extent of such invalidity or non-enforceability, without
affecting the validity and enforceability of the remaining terms and provisions
hereof. The parties shall negotiate in good faith the replacement of the invalid
provisions by others reflecting, as much as possible, the intent provided for
therein.

**Clause 13.5.** The references and definitions contained in this Agreement shall
be construed regardless of having been formulated in the plural or singular
forms, or by reason of different gender. The headings of Clauses have been
inserted for easiness of reference of the provisions and may not be invoked to
disqualify or change the contents of any clauses hereof.

**Clause 13.6.** This Agreement and its Attachments signed and initialed on this
date constitute the entire agreement between the Parties as for the business
transacted hereunder. This Agreement and its Attachments shall govern the
relations between the parties as for the business transacted hereunder.

*Rua Critos 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*

Gilda Barreto Mello da Silva

Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 312 - Idioma: Inglês
CPF 614.411.758-15 - JARAS 10.360.430.884 - OOM 6.542.887-0

| Tradução/Translation 30.1.70 | Livro/Book  302 | Flo/Sheet  n° 50 |

Clause 13.7. No change  amendment or modification of this Agreement shall be deemed valid or be binding upon the Parties unless if such change, amendment or modification is made in writing and is duly signed by all the Parties

Clause 13.8. If one of the Parties shall fail to exercise any right, power or privilege hereunder, or shall delay in the exercise thereof, such failure or delay will not constitute a waiver, desistence or novation of this Agreement, nor any separate or partial exercise thereof shall prevent another or further exercise of the same or exercise of any other power or privilege under the terms of this Agreement. Neither Party shall be deemed to have waived any provision of this Agreement unless such waiver is made in writing and signed by such Party. No waiver shall be deemed a continued waiver unless if so declared in writing.

Clause 13.9. Each Party agrees to take all the necessary acts for giving effect to the provisions hereof. In case the Parties shall become aware of any agreement, contract  or  instrument  entered  into  by  the  Parties  which  prevents  the performance of any of their obligations hereunder or the satisfaction of the Transaction Conditions, the Parties agree to negotiate in good faith with the purpose of overcoming such impediments and giving effect to the purposes hereof.

Clause 13.10. This Agreement is executed on an irrevocable and irreversible basis and is binding upon the parties hereto  their successors and assignees at any title whatsoever

Clause 13.11. The parties hereto understand and agree that all the terms and conditions provided for herein shall be subject to specific performance, as set forth in the Brazilian Code of Civil Procedure

Clause 13.12. The Parties acknowledge that this Agreement is an extrajudicial execution instrument  as provided for in article 585, item II, of the Code of Civil Procedure, for all purposes, including for the purposes of article 632 of the Code of Civil Procedure

Clause 13.13. The parties agree to provide each other, as requested  with information  and copies of documents related to the steps required for the performance of all the obligations undertaken herein.

### Clause Fourteen
#### ARBITRATION  APPLICABLE LAW AND COURT ELECTION

## Gilda Barreto Mello da Silva
Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet nº 53 |
| --- | --- | --- |

**Clause 14.1.** -- All the disputes arising out of or related to this Agreement including, among others, those involving its validity, effectiveness, violation, intepretation, expiration, termination and related matters, shall be settled by arbitration, pursuant to the provisions in Law 9307/96 ("Arbitration Law"), in accordance with the below stipulated conditions.

**Clause 14.2.** The dispute shall be submitted to the CCI ("CCI"), pursuant to its Regulation ("Regulation") in effect on the date the arbitration request is filed.

**Clause 14.3.** Arbitration hearings, petitions and documents shall be conducted in Portuguese and, if requested by any of the parties or the arbitrator, simultaneous translation into English shall be provided. The arbitration place shall be the city of São Paulo.

**Clause 14.4.** Save if there is more than one claimant or respondent, in which case the claimants, jointly, and the respondents, jointly, shall appoint one arbitrator, the dispute shall be examined and decided by three (3) arbitrators, each of them independent and impartial (the "Arbitration Panel"), provided that each of the Parties shall be entitled to appoint one arbitrator within the period provided for in the Regulation, which period shall never exceed 20 days. The two arbitrators appointed as mentioned above shall, in common agreement, appoint the third arbitrator who will act as President of the Arbitration Panel. In case the two (2) arbitrators appointed by the Parties fail to appoint the third arbitrator within the period of ten (10) days counted from the date on which the last one of the two (2) arbitrators was appointed or one of the parties fails to appoint its arbitrator, it shall be the duty of the CCI to appoint the third arbitrator.

**Clause 14.5.** The arbitrators selected as above mentioned must be fluent in the English language, whatever their nationality may be.

**Clause 14.6.** This Agreement shall be construed and governed by the Brazilian laws, and the Arbitration Panel shall decide the dispute and litigation in accordance with the Brazilian laws, without taking into consideration any international private law rule which may cause the laws of any other country or jurisdiction than Brazil to be applicable.

**Clause 14.7.** The Arbitration Panel shall decide the matters submitted to its examination solely in accordance with law rules, and shall base its decision on the Brazilian laws.

**Clause 14.8.** The arbitration award shall be rendered within not more than six (6) months, counted from the installation of the Arbitration Panel, in writing in

Rua Critios 251 Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 - 3744-2522 - São Paulo, SP

**Gilda Barreto Mello da Silva**

Tradutora Pública e Intérprete Comercial
Public Certified Translator
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430 884 - CCM 8.542.687-3

Tradução/Translation 30.178          Livro /Book  302          Fls/Sheet  nº 54

Portuguese, and in case it may be so requested, with a version in English language, describing the grounds for the arbitration decision, signed by all the arbitrators comprising the Arbitration Panel. In case of divergence between the Portuguese and English versions of the arbitration award, the Portuguese version shall prevail.

Clause 14.9. At any time before the installation of the Arbitration Panel, any Party may request to the competent court of the Judiciary Branch a temporary restraining order seeking the protection and safeguard of rights or as a preparatory step prior to the installation of the arbitration panel, without such request being construed as a waiver of the arbitration procedure. For the exercise of the mentioned court protections the Parties elect the Central Court of the Judicial District of São Paulo, at the express waiver of any other, however privileged it may be. After the installation of the Arbitration Panel, temporary restraining orders shall be requested to it.

Clause 14.10. VRG, a private entrepreneurial company with head-office at Avenida Vinte de Janeiro, nº 330, Setor de Carga O, part, Ilha do Governador, State of Rio de Janeiro, CEP 21941-570, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 07.575.651/0001-59, herein represented by its attorneys-in-fact, Marco Antonio Audi and Luiz Eduardo Gallo, as above identified, is a party to this Agreement, declaring its full knowledge of this transaction.

Clause 14.1. Gol Linhas Aéreas Inteligentes S/A, a company with head-office at Rua Gomes de Carvalho, nº 1629, 15º andar, Vila Olímpia, CEP 04547-006, in the City of São Paulo, State of São Paulo, enrolled with the CNPJ (Corporate Taxpayer Registry) under number 06.164.253/0001-87, herein represented in accordance with Article 20.(a) of its Bylaws by its Chief Executive Officer, Mr. Constantino de Oliveira Júnior, Brazilian, married, bearer of Identity Card RG nº 929.100-SEP/DF and enrolled with the CPF (Individual Taxpayer Registry) under number 417.942.901-25, and by its Investor Relations Officer, Mr. Richard Freeman Lark Jr., Brazilian, single, bearer of Identity Card RG nº 50.440.294-8-SSP/SP and enrolled with the CPF (Individual Taxpayer Registry) under number 214.996.428-73, both of them elected at the Meeting of the Board of Directors held on March 27, 2006, the minutes of which were duly registered with the State of São Paulo Trade Registry under number 94.807/06-1, on April 07, 2006, is a party to this Agreement in the capacity of intervening/consenting/guarantor party. The guarantor hereby expressly undertakes, jointly and severally with GTI, the joint responsibility before the Sellers, for all the obligations undertaken herein.

*Rua Critios 251  Apto. 112 - Morumbi - CEP 05630-040 - Tel/Fax: 3743-7547 – 3744-2522 - São Paulo, SP*



**Gilda Barreto Mello da Silva**
Tradutora Pública e Intérprete Comercial
*Public Certified Translator*
JUCESP No 318 - Idioma: Inglês
CPF 014.411.258-25 - IAPAS 10.980.430.884 - CCM 8.542.687-3

---

| Tradução/Translation 30.178 | Livro /Book 302 | Fls/Sheet  n° 55 |

---

In witness whereof, the parties execute this Agreement in three (03) counterparts of the same content and form, for one sole effect, together with the two witnesses below, present to the whole act.

São Paulo, March 28, 2007.

[illegible signatures]
**VARIG LOGÍSTICA S/A**

[illegible signatures]
**VOLO DO BRASIL SA**

[illegible signatures]
**GTI S/A**

[illegible signatures]
**GOL LINHAS AÉREAS INTELIGENTES S/A**

[illegible signatures]
**VRG LINHAS AÉREAS S/A**

Witnesses:

1. [illegible signature]              2. [illegible signature]
Name: Neide [illegible]               Name: Diana L.A. M. Sanchez
RG: 23994783-6                        RG: 32495756-7

---

NOTHING ELSE. In witness whereof, my hand and seal.
São Paulo, April 09, 2007.

Tab. Emol.:  R$ 3.182,00
Nr. Recibo:   8973

*Gilda Barreto Mello da* [signature]
GILDA BARRETO MELLO DA SILVA
Tradutora Pública Juramentada e Intérprete Comercial
Public Sworn Translator

Exhibit B

.



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK      )
                       )      ss
                       )
COUNTY OF NEW YORK     )


## CERTIFICATION


This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Portuguese into English of the attached Request for Arbitration,

dated December 27, 2007.


Evan Finch, Project Manager
Geotext Translations, Inc.


Sworn to and subscribed before me

this 7th day of April , 20 08 .


VALBONA BURDA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BU6170590
Qualified in Richmond County
My Commission Expires July 09, 2011

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel 212.631.7432 fax 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. tel 415.576.9500 fax 415.520.0525
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom tel +44.(0)20.7936.9002 fax +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com | www.geotext.com

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

Flávio Pereira Lima
Priscila Knoll Aymone

International Court of Arbitration of the

International Chamber of Commerce

ICC Arbitration

of

[stamp:] CCI – ICC
Received on JAN 2, 2008
38, Cours Albert 1$^{er}$ – Paris 8$^{ème}$

GTI S/A (Brazil)

- Claimant -

versus

1. VARIG LOGÍSTICA S/A (Brazil)

2. VOLO DO BRASIL S/A (Brazil)

3. VOLO LOGISTICS LLC (USA)

4. MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P. (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.

- Respondents -

REQUEST FOR ARBITRATION

December 27, 2007

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

Administrative Office of the
International Court of Arbitration of the
International Chamber of Commerce – ICC

    The company **GTI S.A.** ("GTI" or "Claimant"), a Brazilian corporation headquartered in the São Paulo State Capital, at Rua Tamoios, No. 246, Jardim Aeroporto – CEP 04630-000, registered in the CNPJ/MF [National Register of Legal Entities/Ministry of Finance] under No. 06.985.282/0001-95, herein represented by its counsel [**Exhibit 1**], in order to resolve the dispute arising from the "Agreement for Sale and Purchase of Equity Control in VRG Linhas Aéreas S/A and Other Covenants"(the "Agreement" – **Exhibit 2**), executed on March 28, 2007 between Claimant and Respondents, based on the ICC Arbitration Clause under Section 14 of said Agreement [**Exhibit 2**], and pursuant to Art. 4 of the ICC Rules of Arbitration (the "ICC Rules"), upon the grounds of fact and at law set forth below, hereby submits its

<u>**Request for Arbitration**</u>[1]

---

[1] The definitions adopted in this Request for Arbitration are contained in the attached list ("Definitions").

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

versus:

(i)    **VARIG LOGÍSTICA S.A.** ("VLOG" or "1st Respondent"), a Brazilian
corporation headquartered in the São Paulo State Capital at Rua Fidêncio Ramos, No.
223, 14° andar, Vila Olímpia -- CEP 04551-010, registered in the CNPJ/MF under No.
04.066.143/0001-57; and

(ii)    **VOLO DO BRASIL S.A.** ("VOLO DO BRASIL" or "2nd Respondent"), a
Brazilian corporation headquartered in the Rio de Janeiro State Capital at Rua Visconde
de Inhaúma, No. 77, 10° andar, Centro -- CEP 20091-007, registered in the CNPJ/MF
under No. 07.574.036/0001-28;

(iii)    **VOLO LOGISTICS LLC**, 2711 Centerville Road, Suite 400, Delaware, United
States of America ("VOLO LLC" or "3rd Respondent");

(iv)    **MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P.**,
520 Madison Avenue, 35th floor – New York, NY 10022, United States of America, and
**MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II**
L.P., 520 Madison Avenue, 35th floor – New York, NY 10022, United States of America
("MATLINPATTERSON Funds" or "4th Respondent");

hereinafter collectively referred to as Respondents.

## I. Summary of the Dispute

1. In early 2007, Claimant GTI was approached, in New York, by
respondents VOLO LLC and the MATLINPATTERSON Funds, which presented them
with an offer for GTI to purchase all shares in VRG Linhas Aéreas S.A. ("VRG"), a well
known Brazilian airline company. From then on, all discussions, negotiations and
meetings took place with the representatives of VOLO LLC [VOLO Logistics LLC
Operating Agreement – **Exhibit 3**]$^{2}$ and the MATLINPATTERSON Funds,

---

$^{2}$ The Operating Agreement was executed by the MATLINPATTERSON Funds on August 18, 2005 in
order to incorporate the controlled company VOLO Logistics LLC, as we quote below:
"*3. Purpose. The principal purpose of the Company shall be to engage in any lawful business that may be
engaged by a limited liability company organized under the Delaware Act, as such business activities may
be determined by the Members* [MATLINPATTERSON GLOBAL OPPORTUNITIES II L.P. and
MATLINPATTERSON GLOBAL OPPORTUNITIES (CAYMAN) II L.P.] *from time to time.*"

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

as controllers of Respondents VLOG and VOLO DO BRASIL [per Response to [official letter] Oficio/CVM/SEP/GEA-2/No. 115/07 – **Exhibit 4**].[3]

      2. The MATLINPATTERSON Funds, which are designed for private equity investments through the acquisition and divestiture of equity interests, incorporated in Brazil the companies VOLO DO BRASIL and VLOG which, in turn, incorporated the Brazilian holding company Aéreo Participações S.A. (currently named VRG Linhas Aéreas S.A., "VRG"). Said Brazilian companies, controlled by the MATLINPATTERSON Funds, served as investment vehicles for such Funds to acquire, at a judicial auction held pursuant to Art. 60 Sole § of Law 11,101/2005 (within the scope of the action for in-court restructuring of VARIG S.A. – Viação Riograndense, being processed at the 1st Commercial Court Division of Rio de Janeiro, Case No. 2005.001.072887-7), the separate production unit of VARIG S.A. – Viação Riograndense ("UPV"). The investment vehicles did not—as they do not as of this date—have a significant equity consistent with the magnitude of the business deal entered into at that time. The necessary capital for VRG's acquisition of UPV was invested in the investment vehicles by the MATLINPATTERSON Funds, which retained management control over such equity interest upon normally engaging in its business of acquiring and divesting equity interests.

      3. For this reason, the Agreement was negotiated exclusively between GTI, on the one hand, and VOLO LLC and the MATLINPATTERSON Funds on the other. Once the negotiation was completed, VOLO LLC resolved, at a Special Meeting of Shareholders of VOLO DO BRASIL held on March 28, 2007, to approve the execution of the Agreement and the

---

Managing VOLO Logistics LLC is the MATLINPATTERSON Funds' exclusive right, as expressly provided for in Section 6 of the Operating Agreement:

"6. *Management of the Company; Officers; Management Agreement. (a) The exclusive right to manage the business of the Company shall be vested in the Members* [MATLINPATTERSON GLOBAL OPPORTUNITIES II L.P. and MATLINPATTERSON GLOBAL OPPORTUNITIES (CAYMAN) II L.P.] *in accordance with the Ownership Percentages set forth on Schedule A provided that the Members may appoint one or more managers (the "Managers") to represent and set* [sic] *on behalf of the company. (...)."*

[3] Attachment I to the Response to CVM [Brazilian Securities and Exchange Commission] (Oficio/CVM/SEP/GEA-2/No. 115/07, of April 3, 2007) shows a list of those involved in the transaction for the acquisition of VRG Linhas Aéreas S.A. ("VRG"), which indicates the MATLINPATTERSON Funds' representatives: "*O) Matlin Patterson: Santiago Born (...). Lap Wai Chan (...).*" A description of said representatives can be found in a letter sent by Gol to the CVM under the reference "Additional Information to the Response to Oficio/CVM/SEP/GEA-2/No. 115/07." Per **Exhibit 4**.

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

Arbitration Clause, "the contents of which were read and approved by all those present at that meeting." [Exhibit 5].[4]

4. Thus, on March 28, 2007, Respondents VLOG and VOLO DO BRASIL—that is, the MATLINPATTERSON Funds' investment vehicles—executed an Agreement with GTI whereby they sold to the latter all of VRG shares for the total price of two hundred seventy-five million U.S. Dollars (US$ 275,000,000.00). The representatives of VLOG and VOLO DO BRASIL were only introduced to GTI at the time when the Agreement was executed, because until then all dealings had been conducted exclusively with the managers of VOLO LLC and the MATLINPATTERSON Funds, direct and indirect controllers of VLOG [Exhibit 6].[5]

5. The Agreement provides for a price adjustment, which was to be materialized, within one hundred eighty (180) days from the base date of the balance sheet prepared upon execution of the Agreement, to wit:

> "Section 5.1.1. Within one hundred eighty (180) days from the base date of the balance sheet provided for in Section 5.1 above, PriceWaterhouseCoopers shall submit a new, duly audited balance sheet, observing only and solely the same items, the same methodology as referred to in Section 5.1, having as a base date the day prior to the event contemplated in Section 9.2. (...)
>
> Section 5.1.3.1 GTI may designate, within five (5) business days from submission of the balance sheet contemplated in Section 5.1.1, a renowned audit company to validate said balance sheet in such manner as to gauge the ascertained amounts. Such validation shall be made no later than forty-five (45)

---

[4] Minutes of the Special Meeting of Shareholders of VOLO do Brasil S/A held on March 28, 2007. [Exhibit 5]

[5] E-mails exchanged between Mr. Lap Chan [MATLINPATTERSON Funds] and Mr. Richard Lark [GTI] in January 2007 to negotiate contractual clauses [Exhibit 6.A]. Contact Schedule for carrying out the Project, sent on February 12, 2007, in which Mr. Santiago Born appears on behalf of the MATLINPATTERSON Funds [Exhibit 6B]. E-mail sent by Mr. Lap Chan [MATLINPATTERSON Funds], on February 21, 2007 to GTI about the dealings, which we quote: *"I know the lawyers are in contact with each other [sic]. I think we all need [sic] to sit down together with them and discuss the legal points [sic] and business."* [Exhibit 6.C]. E-mails exchanged by Mr. Lap Chan [MATLINPATTERSON Funds] and GTI about contract drafts in March 2007 [Exhibit 6.D]. E-mail sent by Mr. Santiago Born [MATLINPATTERSON Funds] to GTI on March 27, 2007 about the Lease Agreements [Exhibit 6.E]. E-mail sent by Mr. Ahmad Al-Sati [MATLINPATTERSON Funds] to Mr. Henrique Constantino [GTI] on behalf of Mr. Santiago Born [MATLINPATTERSON Funds] on March 28, 2007 [Exhibit 6.F]. E-mail sent by Mr. Cristiano Martins, on March 11, 2007, to all participants in the transaction, including Mr. Lap Chan [MATLINPATTERSON Funds], in which the draft Agreement is discussed [Exhibit 6.G].

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

> *days from delivery of the duly supported balance sheet by*
> *PriceWaterhouseCoopers to GTI, and indicate forthwith whether or not*
> *there are any divergences with the balance sheet submitted by*
> *PriceWaterhouseCoopers. In the event of any discrepant amounts, both*
> *audit firms by mutual agreement shall choose a third renowned audit firm,*
> *equally supported by GTI and VarigLog, to resolve any such discrepancy.*
> *Said third audit firm shall have no more than twenty (20) days from its*
> *hiring in which to submit a conclusive report, which the parties hereby*
> *accept as final."[6]*

6. With some delay, caused by Respondents, procedures were started for the price adjustment,[7] upon PriceWaterhouseCoopers' submission of the revised balance sheet referred to in Section 5.1.3.1. Within the time period provided for in the Agreement, GTI designated the firm Ernst & Young Auditores Independentes S.S. ("Ernst & Young") to validate the balance sheet submitted by PriceWaterhouseCoopers, in such manner as to gauge the ascertained amounts.

7. Various controversial points emerged from a comparison of the report presented by Ernst & Young with the report prepared by PriceWaterhouseCoopers, and a discrepancy was verified between the amounts ascertained in the reports prepared by the two audit firms. The representative of VOLO LLC and the MATLINPATTERSON Funds, Mr. Lap Chan, also contacted GTI to deal with the procedures for ascertaining the price adjustment.

8. A work meeting was called for December 12, 2007 in order for Ernst & Young and PriceWaterhouseCoopers to discuss the discrepancy points and, should the divergences persist, to designate a third audit firm such as referred to in Section 5.1.3.1 of the Agreement.

---

[6] The Agreement. Per Exhibit 2.

[7] Aiming at a parity in the relationship agreed upon pursuant to the Agreement, the signatory parties thereto agreed that an adjustment of the acquisition price would be implemented in the event that any divergences were verified between the balance sheet attached to the Agreement for the transaction to be closed and the amounts actually verified in the acquired company's books of accounts after the acquisition. In order to ensure the transparency of the verification process, and to make sure that the agreed procedure would be vested in the necessary technical accounting expertise, the signatory parties to the Agreement decided that the price adjustment would be ascertained by renowned audit firms, and described in the Agreement such actions as said firms would take so that any adjustment might be ascertained, and subsequently paid, with a minimum interference by the parties.

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

9. As it were, however, on Respondents' orders, PriceWaterhouseCoopers did not attend said work meeting, which made it impossible for the amicable price adjustment procedures to be completed as provided for in the Agreement. Moreover, it sent a notice to GTI saying it would not agree to designate a third audit firm, as this would be outside the scope of its work.

10. And so, given the impossibility of making such price adjustment as contractually provided for, GTI is left with no alternative but to submit the dispute to an Arbitral Tribunal.

11. The dispute, therefore, is circumscribed to ascertaining, in arbitration, the existing divergences between the VRG balance sheet submitted by PriceWaterhouseCoopers and the VRG balance sheet submitted by Ernst & Young and, consequently, the price adjustment amount provided for in Section 5.1 *et seq.* of the Agreement.

12. It is relevant to emphasize that in every prior negotiation, and even after the Agreement was executed, during its performance, GTI continued to handle the business transactions arising from the Agreement with the representative of VOLO LLC and the MATLINPATTERSON Funds in Brazil, as evidenced by the attached documents [**Exhibit 7**].[8]

13. As one can see, VOLO LLC and the MATLINPATTERSON Funds participated actively in the negotiations for, execution and performance of the Agreement, since they are the ultimate beneficiaries of the greater part of the investment made. The relationship between Respondents constitutes a true corporate group ("Group of Companies Theory"),[9] in which

---

[8] Per e-mails exchanged between the firm of Teixeira Martins & Advogados and Mr. Santiago Born [MATLINPATTERSON Funds], on March 29, 2007, about complying with a "bank deposit in compliance with the provision under Section 4.2 of the Agreement." [**Exhibit 7**]

[9] In their comments on the ICC Rules, Yves Derains and Eric Schwartz (*Guide to the ICC Rules of Arbitration*, Kluwer Arbitration, The Netherlands, 2005, p. 89) clarify that Art. 6(2) of the ICC Rules does not require all parties to arbitration to have signed on to an arbitration clause, such as in the case of the "group of companies theory," where a non-signatory company is bound to the arbitration clause. [**Exhibit 8**] Thus, Professor Bernard Hanotiau clarifies that the binding nature of the arbitration clause as regards non-signatory companies is demonstrated by their substantial involvement in the negotiations for and performance of the contract, sufficiently to show such consensus, emphasizing as an element that characterizes such binding nature "*the fact that all the companies concerned have participated in the rights and obligations of the contractual relationship (in what has sometimes been called 'a total confusion')*." ("Groups of Companies in International Arbitration," *Pervasive Problems in International Arbitration*, Coord. Loukas A. Mistelis and Julien D. M. Lew, Kluwer Arbitration, The Netherlands, 2006, p. 281). [**Exhibit 9**]

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

there is a hierarchic and economic subordination between the signatories of the Agreement, and Respondents VOLO LLC and the MATLINPATTERSON Funds.

14. In fact, Technical Opinion No. 06068/2006/RJ, from the Department of Economic Monitoring under the Ministry of Finance of Brazil, upon analyzing Act of Concentration No. 08012.000613/2006-13, acknowledged that "Volo do Brasil S.A. is a corporation organized by the American fund Matlin Patterson to participate in the transaction for purchasing a subsidiary of Varig S.A. -- Varig Logística S.A." [**Exhibit 10**]. As the Department of Economic Monitoring has properly pointed out, Volo do Brasil is merely an investment vehicle for the MATLINPATTERSON Funds, which are Respondents hereunder.

15. Recently, GTI got word that the MATLINPATTERSON Funds and VOLO LLC are already taking action, including legal action, to recover the investment made in VOLO DO BRASIL and VLOG, even before making such price adjustment as provided for in the Agreement. This attempt at dematerializing the investment vehicles, even before such price adjustment is made as negotiated and accepted by the MATLINPATTERSON Funds and VOLO LLC, will affect performance of the Agreement directly, and foil effectiveness of such price adjustment as agreed upon with the MATLINPATTERSON Funds and VOLO LLC themselves [**Exhibit 11**].[10]

16. To that effect, according to ICC's famous precedent, *Dow Chemical and others v. ISOVER Saint Gobain* (ICC Interim Award No. 4131, of September 23, 1982 – **Exhibit 12**), anyone who, though not having signed on to the Arbitration Clause, has participated in and conducted the negotiation for, execution and performance of the legal transaction and the Agreement containing the Arbitration Clause, is bound to the effects of such arbitration clause and must submit to arbitration,[11] precisely as occurs in the case hereunder.

---

[10] Action for Collection of Determined Amount versus Solvent Debtor filed by VOLO LLC versus VLOG, on August 8, 2007, with the 9th Civil Court Division of the Judicial District of São Paulo, SP (Case No. 583.00.2007.208.403-8); and Action for Collection of Certain Amount versus Solvent Debtor filed by VOLO LLC versus VLOG, on August 6, 2007, with the 16th Civil Court Division of the Judicial District of São Paulo, SP (Case No. 583.00.2007.207.183-8). In both lawsuits, the Judge had writs of attachment drawn up for the preferred shares issued by Gol Linhas Aéreas Inteligentes S/A owned by VLOG. Exhibit 11.

[11] *"Considering that irrespective of the distinct juridical identity of each of its members, a group of companies constitutes one and the same economic reality of which the arbitral tribunal should take account when it rules on its own jurisdiction subject to Article 13 (1955 version) or Article 8 (1975 version) of the ICC Rules; Considering, in particular, that the arbitration clause expressly accepted by certain of the companies of the group should bind the other companies, which, by virtue of their role in*

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

## II. Purpose of the Request

17. GTI seeks through this arbitration to have the Arbitral Tribunal settle the divergences between the VRG balance sheet submitted by PriceWaterhouseCoopers and the VRG balance sheet submitted by Ernst & Young and, consequently, determine the price adjustment amount provided for in Section 5.1 of the Agreement, with an award ordering Respondents to return to GTI the ascertained amounts or, alternatively, should the Arbitral Tribunal find that its actions should be limited to designating a third audit firm, to have the Arbitral Tribunal designate a renowned third audit firm to conduct an analysis of both audit firms' reports and ascertain the price adjustment amount.

## III. The Arbitration Clause, Place, Governing Laws and Language of Arbitration

18. In accordance with Section 14.1 of said Agreement, the parties submit their disputes to arbitration under the ICC Rules of Arbitration, with its seat in the city of São Paulo, Brazil, to be conducted in the Portuguese language and governed by Brazilian laws, as we proceed to quote:

> *"Section 14.1 – All conflicts arising herefrom or in connection herewith,* inter alia, *any conflict involving the validity, effectiveness, violation, construction, expiration and termination hereof, and the consequences thereof, shall be resolved by arbitration, as provided under Law 9307/96 ("Arbitration Act"), upon the conditions set forth below.*
>
> *Section 14.2 – The dispute shall be submitted to the ICC ("ICC") in accordance with its Rules ("Rules") in effect as of the date of the request for arbitration to commence.*

---

*the conclusion, performance, or termination of the contracts containing said clauses, and in accordance with the mutual intention of all parties to the proceedings, appear to have been veritable parties to these contracts or to have been principally concerned by them and the disputes to which they may give rise."* Dow Chemical France et al. v. Isover Saint Gobain. Interim Award of September 1982 in No. 4131 (original in French). Yearbook Commercial Arbitration, P. Sanders (ed.), Vol. IX, pp. 131-137.

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

*Section 14.3 – The arbitration, hearings, petitions and documents shall be conducted (sic) in the __Portuguese language__ and, if requested by any of the parties or an arbitrator, there shall be simultaneous interpretation into the English language. __The place of arbitration shall be the city of São Paulo.__*

*Section 14.4 – Unless there shall be more than one claimant or respondent, whereupon claimants jointly, and respondents jointly, shall appoint one arbitrator, the dispute shall be analyzed and decided by three (3) arbitrators, each one of them being independent and impartial (the "Arbitral Tribunal"), and each party shall be entitled to designate one arbitrator within the time period provided under the Rules, which time period may never be longer than 20 days. The two above-designated arbitrators, by mutual agreement, shall appoint a third arbitrator who shall serve as the Arbitral Tribunal's Chairman. Should the two (2) arbitrators designated by the Parties fail to appoint a third arbitrator within ten (10) days from the date on which the last one of the two (2) arbitrators was appointed, or should one of the parties involved fail to designate its arbitrator, then the ICC shall designate a third arbitrator.*

*Section 14.5 – The selected arbitrators shall have a command of the English language, whatever their nationality.*

*Section 14.6 – This Agreement shall be construed and governed by the laws of Brazil, and __the Arbitral Tribunal shall decide the dispute and litigation in accordance with the laws of Brazil__, and any rule of private international law capable of causing the laws of any country or jurisdiction other than Brazil to apply shall be disregarded.*

*Section 14.7 – __The Arbitral Tribunal shall decide__ the matters submitted to it only __pursuant to rules of law__, and shall ground its decision pursuant to the laws of Brazil.*

*Section 14.8 – The arbitral award shall be rendered no later than six (6) months from the organization of the Arbitral Tribunal, in writing and in the Portuguese language, and if requested, with a version in the English language, and shall state the grounds of the arbitral award to be signed by all arbitrators comprising the Arbitral Tribunal. In the event of any divergence between the Portuguese and English versions of the arbitral award, the Portuguese version shall prevail."*[12] (emphasis added)

---

[12] ICC Arbitration Clause provided for in the Agreement. Per Exhibit 2.

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

## IV. Designation of a Co-Arbitrator

19. GTI designates, to serve as one of the co-arbitrators, **Mr. Arnoldo Wald, Esq.**, Brazilian citizen, married, attorney-at-law, with offices at Avenida Faria Lima, No. 3729, 7° andar, in the City of São Paulo, State of São Paulo – CEP 04538-133, E-mail aw@wald.com.br.

## V. Estimated Amount

20. The estimated amount involved in this arbitration corresponds to one hundred sixty-three million, nine hundred thousand, three hundred seventy-one Reais (R$ 163,900,371), which is the amount reached upon Section 5.2(b) of the Agreement being applied after the independent audit firms' reports were prepared.

## VI. Closing

21. Wherefore, GTI requests that the Administrative Office of the ICC take every necessary action to initiate the arbitral proceeding, as provided under the Arbitration Rules, and moves the Arbitral Tribunal grant the following motions:

(i)    To order Respondents pay GTI the amount which is ascertained by the Arbitral Tribunal, in accordance with the price adjustment criteria provided for in Section 5.1 of the Agreement;

(ii)   Should the Arbitral Tribunal find that the procedure provided for in Section 5.1 of the Agreement ought to be carried out outside the scope of arbitration, the Arbitral Tribunal is asked to appoint a third independent audit firm, as referred to in Section 5.1.3.1 of the Agreement, in order for the price adjustment to be made;

(iii)  To order Respondents also pay all charges of this arbitration, including administrative expenses

Mattos Filho,
Veiga Filho,
Marrey Jr.,
& Quiroga
ATTORNEYS-AT-LAW

and expert's fees, as well as the arbitrators' fees and legal fees awarded the prevailing party with respect to this arbitral proceeding pursuant to Art. 31 of the ICC Rules.

22. GTI moves further for service of notice on Respondents, at the addresses indicated above, so they may be advised hereof, and designate a co-arbitrator, sign the Mission Minutes, and offer their defense, should they wish to do so, in this arbitral proceeding.

23. Finally, Claimant reserves the right to submit new claims to the Arbitral Tribunal for examination, according to the circumstances of the case.

With nothing further for the moment, we remain

Sincerely yours.

São Paulo, December 27, 2007
[signature]
Flávio Pereira Lima

International Court of Arbitration of the
International Chamber of Commerce
ICC Arbitration
of

GTI S/A (Brazil)

- Claimant -

AND

VARIG LOGÍSTICA S/A (Brazil)

VOLO DO BRASIL S/A (Brazil)

VOLO LOGISTICS LLC (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P. (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.

- Respondents -

Request for Arbitration

Definitions

| | |
|---|---|
| ICC | International Chamber of Commerce |
| Agreement | Agreement for Sale and Purchase of Equity Control in VRG Linhas Aéreas S/A and Other Covenants, dated March 28, 2007 |
| Court | Arbitration Court of the International Chamber of Commerce (ICC) |

| | |
|---|---|
| CVM | [Brazilian] Securities and Exchange Commission |
| Ernst & Young | Ernst & Young Auditores Independentes S.S. |
| MATLINPATTERSON Funds or 4th Respondent | MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P. and MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P. |
| GTI or Claimant | GTI S.A. |
| Operating Agreement | Operating Agreement executed by the MATLINPATTERSON Funds on August 18, 2005, to incorporate its controlled company VOLO Logistics LLC. |
| ICC Rules | ICC Rules of Arbitration |
| Respondents | VARIG LOGÍSTICA S.A., VOLO DO BRASIL S.A., VOLO LOGISTICS LLC and the MATLINPATTERSON Funds |
| Administrative Office | Administrative Office of the Arbitration Court of the International Chamber of Commerce (ICC) |
| VLOG or 1st Respondent | VARIG LOGÍSTICA S.A. |
| VOLO DO BRASIL or 2nd Respondent | VOLO DO BRASIL S.A. |
| VOLO LLC or 3rd Respondent | VOLO LOGISTICS LLC |
| VRG | VRG Linhas Aéreas S.A. |

International Court of Arbitration of the
International Chamber of Commerce
ICC Arbitration
Between

GTI S/A (Brazil)

- Claimant -

AND

VARIG LOGÍSTICA S/A (Brazil)

VOLO DO BRASIL S/A (Brazil)

VOLO LOGISTICS LLC (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P. (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.

- Respondents -

**Request for Arbitration**

**Exhibits 1 to 12**

| Document | Exhibit |
|---|---|
| 1. Power of Attorney of GTI S/A. | Exhibit 1 |
| 2. Agreement for Sale and Purchase of Equity Control in VRG Linhas Aéreas S/A and other Covenants, dated March 28, 2007. | Exhibit 2 |
| 3. VOLO Logistics LLC Operating Agreement executed by the MATLINPATTERSON Funds. | Exhibit 3 |
| 4. Response to Ofício/CVM/SEP/GEA-2/No. 115/07. | Exhibit 4 |
| 5. Minutes of the Special Meeting of Shareholders of Volo do Brasil S/A, dated March 28, 2007. | Exhibit 5 |
| 6. Evidence of direct participation by the controllers of VLOG, VOLO LLC and the MATLINPATTERSON Funds in the phase of the [illegible] | Exhibit 6 |

| | |
|---|---|
| 8. Contact Schedule for the Project to be carried out, sent on February 12, 2007, in which Mr. Santiago Born appears on the MATLINPATTERSON Funds' behalf. | Exhibit 6.B |
| 9. E-mail sent by Mr. Lap Chan [MATLINPATTERSON Funds], on February 21, 2007, to GTI about the negotiations. | Exhibit 6.C |
| 10. E-mails exchanged by Mr. Lap Chan [MATLINPATTERSON Funds] and GTI about the draft agreements in March 2007. | Exhibit 6.D |
| 11. E-mail sent by Mr. Santiago Born [MATLINPATTERSON Funds] to GTI, on March 27, 2007, about the Lease Agreements. | Exhibit 6.E |
| 12. E-mail sent by Mr. Ahmad Al-Sati [MATLINPATTERSON Funds] to Mr. Henrique Constantino [GTI] on behalf of Mr. Santiago Born [MATLINPATTERSON Funds] on March 28, 2007. | Exhibit 6.F |
| 13. E-mail sent by Teixeira Martins & Advogados, on March 11, 2007, to all participants in the transaction, including Mr. Lap Chan [MATLINPATTERSON Funds], in which the draft Agreement is discussed. | Exhibit 6.G |
| 14. E-mails exchanged between the firm of Teixeira Martins & Advogados and Mr. Santiago Born [MATLINPATTERSON Funds], on March 29, 2007, about complying with the deposit provided for in the Agreement. | Exhibit 7 |
| 15. Yves Derains and Eric Schwartz. *Guide to the ICC Rules of Arbitration*, Kluwer Arbitration, The Netherlands, 2005, p. 89. | Exhibit 8 |
| 16. Bernard Hanotiau. "Groups of Companies in International Arbitration," *Pervasive Problems in International Arbitration*, Coord. Loukas A. Mistelis and Julien D. M. Lew, Kluwer Arbitration, The Netherlands, 2006, p. 281. | Exhibit 9 |
| 17. Technical Opinion No. 06068/2006/RJ, from the Department of Economic Monitoring, on the Concentration Act dated February 13, 2006. | Exhibit 10 |
| [illegible] | |

| 19. *Dow Chemical and others v. ISOVER Saint Gobain* (ICC Interim Award No. 4131, of September 23, 1982). | Exhibit 12 |
|---|---|



Flávio Pereira Lima

Priscila Knoll Aymone



Corte Internacional de Arbitragem da
Câmara de Comércio Internacional
Arbitragem CCI

Entre

GTI S/A (Brasil)

– Requerente –

E

1. VARIG LOGÍSTICA S/A (Brasil)

2. VOLO DO BRASIL S/A (Brasil)

3. VOLO LOGISTICS LLC (USA)

4. MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.

– Requeridas –

---

REQUERIMENTO DE ARBITRAGEM

27 de Dezembro de 2007



Secretaria da
Corte Internacional de Arbitragem da
Câmara de Comércio Internacional – CCI

A empresa **GTI S.A.** ("GTI" ou "Requerente"), sociedade brasileira
por ações, com sede na Capital do Estado de São Paulo, na Rua Tamoios, nº 246,
Jardim Aeroporto, CEP 04630-000, inscrita no CNPJ/MF sob o nº 06.985.282/0001-95,
por seus advogados [**Anexo 1**], vem, a fim de resolver controvérsia oriunda do
"Contrato de Compra e Venda do Controle Acionário da VRG Linhas Aéreas S/A e Outras
Avenças" (o "Contrato" – **Anexo 2**) firmado em 28.03.2007 entre a Requerente e as
Requeridas, com base na cláusula compromissória CCI prevista na Cláusula 14 do
referido Contrato [**Anexo 2**] e conforme o Art. 4 do Regulamento de Arbitragem CCI (o
"Regulamento CCI"), pelas razões de fato e de direito adiante expendidas, apresentar o
seu

## Requerimento de Arbitragem[1]

---

[1] As definições adotadas neste Requerimento de Arbitragem encontram-se em lista anexa ("Definições").



Em face de:

(i)      **VARIG LOGÍSTICA S.A.** ("VLOG" ou "Requerida 1"), sociedade brasileira por ações, com sede na Capital do Estado de São Paulo, na Rua Fidêncio Ramos, nº 223, 14º andar, Vila Olímpia, CEP 04551-010, inscrita no CNPJ/MF sob o nº 04.066.143/0001-57; e

(ii)     **VOLO DO BRASIL S.A.** ("VOLO DO BRASIL" ou "Requerida 2"), sociedade brasileira por ações, com sede na Capital do Estado do Rio de Janeiro, na Rua Visconde de Inhaúma, nº 77, 10ª andar, Centro, CEP 20091-007, inscrita no CNPJ/MF sob o nº 07.574.036/0001-28;

(iii)    **VOLO LOGISTICS LLC**, 2711, Centerville Road, Suit 400, Delaware, Estados Unidos da América ("VOLO LLC" ou "Requerida 3");

(iv)     **MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P.**, 520 Madison Avenue 35th floor - New York - NY 10022, Estados Unidos da America e **MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.**, 520 Madison Avenue 35th floor - New York - NY 10022, Estados Unidos da America ("Fundos MATLINPATTERSON" ou "Requerida 4");

conjuntamente denominadas Requeridas.

## I. Síntese da Controvérsia

1. No início de 2007, a Requerente GTI foi procurada, em Nova Iorque, pelas requeridas VOLO LLC e Fundos MATLINPATTERSON que apresentaram proposta para a aquisição, pela GTI, da totalidade das ações da VRG Linhas Aéreas S.A. ("VRG"), conhecida empresa aérea brasileira. A partir de então, todos os entendimentos, negociações e reuniões se deram com os representantes da VOLO LLC [VOLO Logistics LLC Operating Agreement – **Anexo 3**][2] e Fundos MATLINPATTERSON,

---

[2] O "Operating Agreement" foi celebrado pelos Fundos MATLINPATTERSON, em 18.08.2005, a fim de constituir a controlada VOLO Logistics LLC, conforme transcrevemos:
"*3. Purpose. The principal purpose of the Company shall be to engage in any lawful business that may be engaged by a limited liability company organized under the Delaware Act, as such business activities may be determined by the Members [MATLINPATTERSON GLOBAL OPPORTUNITIES II L.P. e MATLINPATTERSON GLOBAL OPPORTUNITIES (CAYMAN) II L.P] from time to time.*"



na qualidade de controladores das Requeridas VLOG e VOLO DO BRASIL [cf. Resposta ao Ofício/CVM/SEP/GEA-2/N° 115/07 – ANEXO 4[3]].

2. Os Fundos MATLINPATTERSON, que se destinam a investimentos em *private equity* com aquisição e alienação de participações societárias, constituíram, no Brasil, as empresas VOLO DO BRASIL e VLOG, as quais, por sua vez, constituíram a empresa de participações brasileira Aéreo Participações S.A. (atualmente denominada VRG Linhas Aéreas S.A., "VRG"). As citadas empresas brasileiras, controladas pelos fundos MATLINPATTERSON, serviram a tais Fundos como veículos de investimento para a aquisição, em leilão de alienação judicial realizado nos termos do artigo 60, parágrafo único, da Lei n° 11.101/2005 (no âmbito da ação de recuperação judicial da VARIG S.A. – Viação Riograndense, em trâmite perante a 1ª Vara Empresarial do Rio de Janeiro, processo n° 2005.001.072887-7), da unidade produtiva isolada da VARIG S.A. – Viação Riograndense ("UPV"). Os veículos de investimentos não tinham – como não têm até hoje – patrimônio significativo e compatível com o vulto do negócio que foi celebrado àquela época. O capital necessário à aquisição da UPV, pela VRG, foi investido nos veículos pelos Fundos MATLINPATTERSON, que mantiveram o controle gerencial sobre essa participação acionária, no exercício normal de sua atividade de adquirir e alienar participações acionárias.

3. Por essa razão, o Contrato foi negociado exclusivamente entre a GTI, de um lado, e VOLO LLC e Fundos MATLINPATTERSON, de outro. Concluída a negociação, a VOLO LLC, deliberou, em assembléia geral extraordinária da VOLO DO BRASIL, realizada em 28 de março de 2007, aprovar a celebração do Contrato e da

---

A administração da VOLO Logistics LLC é direito exclusivo dos Fundos MATLINPATTERSON, conforme expressamente previsto na Cláusula 6 do Operating Agreement:
"*6. Management of the Company; Officers; Management Agreement. (a) The exclusive right to manage the business of the Company shall be vested in the Members* [MATLINPATTERSON GLOBAL OPPORTUNITIES II L.P. e MATLINPATTERSON GLOBAL OPPORTUNITIES (CAYMAN) II L.P.] *in accordance with the Ownership Percentages set forth on Schedule A provided that the Members may appoint one or more managers (the "Managers") to represent and set on behalf of the Company. (...)*".

[3] O Anexo I da Resposta à CVM (Ofício/CVM/SEP/GEA-2/N° 115/07, de 03.04.2007) apresenta a lista de envolvidos na operação relativa à aquisição da VRG Linhas Aéreas S.A. ("VRG") em que constam os representantes dos Fundos MATLINPATTERSON: "*O) Matlin Patterson: Santiago Born (...). Lap Wai Chan (...)*". A qualificação dos referidos representantes encontra-se em correspondência enviada pela Gol à CVM, sob a referência "Informações Complementares à Resposta ao Ofício/CVM/SEP/GEA-2/N° 115/07". Cf. ANEXO 4.



Cláusula Arbitral, "cujo conteúdo foi lido e aprovado por todos os presentes àquela assembléia" [**Anexo 5[4]**].

4. Assim, em 28.03.07, as Requeridas VLOG e VOLO DO BRASIL, frise-se, os veículos de investimentos dos Fundos MATLINPATTERSON, firmaram Contrato com a GTI por meio do qual venderam à última a totalidade das ações da VRG ao preço total de US$ 275.000.000,00 (duzentos e setenta e cinco milhões de dólares norte-americanos). Os representantes da VLOG e da VOLO DO BRASIL somente foram apresentados à GTI no momento da assinatura do contrato, pois, até então, todas as tratativas haviam sido realizadas exclusivamente com os administradores da VOLO LLC e Fundos MATLINPATTERSON, controladores, diretos e indiretos, da VLOG [**Anexo 6[5]**].

5. O Contrato prevê a realização de um ajuste de preço a ser concretizado no prazo de 180 (cento e oitenta) dias contados da data base do balanço realizado por ocasião da celebração do contrato, a saber:

> "*Cláusula 5.1.1. Em até 180 (cento e oitenta) dias da data-base do balanço previsto na Cláusula 5.1, supra, a PriceWaterhouseCoopers irá apresentar novo balanço, devidamente auditado, observando-se tão somente e exclusivamente os mesmos itens, a mesma metodologia a que se refere a cláusula 5.1, tendo como data-base o dia anterior ao evento de que trata a Cláusula 9.2. ...*
>
> *Cláusula 5.1.3.1. A GTI poderá indicar, em 5 (cinco) dias úteis a partir da apresentação do balanço de que trata a cláusula 5.1.1, uma empresa de auditoria de primeira linha, para validar o referido balanço de maneira a aferir os montantes apurados. Referida validação deverá ser feita no prazo máximo de 45 (quarenta e cinco)*

---

[4] Ata de Assembléia Geral Extraordinária da VOLO do Brasil S/A realizada em 28.03.2007. [**Anexo 5**]

[5] E-mails trocados entre o Sr. Lap Chan [Fundos MATLINPATTERSON] e o Sr. Richard Lark [GTI] em janeiro de 2007 para negociar cláusulas contratuais [**Anexo 6.A**]. Agenda de Contatos para a realização do Projeto, enviada em 12.02.2007, em que consta o Sr. Santiago Born em nome dos Fundos MATLINPATTERSON [**Anexo 6.B**]. E-mail enviado pelo Sr. Lap Chan [Fundos MATLINPATTERSON], em 21.02.2007, à GTI sobre as tratativas, conforme transcrevemos: "*Sei que os advogados estão si [sic] comunicando. Acho que precisamos nos [sic] todos juntos sentar com eles discutir os pontos jurídicos [sic] e business.*" [**Anexo 6.C**]. E-mails trocados pelo Sr. Lap Chan [Fundos MATLINPATTERSON] e GTI sobre a minuta dos contratos em março de 2007 [**Anexo 6.D**]. E-mail enviado pelo Sr. Santiago Born [Fundos MATLINPATTERSON] à GTI em 27.03.2007 sobre os "Lease Agreements" [**Anexo 6.E**]. E-mail enviado pelo Sr. Ahmad Al-Sati [Fundos MATLINPATTERSON] ao Sr. Henrique Constantino [GTI] em nome do Sr. Santiago Born [Fundos MATLINPATTERSON] em 28.03.2007 [**Anexo 6.F**]. E-mail enviado pelo Sr. Cristiano Martins, em 11.03.2007, a todos os participantes da operação, inclusive o Sr. Lap Chan [Fundos MATLINPATTERSON], em que se discute a minuta do Contrato [**Anexo 6.G**]



*dias, a partir da entrega do balanço devidamente instruído pela PriceWaterhouseCoopers à GTI, desde já apontando se há ou não divergências com o balanço apresentado pela PriceWaterhouseCoopers. Havendo discordância quanto aos montantes, as duas empresas de auditoria escolherão de comum acordo uma terceira empresa de auditoria de primeira linha, suportada em partes iguais pela GTI e VarigLog, para dirimir as referidas discordâncias. Esta terceira empresa de auditoria terá o prazo máximo de 20 (vinte) dias, a partir de sua contratação, para apresentação de relatório conclusivo, o qual as partes aceitam desde já como o final.*"[6]

6. Com um certo atraso, causado pelas Requeridas, iniciaram-se os procedimentos para o ajuste de preço[7], com a apresentação, pela PriceWaterhouseCoopers, do balanço revisado a que se refere a cláusula 5.1.3.1. No prazo previsto no contrato, a GTI indicou a empresa Ernst & Young Auditores Independentes S.S. ("Ernst & Young") para validar o balanço apresentado pela PriceWaterhouseCoopers, de maneira a aferir os montantes apurados.

7. Do confronto entre o trabalho apresentado pela Ernst & Young e o realizado pela PriceWaterhouseCoopers diversos pontos controvertidos surgiram e verificou-se uma discordância entre os montantes apurados nos trabalhos elaborados pelas duas empresas de auditoria. O representante da VOLO LLC e dos Fundos MATLINPATTERSON, Sr. Lap Chan, também entrou em contato com a GTI para tratar dos procedimentos para apuração do ajuste de preço.

8. Uma reunião de trabalho foi convocada para o dia 12 de dezembro de 2007, a fim de que a Ernst & Young e a PriceWaterhouseCoopers discutissem sobre os pontos de discordância e, caso as divergências persistissem, indicassem a terceira empresa de auditoria a que se refere a cláusula 5.1.3.1 do Contrato.

---

[6] O Contrato. Cf. ANEXO 2

[7] Visando um equilíbrio na relação ajustada por meio do Contrato, as partes signatárias do mesmo acordaram que um ajuste no preço de aquisição seria implementado na hipótese de se verificarem divergências entre o balanço anexado ao Contrato para fechamento da transação e o quanto efetivamente verificado na contabilidade da empresa adquirida após a aquisição. A fim de garantir a transparência do processo de verificação e assegurar que o procedimento acordado seria revestido da necessária tecnicidade contábil, as partes signatárias do Contrato decidiram que o ajuste de preços seria apurado por firmas de auditoria de primeira linha e descreveram no Contrato as ações das citadas empresas para que eventual ajuste pudesse ser apurado e, posteriormente, pago, com mínima



9. Ocorre, porém, que a PriceWaterhouseCoopers, por ordem das Requeridas, não compareceu à referida reunião de trabalho, inviabilizando a conclusão dos procedimentos amigáveis para o ajuste de preço previsto no Contrato. Mais do que isso, enviou notificação à GTI em que afirma que não concordaria em indicar uma terceira empresa de auditoria, pois isso não estaria no escopo de seu trabalho.

10. Assim, diante da impossibilidade da realização do ajuste de preço na forma prevista contratualmente, a GTI não tem outra alternativa senão submeter a controvérsia ao Tribunal Arbitral.

11. A controvérsia, portanto, restringe-se à apuração, em arbitragem, das divergências existentes entre o balanço da VRG apresentado pela PriceWaterhouseCoopers e o balanço da VRG apresentado pela Ernst & Young e, conseqüentemente, do valor do ajuste de preço previsto na Cláusula 5.1. e seguintes do Contrato.

12. É relevante ressaltar que em todas as negociações prévias e mesmo depois da assinatura do Contrato, durante sua execução, a GTI continuou a tratar dos negócios decorrentes do Contrato com o representante no Brasil da VOLO LLC e dos Fundos MATLINPATTERSON, conforme comprovam os documentos anexos [ANEXO 7][8].

13. Verifica-se que a VOLO LLC e os Fundos MATLINPATTERSON participaram ativamente das negociações, celebração e execução do Contrato, já que são os beneficiários finais da maior parte do investimento realizado. A relação entre as Requeridas constitui autêntico grupo societário ("Group of Companies Theory"[9]) em que

---

[8] Cf. e-mails trocados entre o escritório Teixeira Martins & Advogados e o Sr. Santiago Born [Fundos MATLINPATTERSON], em 29.03.2007, sobre o cumprimento de um "depósito bancário em cumprimento do disposto na cláusula 4.2. do Contrato". [Anexo 7]

[9] Nos comentários ao Regulamento CCI, Yves Derains e Eric Schwartz (*Guide to the ICC Rules of Arbitration*, Kluwer Arbitration, The Netherlands, 2005, p.89) esclarecem que o Art. 6(2) do Regulamento CCI não requer que todas as partes da arbitragem tenham assinado a cláusula compromissória, como no caso da *"group of companies" theory* em que uma empresa não-signatária está vinculada à cláusula arbitral. [Anexo 8] Assim, esclarece o Professor Bernard Hanotiau que a obrigatoriedade da cláusula arbitral às empresas não-signatárias é demonstrada pelo envolvimento substancial nas negociações e na execução do contrato, suficiente para revelar esse consenso, ressaltando como elemento caracterizador dessa obrigatoriedade *"the fact that all the companies concerned have participated in the rights and obligations of the contractual relationship (in what has sometimes been called 'a total confusion')"*. (Groups of Companies in International



há uma subordinação hierárquica e econômica entre as signatárias do Contrato e as Requeridas VOLO LLC e Fundos MATLINPATTERSON.

14. Aliás, o Parecer Técnico n° 06068/2006/RJ, da Secretaria de Acompanhamento Econômico do Ministério da Fazenda do Brasil, ao analisar o ato de concentração n° 08012.000613/2006-13, reconheceu que "a Volo do Brasil S.A. é uma empresa constituída pelo fundo americano Matlin Patterson para participar da operação de compra da subsidiária da Varig S.A., a Varig Logística S.A." [ANEXO 10]. Como bem apontou a Secretaria de Acompanhamento Econômico, a Volo do Brasil é um mero veículo de investimento dos Fundos MATLINPATTERSON, que ora são Requeridos..

15. Recentemente a GTI teve notícia de que os Fundos MATLINPATTERSON e a VOLO LLC já estão tomando medidas, inclusive, judiciais para reaver o investimento que foi realizado na VOLO DO BRASIL e VLOG, mesmo antes de se proceder ao ajuste de preços previsto no Contrato. Essa tentativa de esvaziamento dos veículos de investimento, antes de se proceder ao ajuste de preço negociado e aceito pelos Fundos MATLINPATTERSON e a VOLO LLC, afetará diretamente a execução do Contrato e frustrará a eficácia do ajuste de preços pactuado com os próprios Fundos MATLINPATTERSON e VOLO LLC [ANEXO 11[10]].

16 Nesse sentido, conforme o famoso precedente da CCI, *Dow Chemical e outras x ISOVER Saint Gobain* (ICC Interim Award n° 4131, de 23.09.1982 – ANEXO 12), aqueles que, embora não tenham firmado a Cláusula Arbitral, mas que tenham participado e conduzido a negociação, celebração e execução do negócio jurídico e do Contrato que contém a Cláusula Arbitral, estão vinculados aos efeitos desta cláusula compromissória e devem submeter-se à arbitragem[11], exatamente como se verifica no caso em tela.

---

Arbitration", *Pervasive Problems in International Arbitration*, Coord. Loukas A. Mistelis e Julien D.M. Lew, Kluwer Arbitration, The Netherlands, 2006, p. 281). [ANEXO 9]

[10] Ação de Execução por Quantia Certa contra Devedor Solvente ajuizada por VOLO LLC em face da VLOG, em 08.08.2007, perante a 9ª Vara Cível da Comarca de São Paulo -- SP (Processo n° 583.00.2007.208.403-8); e Ação de Execução por Quantia Certa contra Devedor Solvente movida pela VOLO LLC em face da VLOG, em 06.08.2007, perante a 16ª Vara Cível da Comarca de São Paulo – SP (Processo n° 583.00.2007.207.183-8). Em ambas as ações, o Juiz lavrou autos de arresto das ações preferenciais de emissão da Gol Linhas Áreas Inteligentes S/A de propriedade da VLOG. ANEXO 11.

[11] "*Considering that irrespective of the distinct juridical identity of each of its members, a group of companies constitutes one and the same economic reality (une realité économique unique) of which the arbitral tribunal should take account when it rules on its own ................*



## II. Objeto do Requerimento

17. A GTI pretende com a presente arbitragem que o Tribunal Arbitral dirima as divergências entre o balanço da VRG apresentado pela PriceWaterhouseCoopers e o balanço da VRG apresentado pela Ernst & Young e, conseqüentemente, determine o valor do ajuste de preço previsto na Cláusula 5.1. do Contrato, condenando as Requeridas a restituírem à GTI os valores apurados ou, alternativamente, caso o Tribunal Arbitral considere que sua atuação deve limitar-se à indicação de uma terceira firma de auditoria, que o Tribunal Arbitral indique a terceira empresa de auditoria de primeira linha para realizar a análise dos trabalhos das duas empresas de auditorias e a apuração do valor do ajuste de preço.

## III. A Cláusula Arbitral, Local, Leis Aplicáveis e Idioma da Arbitragem

18. De acordo com a Cláusula 14.1 do referido Contrato, as partes submetem suas controvérsias à arbitragem sob as regras do Regulamento de Arbitragem da CCI, com sede na cidade de São Paulo, Brasil, a ser conduzida no idioma português e regida pelas leis brasileiras, conforme trascrevemos:

> *"Cláusula 14.1 – Todos os conflitos oriundos ou relacionados a este instrumento, dentre outros, aqueles que envolvam sua validade, eficácia, violação, interpretação, término, rescisão e seus consectários, serão resolvidos por arbitragem, conforme previsto na Lei n. 9.307/96 ("Lei de Arbitragem"), mediante as condições que se seguem.*
>
> *Cláusula 14.2 – A disputa será submetida à CCI ("CCI") de acordo com o seu Regulamento ("Regulamento"), em vigor na data do pedido de instauração da arbitragem.*

Considering, in particular, that the arbitration clause expressly accepted by certain of the companies of the group should bind the other companies, which, by virtue of their role in the conclusion, performance, or termination of the contracts containing said clauses, and in accordance with the mutual intention of all parties to the proceedings, appear to have been veritable parties to these contracts or to have been principally concerned by them and the disputes to which they may give rise". Dow Chemical France et al. v. Isover Saint Gobain. Interim Award of September 1982 in No. 4131 (original in French). Yearbook Commercial Arbitration, P. Sanders (ed.), Vol. IX, pp. 131-137.

**Cláusula 14.3** – *As audiências, petições e documentos na arbitragem serão conduzidas (sic) no __idioma português__ e, se solicitado por alguma das partes ou árbitro, haverá tradução simultânea para o idioma inglês. __O local da arbitragem será a cidade de São Paulo.__*

**Cláusula 14.4** – *Salvo se for mais de uma demandante ou demandada, quando então as demandantes, conjuntamente, e as demandadas, conjuntamente, nomearão um árbitro, a disputa deverá ser analisada e decidida por 3 (três) árbitros, cada um deles independentes e imparciais (o "Tribunal Arbitral") cabendo a cada uma das Partes indicar um árbitro dentro do prazo previsto no Regulamento, prazo que nunca poderá ser superior a 20 dias. Os dois árbitros acima indicados nomearão, de comum acordo, o terceiro árbitro que funcionará como Presidente do Tribunal Arbitral. Caso os 02 (dois) árbitros indicados pelas Partes deixarem de nomear o terceiro árbitro no prazo de 10 (dez) dias contados da data em que o último dos 2 (dois) árbitros foi nomeado ou uma das partes envolvidas deixar de indicar o seu árbitro, caberá à CCI indicar o terceiro árbitro.*

**Cláusula 14.5** – *Os árbitros selecionados deverão ter domínio da língua inglesa, seja qual for a sua nacionalidade.*

**Cláusula 14.6** – *Este Contrato será interpretado e regido pelas leis do Brasil, e __o Tribunal Arbitral deverá decidir a controvérsia e o litígio de acordo com as leis do Brasil__, desconsiderando-se qualquer regra de direito internacional privado que possa fazer com que sejam aplicáveis as leis de qualquer outro país ou jurisdição que não seja o Brasil.*

**Cláusula 14.7** – *__O Tribunal Arbitral deverá decidir__ os assuntos que lhe forem submetidos apenas __por normas de direito__, devendo fundamentar sua decisão conforme as leis do Brasil.*

**Cláusula 14.8** – *A sentença arbitral deverá ser proferida, no prazo máximo de 6 (seis) meses, a contar da instituição do Tribunal Arbitral, por escrito, em português, e caso haja solicitação, com versão no idioma inglês, devendo conter a fundamentação da decisão arbitral a ser assinada por todos os árbitros integrantes do Tribunal Arbitral. Em caso de divergência entre as versões em português e inglês da sentença arbitral, prevalecerá a versão em português"[12] (grifos nossos).*

---

[12] Cláusula Arbitral CCI prevista no Contrato. Cf. ANEXO 2.



### IV. Indicação de Co-Árbitro

19. A GTI indica para funcionar como um dos co-árbitros o **Dr. Arnoldo Wald**, brasileiro, casado, advogado, com escritório na Avenida Faria Lima, nº 3729, 7º andar, na cidade de São Paulo, Estado de São Paulo, CEP 04538-133, e-mail aw@wald.com.br.

### V. Valor Estimado

20. O valor estimado envolvido na presente arbitragem corresponde a R$ 163.900.371 (cento e sessenta e três milhões, novecentos mil, trezentos e setenta um reais), que foi o valor encontrado pela aplicação da Cláusula 5.2.(b) do Contrato, após a realização dos trabalhos das empresas de auditoria independente.

### VI. Conclusão

21. Diante do exposto, solicita a GTI que a Secretaria da CCI adote todas as providências necessárias para a instauração do procedimento arbitral, consoante disposto no Regulamento de Arbitragem, e requer que o Tribunal Arbitral julgue procedente os seguintes pedidos:

(i)   Sejam as Requeridas condenadas a pagar à GTI o valor que vier a ser apurado pelo Tribunal Arbitral, de acordo com os critérios de ajuste de preços previsto na Cláusula 5.1 do Contrato;

(ii)  Caso o Tribunal Arbitral considere que o procedimento previsto na Cláusula 5.1. do Contrato, deva se realizar fora do âmbito da arbitragem, pede-se que o Tribunal Arbitral nomeie a terceira empresa de auditoria independente a que se refere a cláusula 5.1.3.1. do Contrato, a fim de que se proceda ao ajuste de preços.

(iii) Sejam também as Requeridas condenadas ao pagamento de todos os encargos desta arbitragem, incluindo as despesas



administrativas e honorários periciais, bem como ao pagamento dos honorários dos árbitros e da verba advocatícia de sucumbência, relativos a este procedimento arbitral nos termos do Art. 31 do Regulamento CCI.

22. Requer a GTI, ainda, a notificação das Requeridas, nos endereços acima mencionados, para que fiquem cientes da presente, indiquem um co-árbitro, celebrem a Ata de Missão e se defendam, se quiserem, neste procedimento arbitral.

23. Por último, a Requerente reserva-se no direito de submeter novas demandas à apreciação do Tribunal Arbitral, de acordo com as circunstâncias do caso.

Sem mais, subscrevemo-nos

São Paulo, 27 de Dezembro de 2007

Flávio Pereira Lima

Corte Internacional de Arbitragem da
Câmara de Comércio Internacional
Arbitragem CCI
Entre

GTI S/A (Brasil)

- Requerente –

E

VARIG LOGÍSTICA S/A (Brasil)

VOLO DO BRASIL S/A (Brasil)

VOLO LOGISTICS LLC (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.

- Requeridas –

Requerimento de Arbitragem

Definições

| | |
|---|---|
| CCI | Câmara de Comércio Internacional |
| Contrato | Contrato de Compra e Venda do Controle Acionário da VRG Linhas Aéreas S/A e Outras Avenças, de 28.03.2007 |
| Corte | Corte de Arbitragem da Câmara de Comércio Internacional (CCI) |

| | |
|---|---|
| CVM | Comissão de Valores Mobiliários |
| Ernst & Young | Ernst & Young Auditores Independentes S.S. |
| Fundos MATLINPATTERSON ou Requerida 4 | MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P. e MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P |
| GTI ou Requerente | GTI S.A. |
| Operating Agreement | Operating Agreement celebrado pelos Fundos MATLINPATTERSON, em 18.08.2005, a fim de constituir a controlada VOLO Logistics LLC. |
| Regulamento CCI | Regulamento de Arbitragem CCI |
| Requeridas | VARIG LOGÍSTICA S.A., VOLO DO BRASIL S.A., VOLO LOGISTICS LLC e Fundos MATLINPATTERSON |
| Secretaria | Secretaria da Corte de Arbitragem da Câmara de Comércio Internacional (CCI) |
| VLOG ou Requerida 1 | VARIG LOGÍSTICA S.A. |
| VOLO DO BRASIL ou Requerida 2 | VOLO DO BRASIL S.A. |
| VOLO LLC ou Requerida 3 | VOLO LOGISTICS LLC |
| VRG | VRG Linhas Aéreas S.A. |

SP - 107093-00002 - 1346588v1

Corte Internacional de Arbitragem da
Câmara de Comércio Internacional
Arbitragem CCI
Entre


GTI S/A (Brasil)

- Requerente –


E


VARIG LOGÍSTICA S/A (Brasil)

VOLO DO BRASIL S/A (Brasil)

VOLO LOGISTICS LLC (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS II L.P (USA)

MATLINPATTERSON GLOBAL OPPORTUNITIES PARTNERS (CAYMAN) II L.P.


- Requeridas –

**Requerimento de Arbitragem**
**Anexos 1 – 12**

| Documento | Anexo |
|---|---|
| 1. Procuração da GTI S/A. | Anexo 1 |
| 2. Contrato de Compra e Venda do Controle Acionário da VRG Linhas Aéreas S/A e Outras Avenças, de 28.03.2007. | Anexo 2 |
| 3. VOLO Logistics LLC Operating Agreement, celebrado pelos Fundos MATLINPATTERSON. | Anexo 3 |
| 4. Resposta ao Ofício/CVM/SEP/GEA-2/Nº 115/07. | Anexo 4 |
| 5. Ata de Assembléia Geral Extraordinária da Volo do Brasil S/A, de 28.03.2007. | Anexo 5 |
| 6. Prova da participação direta dos controladores da VLOG, VOLO LLC e Fundos MATLINPATTERSON, na fase das | Anexo 6 |

| 19. *Dow Chemical e outras x ISOVER Saint Gobain* (ICC Interim Award n° 4131, de 23.09.1982). | Anexo 12 |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Matthew Bernaux Global Opportunities
Partner II LP et al.
v.
GTI S.A. et al.

INDIVIDUAL ASSIGNMENT PART 23

~~STIPULATION~~

INDEX NO. 08-601164

MOTION CALENDAR NO.

DATE 4/13/08

~~IT IS HEREBY STIPULATED AND AGREED by and between the below-named attorney(s) as follows:~~

Petitioners hereby withdraw their amended
prior to knowledge, without prejudice.

Date: 4/

So Ordered.

_____
~~Attorney for Plaintiff~~ Petitioners
JEFFREY I. WASSERMAN
~~Attorney for Defendant~~ Bracewell & Giuliani LLP

_____
~~Attorney for Defendant~~

ENTER: _____
J.S.C.

SC-8G (rev 2/86)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of the application of:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                                Petitioners,

            v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                                Respondents.

Index No.  601164/2008

**NOTICE OF PETITION**

    **PLEASE TAKE NOTICE** that, upon the annexed petition of MatlinPatterson Global

Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners (Cayman) II

L.P. and Volo Logistics LLC ("Petitioners"), dated April 17, 2008, the Affidavit of Lawrence

M. Teitelbaum, dated April 17, 2008, the exhibits thereto, and all prior pleadings, papers and

proceedings herein, an application pursuant to CPLR § 7503(b) will be made at the Motion

Submission Part, Room 130, 60 Centre Street, New York, New York 10007, on May 30,

2008, at 9:30 a.m., or as soon thereafter as counsel may be heard, for a judgment staying the

arbitration filed by Respondent GTI S.A. against Petitioners before Respondent The ICC

International Court of Arbitration of The International Chamber of Commerce, and for such

other and further relief as may be just and proper.

    **PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR § 403(b), a demand

is hereby made for the service of an answer and supporting affidavits, if any, at least seven

days before the aforesaid date of hearing, as this petition is served at least twelve days before

such time.

Dated:  New York, New York
        May 9, 2007

                                        BRACEWELL & GIULIANI LLP

                                        By: _____
                                              Jeffrey I. Wasserman
                                        1177 Avenue of the Americas, 19th Floor
                                        New York, New York  10036-2714
                                        (212) 508-6100

                                        Attorneys for Petitioners

To:

Brian H. Polovoy, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York, 10022
*Attorneys for Respondent G.T.I. S.A.*

The ICC International Court of Arbitration
of the International Chamber of Commerce
Attn:  Josefa Sicard-Mirabal
Director, Arbitration and ADR, North America
c/o US Council for International Business
1212 Avenue of the Americas
New York, NY 10036
*Respondent*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of the application of:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

Index No. 601164/2008

                                    Petitioners,

                    v.

**NOTICE OF MOTION
FOR PRELIMINARY
INJUNCTION**

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                                    Respondents.

**PLEASE TAKE NOTICE** that, upon the annexed affirmation of David A. Shargel,

dated May 8, 2008, the affidavit of Lawrence M. Teitelbaum, dated April 17, 2008, and the

exhibits thereto, the accompanying Memorandum of Law in Support of Motion For a

Preliminary Injunction Pending Determination of Petition to Stay Arbitration, dated May 8,

2008, and all the prior pleadings, papers and proceedings herein, petitioners MatlinPatterson

Global Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners

(Cayman) II L.P. and Volo Logistics LLC ("Petitioners"), will move this Court, pursuant to

CPLR § 6301 and CPLR Rule 406, at the IAS Motion Submission Park, Room 130, 60

Centre Street, New York, New York 10007, on May 30, 2008, at 9:30 a.m., or as soon

thereafter as counsel may be heard, for an order granting Petitioners' motion for a preliminary

injunction staying the arbitration filed by Respondent GTI S.A. against Petitioners before

Respondent The ICC International Court of Arbitration of The International Chamber of

Commerce pending final determination of Petitioners' petition to stay arbitration pursuant to

CPLR § 7503, and for such other and further relief as may be just and proper.

     **PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR Rule 2214(b),

answering papers and any notice of cross-motion, with supporting papers, if any, must be

served at least seven days before the return date.

Dated:  New York, New York
       May 9, 2007

                        BRACEWELL & GIULIANI LLP

                        By:_____
                             Jeffrey I. Wasserman
                        1177 Avenue of the Americas, 19th Floor
                        New York, New York  10036-2714
                        (212) 508-6100

                        Attorneys for Petitioners

To:

Brian H. Polovoy, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York, 10022
*Attorneys for Respondent G.T.I. S.A.*

The ICC International Court of Arbitration
  of the International Chamber of Commerce
Attn:  Josefa Sicard-Mirabal
Director, Arbitration and ADR, North America
c/o US Council for International Business
1212 Avenue of the Americas
New York, NY 10036
*Respondent*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the matter of the application of:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                          Petitioners,

            v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                      Respondents.

Index No. 601164/2008

**AFFIRMATION OF
DAVID A. SHARGEL IN
SUPPORT OF
PRELIMINARY INJUNCTION**

**DAVID A. SHARGEL**, an attorney admitted to practice before the courts of the

State of New York, affirms the following to be true pursuant to Rule 2106 of the CPLR:

      1.      I am an attorney with the firm of Bracewell & Giuliani LLP, counsel for

petitioners. I make this affirmation in support of petitioners' motion, pursuant to CPLR

§§ 6301 and 7503(b), for a preliminary injunction staying an arbitration filed against

petitioners by respondent GTI S.A. ("GTI") under the auspices of respondent The ICC

International Court Of Arbitration Of The International Chamber Of Commerce ("ICC"),

Arbitration No. 15372/JRF (the "Arbitration").

      2.      On or about December 27, 2007, respondent GTI filed a Request for

Arbitration concerning a dispute arising out of a Purchase and Sale Agreement (the

"Agreement"). A true and correct copy of the Agreement, as translated from Portuguese, is

attached as Exhibit ("Ex.") A to the Affidavit of Lawrence M. Teitelbaum, sworn to on

April 17, 2008 ("Teitelbaum Aff.").

       3.      Petitioners are not parties to that Agreement and have never agreed to arbitrate

any dispute with GTI.

       4.      On April 18, 2008, with petitioners' deadline to submit an answer in the

arbitration approaching, petitioners moved by order to show cause for a preliminary

injunction and temporary restraining order enjoining respondents from proceeding with the

Arbitration.

       5.      By stipulation dated April 18, 2008, respondent GTI agreed, among other

things, that "the mere act by Petitioners of filing their Answer to the Request for Arbitration

in [the Arbitration] shall not, in and of itself, be deemed 'participat[ion] in the Arbitration'

under CPLR 7503(b),'" thus, obviating the need for a temporary restraining order at that time.

       6.      Petitioners, therefore, agreed to withdraw their order to show cause and to

proceed by notice of motion.

       7.      On May 2, 2008, petitioners filed their answer to the Request for Arbitration

and argued that they are not proper parties to the arbitration.

       8.      Despite their objection, the Arbitration is still proceeding against petitioners.

       9.      As a result, petitioners face irreparable harm.  If petitioners continue to

participate in the Arbitration, they could be deemed to waive their right to obtain from this

Court a stay of the Arbitration under CPLR § 7503(b); if petitioners fail to defend themselves

in the Arbitration, they may end up with a sizeable default judgment against them.

      10.     As set forth more fully in the accompanying Memorandum of Law, dated May

8, 2008, the Teitelbaum Aff. and the Petition to Stay Arbitration Pursuant to Article 75 of the

CPLR, dated April 17, 2008, Petitioners have demonstrated that they have satisfied the requirements necessary for obtaining a preliminary injunction, i.e., a likelihood of success on the merits, irreparable harm and the balance of equities in petitioners' favor.

WHEREFORE, petitioners respectfully request that the Court issue an order, pursuant to CPLR §§ 6301 and 7503(b), preliminarily enjoining GTI and the ICC from proceeding with the ICC arbitration, Ref. 15372/JRF, against petitioners, and granting such other relief as the Court deems just and proper.

Dated: New York, New York
       May 8, 2008

_____
DAVID A. SHARGEL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the matter of the application of:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                                    Petitioners,

                    v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                                    Respondents.

---

Index No. 601164/2008

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION PENDING DETERMINATION OF PETITION TO STAY ARBITRATION

BRACEWELL & GIULIANI LLP

1177 Avenue of the Americas
New York, New York 10036
(212) 508-6100

Attorneys for Petitioners

Of Counsel:
    Kenneth A. Caruso
    Jeffrey I. Wasserman
    Daniel S. Meyers

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

    A.    Introduction ................................................................................ 2

    B.    The Relationships Among The Relevant Entities ............................................. 3

    C.    Petitioners Are Not Parties To The Agreement .............................................. 3

    D.    GTI Files A Request For Arbitration ......................................................... 4

    E.    The MP Funds And Volo Object To Arbitration ............................................ 5

ARGUMENT ..................................................................................................... 6

POINT I    PETITIONERS ARE ENTITLED TO A PRELIMINARY
            INJUNCTION STAYING THE ARBITRATION .......................................... 6

    A.    Standard For Issuing Injunctive Relief ...................................................... 6

    B.    Petitioners Are Likely To Succeed On The Merits Of Their Petition To
          Stay The Arbitration ....................................................................... 6

        1.    Petitioners Are Not Signatories To The Agreement ............................ 6

        2.    Any Effort By GTI To Bind Petitioners Must Fail .............................. 8

             a.    Petitioners Are Not Bound To The Agreement Merely
                  Because They Negotiated Its Terms ......................................... 9

             b.    Petitioners Are Not Alter Egos Of, And Petitioners'
                  Supposed Domination Of, VDB And VarigLog Was
                  Not An Instrument Of Fraud ................................................ 9

    C.    Petitioners Will Suffer Irreparable Harm Absent An Injunction ................... 12

    D.    The Balance Of Equities Tips Decidedly In Petitioners' Favor ..................... 14

CONCLUSION ................................................................................................. 15

Table of Authorities

Page(s)

Federal Cases

Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.,
    No. 08 Civ. 2152, 2008 WL 759353 (S.D.N.Y. March 20, 2008)..............................12

Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd.,
    No. 07 Civ. 10649, 2008 WL 463720 (S.D.N.Y. Feb. 19, 2008) ..............................12

Serio v. Black, Davis & Shue Agency, Inc.,
    No. 05 Civ. 15, 2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005)...................................12

Thomson-CSF, S.A. v. American Arbitration Association,
    64 F.3d 773 (2d Cir. 1995)........................................................................................12

State Cases

Biosynexus, Inc. v. Glaxo Group Ltd.,
    11 Misc. 3d 1062(A), 816 N.Y.S. 693 (Sup. Ct. N.Y. Co. 2006)..............................14

Coward v. Bright,
    12 Misc. 3d 1173(A), 820 N.Y.S.2d 842 (Sup. Ct. N.Y. Co. 2006)............................7

J.A. Preston Corp. v. Fabrication Enterprises, Inc.,
    68 N.Y.2d 397, 502 N.E.2d 197, 509 N.Y.S.2d 520 (1986)........................................6

McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co.,
    114 A.D.2d 165, 498 N.Y.S.2d 146 (2d Dep't 1986)...................................................7

McNeil v. Mohammed,
    32 A.D.3d 829, 821 N.Y.S.2d 225 (1st Dep't 2006) ...................................................6

Merrill Lynch, Pierce, Fenner & Smith v. Benjamin,
    1 A.D.3d 39, 766 N.Y.S.2d 1 (1st Dep't 2003) ...........................................................6

Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Development Corp.,
    70 A.D.2d 1021, 418 N.Y.S.2d 216 (3d Dep't 1979).................................................14

TNS Holdings, Inc. v. MKI Securities Corp.,
    92 N.Y.2d 335, 703 N.E.2d 749, 680 N.Y.S.2d 891 (1998)................................. passim

Table of Authorities
(continued)

Page(s)

State Statutes

CPLR § 6301 ........................................................................................................6

CPLR § 7503(b) ..........................................................................................1, 13, 14

iii

Petitioners MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson Global Opportunities Partners (Cayman) II L.P. (the "MP Funds") and Volo Logistics LLC ("Volo") (together, the MP Funds and Volo shall be referred to as "petitioners"), by their attorneys, Bracewell & Giuliani LLP, respectfully submit this memorandum of law in support of their motion, pursuant to CPLR § 6301 for a preliminary injunction staying arbitration pending determination of their Article 75 petition for a stay of arbitration.

### PRELIMINARY STATEMENT

The matter presented here is straightforward. Respondent GTI S.A. ("GTI") has filed with Respondent International Court of Arbitration of the International Chamber of Commerce (the "ICC") a Request for Arbitration, dated December 27, 2007, which names petitioners as respondents, Arbitration No. 15372/JRF (the "Arbitration"). The Request for Arbitration concerns a dispute arising out of a certain Purchase and Sale Agreement (the "Agreement") to which the petitioners are not parties. (A true and correct copy of the Agreement, as translated from Portuguese, is attached as Exhibit ("Ex.") A to the Affidavit of Lawrence M. Teitelbaum, sworn to on April 17, 2008 (the "Teitelbaum Aff.")). Petitioners, however, have never agreed to arbitrate any dispute with GTI. Nonetheless, the Arbitration is proceeding against them despite the jurisdictional objections previously raised by petitioners.

As a result, petitioners face irreparable harm. If petitioners continue to participate in the Arbitration, they could be deemed to waive their right to obtain from this Court a stay of the Arbitration under CPLR § 7503(b); if petitioners fail to defend themselves in the Arbitration, they may end up with a sizeable default judgment against them. Petitioners

therefore request that the Court issue a preliminary injunction staying the Arbitration against them.

STATEMENT OF FACTS

A.    <u>Introduction</u>

On or about March 28, 2007, Respondent GTI entered into a Purchase and Sale Agreement (the "Agreement") pursuant to which Varig Logistica S.A. ("VarigLog") and Volo do Brasil S.A. ("VDB") agreed to sell to GTI all of their shares of VRG Linhas Aereas S.A. ("VRG"), a Brazilian passenger airline. <u>See</u> Teitelbaum Aff. ¶ 3. The Agreement was signed by VarigLog, VDB, VRG, GTI and GTI's parent company, Gol Linhas Aereas Inteligentes S.A. ("GOL"). <u>See</u> Teitelbaum Aff. ¶ 4. Petitioners MP Funds and Volo were <u>not</u> signatories to the Agreement. See Teitelbaum Aff. ¶ 5.

Months after the Agreement was executed, a dispute allegedly arose among GTI, VarigLog and VDB concerning certain post-closing adjustments. GTI thus commenced an arbitration in Sao Paulo, Brazil, under the auspices of Respondent ICC International Court of Arbitration ("ICC"), Arbitration No. 15372/JRF (the "Arbitration"). (A true and correct copy of GTI's Request for Arbitration, as translated from Portuguese, is attached as Ex. B to the Teitelbaum Aff.)

GTI's Request for Arbitration names as respondents not only VarigLog and VDB -- GTI's counterparties to the Agreement -- but also the MP Funds and Volo. Petitioners, however, are not signatories to the Agreement, did not agree to be bound by the Agreement and did not agree to arbitrate (or be parties to) any dispute arising out of the Agreement. <u>See</u> Teitelbaum Aff. ¶ 7.

2

B.    <u>The Relationships Among The Relevant Entities</u>

The MP Funds hold and invest certain investment capital of, *inter alia*, governmental institutions, universities, pension funds and other public and private entities and individuals. <u>See</u> Teitelbaum Aff. ¶ 8.  The MP Funds indirectly wholly own Volo as an investment subsidiary.  <u>See</u> Teitelbaum Aff. ¶ 9.  At the time that GTI entered into the Agreement with VDB and VarigLog, Volo owned 60% of VDB's capital stock, but only 20% of VDB's voting stock.  VDB, in turn, wholly-owned VarigLog.  VarigLog owned more than 99% of VRG, and VDB owned the remainder.  <u>See</u> Teitelbaum Aff. ¶ 10.

C.    <u>Petitioners Are Not Parties To The Agreement</u>

GTI has alleged that, in early 2007, it "was approached, in New York, by respondents [petitioners in this proceeding in New York], which presented them with an offer for GTI to purchase all shares of [VRG]."  Teitelbaum Aff. Ex. B ¶ 1.  GTI has further alleged that, "[f]rom then on, all discussions, negotiations and meetings took place with the representatives of [petitioners] . . . ."  Teitelbaum Aff. Ex. B ¶ 1.

On or about March 28, 2007, the negotiations culminated with the execution of the Agreement, pursuant to which VarigLog and VDB agreed to sell to GTI a collective total of 122,958,198 class A common shares, 30,739,549 class B common shares and 153,697,746 preferred shares of VRG in exchange for the Brazilian currency equivalent of $275 million. <u>See</u> Teitelbaum Aff. Ex. A.  The signatories to the Agreement were VarigLog, VDB, VRG, GTI and GTI's parent company, GOL.  <u>See</u> Teitelbaum Aff. Ex. A.  As stated above, petitioners were not signatories to the Agreement.  <u>See</u> Teitelbaum Aff. ¶ 13.

Among other things, the Agreement provided that a price adjustment be made within 180 days of the sale based upon an updated balance sheet of VRG that would be prepared by PriceWaterhouseCoopers ("PWC").  <u>See</u> Teitelbaum Aff. Ex. A, Clauses 5.1, 5.1.1.

3

If there was a positive difference between the balance sheet prepared at the time of the Agreement and the updated balance sheet, GTI would pay the difference to VarigLog. See Teitelbaum Aff. Ex. A, Clause 5.2(a). Conversely, if there was a negative difference between the old and new balance sheets, the difference would be paid by VarigLog to GTI. See Teitelbaum Aff. Ex. A, Clause 5.2(b).

GTI later sought from VarigLog and VDB a price adjustment pursuant to Clause 5.2 of the Agreement. That issue forms the basis for the Arbitration commenced by GTI before the ICC. See Teitelbaum Aff. ¶ 16.

D.    GTI Files A Request For Arbitration

The Agreement contains arbitration provisions. See Teitelbaum Aff. Ex. A, Clauses 14.1, 14.2, 14.6. Thus, on or about December 27, 2007, GTI submitted its Request for Arbitration to the ICC. The Request for Arbitration alleges that, on March 28, 2007, VarigLog and VDB "executed an Agreement with GTI whereby they sold the latter all VRG shares for the total price" of $275 million. See Teitelbaum Aff. Ex. B ¶ 4.

The Request for Arbitration further alleges that "[v]arious controversial points emerged" with respect to the price adjustment, and thus requests that, "given the impossibility of making such price adjustment as contractually provided for," the ICC "settle the divergences between" the balance sheets and "determine the price adjustment amount provided for in [the Agreement]." See Teitelbaum Aff. Ex. B ¶¶ 7, 10, 17. The Request for Arbitration does not allege that the MP Funds or Volo were signatories to the Agreement. Nevertheless, GTI named the MP Funds and Volo as respondents in the Arbitration. See Teitelbaum Aff. ¶ 20.

The Request for Arbitration does not allege, nor could it, that the MP Funds and Volo were alter egos of VDB and VarigLog at the time the Agreement was executed. See

4

Teitelbaum Aff. ¶ 21. In fact, in July 2007, Volo commenced litigations against VDB and VarigLog in Brazil, New York and Switzerland. See Teitelbaum Aff. ¶ 22. VDB and VarigLog have commenced numerous actions against Volo in Brazil. Thus, far from being in control of VDB and VarigLog, Volo has been litigating against VDB and VarigLog in three separate countries, including an action that was filed in this Court based on VDB's and VarigLog's default on eight loans from Volo (and a related entity) totaling approximately $88 million. See Volo v. VarigLog, Index No. 602536/07 (Honorable Richard B. Lowe III). See Teitelbaum Aff. ¶ 22.

E.    The MP Funds And Volo Object To Arbitration

The Arbitration is in its earliest stages. Arbitrators have not yet been appointed or empanelled. See Teitelbaum Aff. ¶ 23. Petitioners have presented to the ICC an objection to being named as respondents to the Arbitration because they are not parties to the underlying Agreement. The ICC, however, deferred a decision on that issue until the arbitrators are appointed and, instead, required petitioners to answer the Request for Arbitration. See Teitelbaum Aff. ¶ 24.

By stipulation dated April 19, 2008 -- agreed upon in connection with an order to show cause that was filed and withdrawn by petitioners on that date -- counsel for respondent GTI agreed that "the mere act by Petitioners of filing their Answer to for Arbitration . . . shall not, in and of itself, be deemed 'participat[ion] in the Arbitration' under CRPL 7503(b)." Affirmation of David A. Shargel, dated May 7, 2008 ("Shargel Aff.") ¶ 5. Thus, on May 2, 2008, petitioners filed an answer to the Request for Arbitration ("Answer"), and argued that they are not proper parties to the arbitration. See Shargel Aff. ¶ 7.

ARGUMENT

POINT I

PETITIONERS ARE ENTITLED TO A
PRELIMINARY INJUNCTION STAYING THE ARBITRATION

A.     Standard For Issuing Injunctive Relief

Pursuant to CPLR § 6301:

> A preliminary injunction may be granted in any action where it
> appears that the defendant threatens or is about to do, or is doing or
> procuring or suffering to be done, an act in violation of the plaintiff's
> rights respecting the subject of the action, and tending to render the
> judgment ineffectual, or in any action where the plaintiff has
> demanded and would be entitled to a judgment restraining the
> defendant from the commission or continuance of an act, which, if
> committed or continued during the pendency of the action, would
> produce injury to the plaintiff.

CPLR. § 6301. This petition presents just such a case.

"To establish entitlement to a preliminary injunction, a movant must establish (1) a

probability of success on the merits, (2) irreparable harm in the absence of an injunction, and

(3) a balance of the equities in favor of granting the injunction." McNeil v. Mohammed, 32

A.D.3d 829, 829, 821 N.Y.S.2d 225, 225 (1st Dep't 2006); J.A. Preston Corp. v. Fabrication

Enterprises, Inc., 68 N.Y.2d 397, 406, 502 N.E.2d 197, 201, 509 N.Y.S.2d 520, 524 (1986)

(same). As demonstrated below, petitioners easily meet the standard for injunctive relief.

B.     Petitioners Are Likely To Succeed On The
       Merits Of Their Petition To Stay The Arbitration

       1.     Petitioners Are Not Signatories To The Agreement

The threshold issue on the merits is whether GTI has a valid agreement with

petitioners to arbitrate. See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Benjamin, 1

A.D.3d 39, 43-44, 766 N.Y.S.2d 1, 4 (1st Dep't 2003); CPLR § 7503(b). "Although

arbitration is favored as a matter of public policy," the Court of Appeals has made it

abundantly clear that:

> equally important is the policy that seeks to avoid unintentional waiver of the benefits and safeguards which a court of law may provide in resolving disputes. Indeed, unless the parties have subscribed to an arbitration agreement it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent.

TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d 335, 339, 703 N.E.2d 749, 751, 680

N.Y.S.2d 891, 893 (1998) (internal citation omitted) (emphasis added).

For petitioners to "show a likelihood of success on the merits, it is sufficient that

petitioners make a prima facie showing of a right to relief." Coward v. Bright, 12 Misc. 3d

1173(A), 820 N.Y.S.2d 842, 2006 WL 1759454, at *3 (Sup. Ct. N.Y. Co. 2006) (citing

McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., 114 A.D.2d 165, 172-73, 498 N.Y.S.2d

146, 152 (2d Dep't 1986)). Here, petitioners can easily meet this burden, because they

simply are not signatories to the Agreement containing the arbitration provision and, thus,

there is no valid agreement to arbitrate.

Petitioners are not parties to a valid agreement to arbitrate. See Teitelbaum Aff. ¶ 5.

Nor is there any "clear indication of intent" to be bound by an agreement to arbitrate. Indeed,

to the contrary, while petitioners may have negotiated the terms of the Agreement, as GTI

contends, petitioners explicitly were not parties or signatories to the Agreement. Rather,

VDB and VarigLog were the parties and signatories to the Agreement. See Teitelbaum Aff.

¶ 12. And this makes perfect sense: GTI was negotiating to purchase the shares of VRG that

were held by VarigLog and VDB, not by petitioners.[1] Petitioners thus easily meet their

prima facie burden.

---

[1] In fact, GTI specifically requested that language be added to the Agreement expressly binding petitioners to the Agreement. That request was rejected, however, and such language is not in the

7

2.    <u>Any Effort By GTI To Bind Petitioners Must Fail</u>

GTI of course recognizes that petitioners are not signatories to the Agreement.  GTI thus would conjure up two bases for requiring petitioners to arbitrate.  First, GTI contends in its Request for Arbitration that petitioners should be bound by the Agreement -- notwithstanding the fact that they are not signatories to the Agreement -- because petitioners participated in the negotiation of the terms and the execution of the Agreement.  <u>See</u> Teitelbaum Aff. Ex. B.  Second, GTI would contend that petitioners should be required to arbitrate under some dubious alter-ego or veil piercing theory.  Such contentions are meritless.

Indeed, the Court of Appeals, in <u>TNS Holdings</u>, rejected arguments that are virtually identical to those likely to be made here by GTI.  In that case, respondent TNS Holdings, Inc. ("TNS") conducted lengthy negotiations with MKI Securities Corp. ("MKI") concerning the sale of TNS's primary asset (a software system).  Twenty-four hours before the contract was to be executed, MKI informed TNS that, despite the fact that MKI had conducted the negotiations with TNS leading up to the contract, the signatory to the contract would be MKI's sister entity, Batchnotice, not MKI.  When a contractual dispute later arose, TNS commenced an arbitration pursuant to the contract with Batchnotice not only against the signatory, Batchnotice, but also against MKI and the common parent of MKI and Batchnotice, MAI, PLC ("MAI").

The issue before the Court in <u>TNS Holdings</u>, therefore, was the very same issue presented here: can a nonsignatory be bound by an arbitration agreement because it

---

Agreement.  GTI should not be afforded a second bite at that apple.  <u>See</u>, <u>e.g.</u>, <u>Blonder & Co. v. Citibank N.A.</u>, 28 A.D.3d 180, 182, 808 N.Y.S.2d 214, 217 (1st Dep't 2006) (observing that "it is fundamental that courts enforce contracts, not rewrite them").

8

negotiated the terms of the contract containing the arbitration agreement and because of its

overall corporate relationship to the signatory? The Court in TNS Holdings answered that

question in the negative, and stayed the arbitration as against MKI and MAI.

        a.      Petitioners Are Not Bound To The Agreement
                  Merely Because They Negotiated Its Terms

      The Court of Appeals in TNS Holdings rejected the argument -- similar to GTI's

argument here -- that MKI's role in negotiating the contract at issue somehow bound MKI, a

non-signatory, to the arbitration clause therein. TNS Holdings, 92 N.Y. 2d at 341, 703 N.E.

2d at 752, 680 N.Y.S. 2d at 894 ("[P]laintiffs cannot now complain that they did not know

what they were agreeing to in executing the agreement with Batchnotice. . . . that plaintiffs

entered into the agreement involuntarily, or that they thought they were contracting with an

entity other than Batchnotice."). Similarly, here, while petitioners may have negotiated the

terms of the Agreement with GTI, GTI was fully aware that the signatories were VDB and

VarigLog -- the owners of the shares that GTI was purchasing. GTI cannot now be heard to

complain about the identity of the signatories.

        b.      Petitioners Are Not Alter Egos Of, And Petitioners'
                  Supposed Domination Of, VDB And VarigLog
                  Was Not An Instrument Of Fraud

      In TNS Holdings, the Court of Appeals recognized that a nonsignatory to a contract

may be bound by an arbitration clause in the contract -- and thus may be deemed to have

waived the "the benefits and safeguards which a court of law may provide in resolving

disputes" -- if the nonsignatory is the "alter ego" of a signatory. TNS Holdings, 92 N.Y.2d at

339, 703 N.E.2d at 751, 680 N.Y.S.2d at 893 ("Akin to piercing the corporate veil to prevent

fraud or to achieve equity, this exception applies as well in determining whether a

nonsignatory to an arbitration agreement should be bound by it.") (internal citation and

quotation marks omitted). But the Court cautioned that the burden of proof on the party

invoking the alter ego doctrine is a demanding one:

> Those seeking to pierce a corporate veil of course bear a heavy
> burden of showing that the corporation was dominated as to the
> transaction attacked and that such domination was the instrument
> of fraud or otherwise resulted in wrongful or inequitable
> consequences. Evidence of domination alone does not suffice
> without an additional showing that it led to inequity, fraud or
> malfeasance.

Id. (emphasis added). GTI cannot establish either of the required prongs.

The MP Funds hold and invest certain investment capital of, inter alia, governmental

institutions, universities, pension funds and other public and private entities and individuals.

See Teitelbaum Aff. ¶ 8. The MP Funds indirectly wholly own Volo as an investment

subsidiary. See Teitelbaum Aff. ¶ 9. When GTI entered into the Agreement with VDB and

VarigLog, Volo owned 60% of VDB's capital stock, but only 20% of VDB's voting stock.

VDB, in turn, wholly-owned VarigLog, which owned 99% of VRG. VDB owned the

remainder of VRG. See Teitelbaum Aff. ¶ 10. Pursuant to the Agreement, VarigLog and

VDB sold to GTI all of the stock of VRG. See Teitelbaum Aff. Ex. A.

Plainly petitioners, which controlled only 20% of the voting power in VDB, could not

have dominated VDB and its subsidiary, VarigLog, at the time that GTI executed the

Agreement with VDB and VarigLog. Petitioners thus fail to meet the first prong of the TNS

Holdings test -- to wit, domination.

Moreover, in July 2007, Volo commenced litigations against VDB and VarigLog in

Brazil, New York and Switzerland. VDB and VarigLog have commenced numerous actions

against Volo in Brazil. See Teitelbaum Aff. ¶ 22. Thus, far from being in control of VDB

and VarigLog, Volo has been litigating against VarigLog and VDB in three separate

10

countries, including an action that was filed in this Court based on VDB's and VarigLog's default on eight loans from Volo (and a related entity) totaling approximately $88 million. See Volo v. VarigLog, Index No. 602536/07 (Honorable Richard B. Lowe III); Teitelbaum Aff. ¶ 22.

Nor can GTI establish that, with respect to the Agreement, such supposed domination, if any, was an "instrument of fraud" or otherwise "resulted in wrongful or inequitable consequences." TNS Holdings, 92 N.Y.2d at 339, 703 N.E.2d at 751, 680 N.Y.S.2d at 893. As the TNS Holdings court held, "even if MKI dominated Batchnotice," TNS could not demonstrate that "that control resulted in some fraud or wrong mandating disregard of the corporate form" because:

> [a]n inference of abuse does not arise from this record where a corporation was formed for legal purposes or is engaged in legitimate business. There is no showing that through its domination MKI misused the corporate form for its personal ends so as to commit a fraud or wrongdoing or avoid any of its obligations.

TNS Holdings, 92 N.Y. 2d at 340-41, 703 N.E. 2d at 751, 680 N.Y.S. 2d at 893. Similarly, here, even if petitioners dominated VDB and VarigLog -- which, as demonstrated above, they did not -- there can be no inference that VDB and VarigLog signed the Agreement, instead of the petitioners, to advance petitioners' "personal ends so as to commit a fraud or wrongdoing or to avoid any of [the petitioners'] obligations." Indeed, GTI's Request for Arbitration does not contain any allegations that the corporate relationships between petitioners and VDB and/or VarigLog somehow "led to inequity, fraud or malfeasance." Rather, the Request for Arbitration alleges a simple breach of contract claim (seeking a post-contract price adjustment pursuant to the relevant provision in the Agreement). It simply does not allege fraud.

11

Thus, in summary, and as in <u>TNS Holdings</u>, petitioners have not "perverted the privilege of doing business in the corporate form" (92 N.Y. 2d at 341, 703 N.E. 2d at 752, 680 N.Y.S. 2d at 894 (internal quotations and modifications omitted)), and therefore should not be forced to arbitrate based on an arbitration clause found in an agreement to which petitioners are not signatories.[2]

C.     <u>Petitioners Will Suffer Irreparable Harm Absent An Injunction</u>

The requirement of irreparable harm may be satisfied "by showing 'a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" <u>Serio v. Black, Davis & Shue Agency, Inc.</u>, No. 05 Civ. 15, 2005 WL 3642217, at *16 (S.D.N.Y. Dec. 30, 2005) (quoting <u>Brenntag Int'l Chemicals, Inc. v. Bank of India</u>, 175 F.3d 245, 249 (2d Cir. 1999)).

Petitioners will suffer irreparable harm if they are required to proceed with arbitration in Brazil while this proceeding is pending. <u>Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.</u>, No. 08 Civ. 2152, 2008 WL 759353, at *5 (S.D.N.Y. March 20, 2008) (observing that "a party forced to arbitrate a dispute that is beyond the purview of the arbitration agreement suffers irreparable harm"); <u>Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd.</u>, No. 07 Civ. 10649, 2008 WL 463720, at *4 (S.D.N.Y. Feb. 19, 2008) ("Penrod would be irreparably harmed if forced to expend time and resources arbitrating an

---

[2] To the extent that federal law governs pursuant to the FAA the question of whether Petitioners may be bound by the arbitration clause, the answer is the same. The Second Circuit has "recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." <u>Thomson-CSF, S.A. v. American Arbitration Ass'n</u>, 64 F.3d 773, 776 (2d Cir. 1995). The only theory that could possibly apply here is the fourth. But the Second Circuit has clarified that "courts will pierce the corporate veil in [only] two broad situations: to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary." <u>Id.</u> at 777; <u>see id.</u> at 778 ("[A] parent corporation and its subsidiary lose their distinct corporate identities when their conduct demonstrates a virtual abandonment of separateness."). As demonstrated above, these requirements are not satisfied here.

issue that is not subject to the arbitration."); see also <u>TNS Holdings</u>, 92 N.Y.2d at 339, 703

N.E.2d 751, 680 N.Y.S.2d at 893 (observing the importance of "the policy that seeks to avoid

the unintentional waiver of the benefits and safeguards which a court of law may provide in

resolving disputes").

By stipulation dated April 19, 2008, GTI agreed that "the mere act by Petitioners of

filing their Answer to for Arbitration . . . shall not, in and of itself, be deemed 'participat[ion]

in the Arbitration' under CRPL 7503(b)." Shargel Aff. ¶ 3. Petitioners' Answer to the

Request for Arbitration was filed on May 2, 2008. Petitioners reiterated their objection that

they are not proper parties to the Arbitration. <u>See</u> Shargel Aff. ¶ 4.

The arbitration, however, is proceeding. According to the ICC Rules of Arbitration,

"[t]he Abitral Tribunal shall proceed within as short a time as possible to establish the facts

of the case by all appropriate means." <u>See</u> ICC Rules of Arbitration, Art. 20(1). Thus, unless

petitioners participate in the arbitration, they risk entry of an unfavorable award by default.

If, on the other hand, petitioners participate further, they may be deemed to have

"participated in the arbitration" and thus may be precluded from obtaining a stay of

arbitration from this Court. <u>See</u> CPLR § 7503(b). Moreover, petitioners will suffer

irreparable injury by having to incur the costs and expenses of moving forward with the

arbitration while their petition for a stay of that arbitration is pending. This burden would be

exacerbated by the fact that the Arbitration will take place in Brazil, that every aspect of the

arbitration is to be conducted in Portuguese and that it will be governed by the laws of Brazil.

<u>See</u> Teitelbaum Aff. Ex. A, Clauses 14:3; 14:6. Petitioners will not be able to recover these

lost expenses, time and effort if this Court later stays the Arbitration as against petitioners.

Thus, petitioners will not be "returned to the positions they previously occupied."

13

D.    The Balance Of Equities Tips Decidedly In Petitioners' Favor

In balancing the equities, the Court must determine whether "'the irreparable injury to be sustained by the plaintiff is more burdensome to it than the harm caused to defendant through imposition of the injunction.'" Biosynexus, Inc. v. Glaxo Group Ltd., 11 Misc. 3d 1062(A), 816 N.Y.S. 693, at *11 (Sup. Ct. N.Y. Co. 2006) (quoting Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Dev. Corp., 70 A.D.2d 1021, 1022, 418 N.Y.S.2d 216 (3d Dep't 1979)).

Here, the balance of the equities tips decidedly in favor of petitioners. As noted above, in the absence of an injunction, petitioners will be faced with the option of either (a) participating in the Arbitration beyond the filing of the Answer (in which case they will not only incur costs and expenses that may not be recoverable at a later date, but may also be deemed to have "participated in the arbitration," rendering a stay from this Court unavailable under § 7503(b)), or (b) refusing to participate further in the Arbitration (in which case the arbitration will proceed without petitioners, leaving the prospect of having a default award entered against them). This "Catch 22" would be avoided if this Court grants the preliminary relief requested by petitioners.

GTI, moreover, will suffer no harm if the injunctive relief is granted. GTI will be able to request that the ICC proceeding be stayed in its entirety pending this Court's determination of petitioners' request for a permanent stay. Or, alternatively, GTI may choose to proceed with the arbitration against VDB and VarigLog, the two entities who entered into the Agreement with GTI. GTI therefore may seek to pursue its claims even if petitioners are not parties.

Finally, as to the ICC, it too will suffer no harm by the granting of the requested relief.

14

<u>CONCLUSION</u>

      For the foregoing reasons, the Court should grant a preliminary injunction staying the arbitration as against petitioners pending a determination of their Article 75 petition for a stay of arbitration.

Dated: New York, New York
       May 8, 2008

                    Respectfully submitted,

                    BRACEWELL & GIULIANI LLP

                    By: _____
                          Jeffrey I. Wasserman

                    1177 Avenue of the Americas
                    New York, New York  10036
                    (212) 508-6100

                    Attorneys for Petitioners

Of Counsel:
      Kenneth A. Caruso
      Jeffrey I. Wasserman
      Daniel S. Meyers

15

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

In the Matter of the Application of

MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS II L.P.,          Index no.
MATLINPATTERSON GLOBAL                   601164/08
OPPORTUNITIES PARTNERS (CAYMAN)
II L.P and VOLO LOGISTICS LLC,
                    Petitioners

                    -v-

GTI S.A. and THE ICC INTERNATIONAL      **AFFIDAVIT OF**
COURT OF ARBITRATION OF THE             **SERVICE**
INTERNATIONAL CHAMBER OF
COMMERCE
                    Respondents

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Ian Thomson, being duly sworn, deposes and says: I am not a party to this action, am
over 18 years of age and reside at New York, NY:

On May 9, 2008 at 3:52 p.m. at 599 Lexington Ave, New York, NY 10022, I served the
within NOTICE OF PETITION, PETITION TO STAY ARBITRATION PURSUANT
TO ARTICLE 75 OF THE CPLR, and AFFIDAVIT OF LAWRENCE
M.TEITELBAUM IN SUPPORT OF TEMPORARY RESTRAINING ORDER on GTI
S.A. c/o BRIAN H. POLOVOY, SHEARMAN & STERLING LLP, respondent therein
named, by delivering a true copy of same to ALFREDO C. FLORES, Law clerk.

The person served is a hispanic male, black hair, 40-50 years old, 5'5"-5'7" in height,
140-150 pounds.

                                        Ian Thomson
                                        License No. 1150441

Sworn to before me this
9th day of May 2008.

NOTARY PUBLIC
BRUCE LAZARUS
NOTARY PUBLIC-STATE OF NEW YORK
No. 4990593
Qualified in Westchester County
My Commission Expires January 13, 2010

*LegalEase Inc.*

139 Fulton Street, New York, NY 10038
Tel: 212-393-9070  •  800-393-1277  •  Fax: 212-393-9796

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

In the Matter of the Application of

MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS II L.P.,          Index no.
MATLINPATTERSON GLOBAL                   601164/08
OPPORTUNITIES PARTNERS (CAYMAN)
II L.P and VOLO LOGISTICS LLC,
                    Petitioners

              -v-
GTI S.A. and THE ICC INTERNATIONAL      AFFIDAVIT OF
COURT OF ARBITRATION OF THE             SERVICE
INTERNATIONAL CHAMBER OF
COMMERCE
                    Respondents

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Ian Thomson, being duly sworn, deposes and says: I am not a party to this action, am
over 18 years of age and reside at New York, NY:

On May 9, 2008 at 3:26 p.m. at 1212 Avenue of the Americas, New York, NY 10036, I
served the within NOTICE OF MOTION FOR PRELIMINARY INJUNCTION,
AFFIRMATION OF DAVID A. SHARGEL IN SUPPORT, MEMO OF LAW IN
SUPPORT, and AFFIDAVIT OF LAWRENCE M.TEITELBAUM IN SUPPORT OF
TEMPORARY RESTRAINING ORDER on THE ICC INTERNATIONAL COURT OF
ARBITRATION OF THE INTERNATIONAL CHAMBER OF COMMERCE,
respondent therein named, by delivering a true copy of same to TONY GARCIA, Office
services.

The person served is a hispanic male, black hair, 35-45 years old, 5'5"-5'7" in height,
160-170 pounds.

Ian Thomson
License No. 1150441

Sworn to before me this
9th day of May 2008.

NOTARY PUBLIC

BRUCE LAZARUS
NOTARY PUBLIC-STATE OF NEW YORK
No. 4990593
Qualified in Westchester County
My Commission Expires January 11, 2010



139 Fulton Street, New York, NY 10038
Tel: 212-393-9070  •  800-393-1277  •  Fax: 212-393-9796

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x
                                                            :
MatlinPatterson Global Opportunities Partners               :
II L.P., MatlinPatterson Global Opportunities               :
Partners (Cayman) II L.P., and Volo Logistics               :
LLC,                                                        :
                                                            :    Index No. 601164/08
                            Petitioners,                    :
                                                            :    IAS Part 23
              v.                                            :
                                                            :    Honorable Richard Braun
GTI S.A. and The International Court of                      :
Arbitration of the International Chamber of                 :
Commerce,                                                   :
                                                            :
                            Respondents.                    :
                                                            :
------------------------------------------------------------x

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

PLEASE TAKE NOTICE that on May 19, 2008, respondent GTI S.A., by and through its

undersigned attorneys, removed the above-captioned action from the Supreme Court of the State

of New York, County of New York to the United States District Court for the Southern District

of New York by filing a Notice of Removal with the clerk of the federal district court. A true

and correct copy of the Notice of Removal, and the Exhibits thereto, are attached hereto.

RECEIVED

MAY 2 0 2008

TRIAL SUPPORT OFFICE

NEW YORK
COUNTY CLERK'S OFFICE

MAY 2 0 2008

NOT COMPARED
WITH COPY FILE

Dated:     New York, New York
           May 20, 2008

                                  SHEARMAN & STERLING LLP

                                  By:_____
                                       Brian H. Polovoy
                                       Henry Weisburg
                                       Paula Howell

                                  599 Lexington Avenue
                                  New York, NY 10022-6069
                                  Telephone: (212) 848-4000
                                  Facsimile: (212) 848-7179

                                  Attorneys for Respondent
                                  GTI S.A.


To:    Clerk of the County of New York
       Supreme Court of the State of New York
       60 Centre Street
       New York, New York 10007

              - and -

       Kenneth A. Caruso
       Jeffrey I. Wasserman
       Daniel S. Meyers
       BRACEWELL & GIULIANI LLP
       1177 Avenue of the Americas
       New York, NY 10036
       Telephone: (212) 508-6100

       Attorneys for Petitioners
       MatlinPatterson Global Opportunities Partners II L.P.,
       MatlinPatterson Global Opportunities Partners (Cayman) II L.P., and
       Volo Logistics LLC

2



'08 CIV 4697

SHEARMAN & STERLING LLP
Brian H. Polovoy
Henry Weisburg
Paula Howell
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
hweisburg@shearman.com

Attorneys for Respondent
GTI S.A.

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                         :

MatlinPatterson Global Opportunities Partners  :
II L.P., MatlinPatterson Global Opportunities   :
Partners (Cayman) II L.P., and Volo Logistics  :
LLC,                                 :

                   Petitioners,  :

                v.           :   No. 08 CV _____

                          :

GTI S.A. and The ICC International Court of   :
Arbitration of the International Chamber of   :
Commerce,                         :

                  Respondents.  :
                          :
-----------------------------------------------------x

## NOTICE OF REMOVAL

     Pursuant to Section 205 of Title 9 and Sections 1332, 1441, and 1446 of Title 28 of the

United States Code, respondent GTI S.A. ("GTI") hereby removes the action styled

MatlinPatterson Global Opportunities Partners II L.P., et al. v. GTI S.A., et al., Index No.

601164/08, which was filed on April 18, 2008, and is presently pending in the Supreme Court of the State of New York, County of New York.

      1.      Section 205 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 205, provides for the removal of cases from state courts where the subject matter of the state action "relates to an arbitration agreement" under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "New York Convention"). The subject matter of the action in New York state court is the sale of VRG Linhas Aéreas S.A., a Brazilian passenger airline, which is governed by an arbitration clause in the purchase agreement—the Agreement for Purchase and Sale of the Share Control of VRG Linhas Aéreas S.A. and Other Covenants among Varig Logística S.A., Volo do Brasil S.A., and GTI S.A., dated March 28, 2007 (the "Agreement"). Accordingly, GTI removes the state court action to this Court.

      2.      Alternatively, Section 1441 of Title 28 of the United States Code provides for the removal of controversies from state courts over which the "district courts of the United States have original Jurisdiction." 28 U.S.C. § 1441. Section 1332 of Title 28 of the United States Code grants federal district courts original jurisdiction over all civil actions between "citizens of a State and citizens or subjects of a foreign state," where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2). Therefore, as set forth below, GTI removes the state-court action to this Court on the ground of diversity jurisdiction to the extent that no partners or members of the petitioners are citizens or subjects of a foreign state.

**I.    Summary of Proceedings**

      3.      On April 18, 2008, MatlinPatterson Global Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners (Cayman) II L.P., and Volo Logistics LLC (collectively, "MP Funds") commenced this action by filing a petition to stay arbitration pursuant to Article 75 of the New York Civil Practice Law and Rules (the "Petition") in the Supreme Court of the State of New York, County of New York. That same day, MP Funds submitted to the court a proposed order to show cause, which was later withdrawn without prejudice pursuant to an order by the Honorable Richard Braun, entered on April 23, 2008. A true and correct copy

of the Petition and the order approving the withdrawal of the proposed order to show cause is attached hereto as Exhibits A and B, respectively.

4.    On May 9, 2008, MP Funds delivered to Shearman & Sterling LLP ("Shearman & Sterling") a Notice of Petition and a notice of motion for a preliminary injunction, which are returnable in the New York state court on May 30, 2008. A true and correct copy of the Notice of Petition and the notice of motion for a preliminary injunction is attached hereto as Exhibits C and D, respectively. MP Funds have not served GTI with the Notice of Petition, the Petition, or their notice of motion for a preliminary injunction.

5.    The Petition seeks to stay a Brazilian arbitration that GTI commenced in 2007 against Varig Logística S.A., Volo do Brasil S.A., and MP Funds in the International Court of Arbitration of the International Chamber of Commerce ("ICC"), a respondent in this action. (Petition ¶¶ 4, 41.) The arbitration arose from a dispute over the post-closing price adjustment. (Petition ¶¶ 19–20.) MP Funds claims that it should not be required to proceed further in the arbitration because it was not a signatory to the Agreement. (Petition ¶¶ 18, 24, 28, 32, 39.) In the arbitration, GTI seeks to hold MP Funds responsible for the price-adjustment obligation on multiple grounds, which include piercing the corporate veil between the signatories to the Agreement and MP Funds (see Petition ¶ 29), who control the signatories.

6.    This notice of removal is timely, because Section 205 of the FAA permits a defendant to remove the state court action "at any time before the trial thereof." 9 U.S.C. § 205. Additionally, Section 1446 of Title 28 of the United States Code allows for removal within thirty days of service of the initial pleading on the defendants. See 28 U.S.C. § 1446(b). As noted supra, ¶ 4, MP Funds have not served GTI.

**II.    Grounds for Removal and Jurisdiction under the Federal Arbitration Act**

7.    The arbitration clause contained at Clause 14 of the Agreement is a foreign arbitration agreement within the meaning of Section 202 of the FAA, 9 U.S.C. § 202, and accordingly falls within the New York Convention.

3

8.     Section 203 of the FAA grants federal district courts original jurisdiction over controversies arising under the New York Convention.  9 U.S.C. § 203.

9.     Section 205 of the FAA, which relates to removal, provides in relevant part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [New York] Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.  The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

10.     The United States Court of Appeals for the Second Circuit recognizes four requirements for removal under Section 205 of the FAA: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the [New York C]onvention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." Credit Suisse First Boston, LLC v. Padilla, 326 F. Supp. 2d 508, 511 (S.D.N.Y. 2004) (citing Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999)).  This action satisfies all four requirements:  the arbitration is proceeding pursuant to a written arbitration agreement; the Agreement provides for arbitration in Brazil, a signatory to the New York Convention; the subject matter is plainly commercial; the arbitration relates to a foreign dispute arising out of the sale of a Brazilian airline; and the subject matter is clearly not "entirely domestic in scope."

11.     The fact that MP Funds is not a signatory to the Agreement does not affect GTI's right to remove this action.  The Second Circuit has held that a district court can exercise subject-matter jurisdiction over an arbitration dispute involving a non-signatory to an agreement governed by the New York Convention.  Sarhank Group v. Oracle Corp., 404 F.3d 657 (2d Cir. 2005).  The Court of Appeals reasoned that whether a non-signatory should be bound by an arbitration agreement "depends entirely upon . . . the merits of the case, and . . . does not involve a lack of subject matter jurisdiction . . ." Id. at 660.  The court explained that "[w]hen a party

4

challenges the court's subject matter jurisdiction based upon the merits of the case, that party is merely arguing that the adversary has failed to state a claim." Id.

12.    Specifically, this Court has held that Section 205 of the FAA permits removal of a petition by a non-signatory to stay arbitration pursuant to Rule 7503 of the New York Civil Practice Law and Rules—the provision of New York law petitioners invoked in this action. See Republic of Ecuador v. ChevronTexaco Corp., 376 F. Supp. 2d 334, 349-50 (S.D.N.Y. 2005).

## III.    Grounds for Removal and Jurisdiction on the Basis of Diversity

13.    Section 1332 of Title 28 of the United States Code provides federal district courts original jurisdiction over all civil actions between "citizens of a State and citizens or subjects of a foreign state," where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2). The respondents in this action are citizens of foreign states.  Accordingly, to the extent that the partners or members of the petitioners are not citizens or subjects of foreign states, this Court has original jurisdiction over this action.

### A.    Citizenship of Respondents

14.    Respondent GTI is organized under the laws of Brazil with its principal place of business in São Paulo, Brazil.

15.    Respondent ICC is organized under the laws of France with its Secretariat located in Paris, France.

### B.    Citizenship of Petitioners

16.    Petitioner MatlinPatterson Global Opportunities Partners II L.P. is a limited partnership organized under the laws of the State of Delaware with its principal place of business in the State of New York. (Petition ¶ 6.)

17.    Petitioner MatlinPatterson Global Opportunities Partners (Cayman) II L.P. is a limited partnership organized under the laws of the Cayman Islands with its principal place of business in the State of New York. (Petition ¶ 7.)

18.    Petitioner Volo Logistics LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New York. (Petition ¶ 8.)

19.    For purposes of diversity jurisdiction, a limited partnership has the citizenship of each of its general and limited partners. See Handelsman v. Bedford Village Assocs., Ltd., 213 F.3d 48, 51–52 (2d Cir. 2000). Likewise, a limited liability company has the citizenship of each of its members. See id.

20.    GTI has attempted, in good faith, to determine the partners and the members of each petitioner. Yet, GTI has been unable to conclusively identify the partners and the members of each petitioner or the citizenship of the partners and members of each petitioner. Therefore, pursuant to Rule 81.1 of the Local Rules of the United States District Court for the Southern District of New York, GTI states that the partners of MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson Global Opportunities Partners (Cayman) II L.P. and the members of Volo Logistics LLC are unknown. Further pursuant to Rule 81.1, petitioners must file a statement, which includes the identity and citizenship of each of the partners and members of each petitioner, with the clerk of the district court within twenty days of the removal of this action.

C.    **Amount in Controversy**

21.    "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Correspondent Servs. Corp. v. First Equities Corp. of Fla., 442 F.3d 767, 769 (2d Cir. 2006) (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). The Second Circuit has observed that "the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Id. (citation omitted).

6

22.    MP Funds seeks preliminary and permanent injunctions staying the ICC arbitration in which GTI seek a price adjustment of approximately R$164 million (Reais). (Petition at 9.)

23.    Upon information and belief, the value of the injury MP Funds seek to avert exceeds $75,000.

## IV.    Other Named Respondents

24.    Respondent ICC has informed GTI that it has not been served and it takes no position regarding the removal of this action to this Court.

## V.    Venue

25.    The United States District Court for the Southern District of New York is the district court to which this action may be removed, because it is the district "embracing the place where the action . . . is pending." 9 U.S.C. § 205; see also 28 U.S.C. § 1441.

## VI.    Notice of Removal

26.    GTI will promptly file the appropriate notice and a copy of this Notice of Removal with the county clerk of the Supreme Court of the State of New York, County of New York, as required by Section 205 of the FAA and Section 1446 of Title 28 of the United States Code.

7

VII.    **Conclusion**

WHEREFORE, GTI respectfully requests that this action proceed in this Court as an action properly removed to it, and wholly subject to, and without waiver of, any of GTI's procedural and substantive rights, including, but not limited to, its right to arbitration under the Agreement.

Dated:    New York, New York
          May 19, 2008

SHEARMAN & STERLING LLP

By: _____
    Brian H. Polovoy
    Henry Weisburg
    Paula Howell

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
hweisburg@shearman.com

Attorneys for Respondent
GTI S.A.

8

EXHIBIT A

At the Ex-Parte Office at the
Supreme Court of the State of
New York, held in and for the
County of New York on the ___
day of April, 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

In the matter of the application of MatlinPatterson
Global Opportunities Partners II L.P., MatlinPatterson
Global Opportunities Partners (Cayman) II L.P. and
Volo Logistics LLC for a temporary restraining order
and preliminary injunction in the special proceeding
pending in the Supreme Court of the State of New
York, County of New York entitled:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                      Petitioners,

          v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                      Respondents.

Index No.

**PETITION TO STAY
ARBITRATION
PURSUANT TO
ARTICLE 75 OF THE CPLR**

---

Petitioners MatlinPatterson Global Opportunities Partners II L.P. and MatlinPatterson

Global Opportunities Partners (Cayman) II L.P. (together, the "MP Funds") and Volo

Logistics LLC ("Volo") (together, the MP Funds and Volo shall be referred to as

"petitioners"), by their attorneys, Bracewell & Giuliani LLP, for their Petition to Stay

Arbitration, hereby allege as follows:

## INTRODUCTION

1.      On or about March 28, 2007, Respondent GTI S.A. ("GTI"), Varig Logistica

S.A. ("VarigLog") and Volo do Brasil S.A. ("VDB") executed a Purchase and Sale

Agreement (the "Agreement") pursuant to which VarigLog and VDB agreed to sell to GTI all

of their shares of VRG Linhas Aereas S.A. ("VRG"), a Brazilian passenger airline.

2.      The Agreement was signed by VarigLog, VDB, VRG, GTI and GTI's parent

company, Gol Linhas Aereas Inteligentes S.A. ("GOL").  (A true and correct copy of the

Agreement, as translated from Portuguese, is attached as Exhibit ("Ex.") A).[1]

3.      Petitioners MP Funds and Volo were not signatories to the Agreement.

4.      Months after the Agreement was executed, a dispute allegedly arose among

GTI, VarigLog and VDB concerning certain post-closing adjustments.  GTI thus commenced

an arbitration in Sao Paulo, Brazil, under the auspices of Respondent ICC International Court

of Arbitration ("ICC"), Arbitration No. 15372/JRF (the "Arbitration").  (A true and correct

copy of GTI's Request for Arbitration, as translated from Portuguese, is attached as Ex. B.)

GTI's Request for Arbitration names as respondents not only VarigLog and VDB -- GTI's

counterparties to the Agreement -- but also the MP Funds and Volo.  Petitioners, however,

are not signatories to the Agreement, did not agree to be bound by the Agreement and did not

agree to arbitrate (or be parties to) any dispute arising out of the Agreement.  Petitioners,

therefore, are not proper parties to the Arbitration.

5.      Accordingly, pursuant to Article 75 of the New York Civil Practice Law and

Rules ("CPLR"), petitioners request a stay of the Arbitration against them pending the

resolution of this petition.

PARTIES

6.       Petitioner MatlinPatterson Global Opportunities Partners II L.P. is a limited partnership organized under the laws of the State of Delaware having its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York, 10022.

7.       Petitioner MatlinPatterson Global Opportunities Partners (Cayman) II L.P. is a limited partnership organized under the laws of the Cayman Islands having its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York, 10022.

8.       Petitioner Volo is a limited liability company organized under the laws of the State of Delaware having its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York, 10022.

9.       Upon information and belief, Respondent GTI is a Brazilian corporation having its principal place of business at Rua Tamoios, No. 246, Jardim Aeroporto, Sao Paulo, Brazil.

10.      Upon information and belief, Respondent ICC is an international organization with a New York office at 1212 Avenue of the Americas, New York, New York, 10036.

JURISDICTION AND VENUE

11.      This action arises under Article 75 of the CPLR and the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

12.      Venue is proper in this county under CPLR § 7502(a)(ii).

---

[1]   Exhibits A and B, referenced herein, are certified translations of the original Portuguese documents. The exhibits are attached to the Affidavit of Lawrence M. Teitelbaum that is being filed contemporaneously herewith.

## FACTS ENTITLING PETITIONER TO RELIEF

A.    The Relationship Among The Relevant Entities

13.    The MP Funds hold and invest certain investment capital of, *inter alia*, governmental institutions, universities, pension funds and other public and private entities and individuals. The MP Funds are advised by MatlinPatterson Global Advisers LLC ("MatlinPatterson").

14.    The MP Funds indirectly wholly own Volo as an investment subsidiary.

15.    At the time that GTI entered into the Agreement with VDB and VarigLog, Volo owned 60% of VDB's capital stock, but only 20% of VDB's voting stock. VDB, in turn, wholly-owned VarigLog. VarigLog owned more than 99% of VRG, and VDB owned the remainder of VRG.

B.    Petitioners Are Not Parties To The Agreement

16.    GTI has alleged that, in early 2007, it "was approached, in New York, by respondents [petitioners in this proceeding in New York], which presented them with an offer for GTI to purchase all shares of [VRG]." Ex. B ¶ 1. GTI has further alleged that, "[f]rom then on, all discussions, negotiations and meetings took place with the representatives of [petitioners] . . . ." Ex. B ¶ 1.

17.    On or about March 28, 2007, the negotiations culminated with the execution of the Agreement, pursuant to which VarigLog and VDB agreed to sell to GTI a collective total of 122,958,198 class A common shares, 30,739,549 class B common shares and 153,697,746 preferred shares of VRG in exchange for the Brazilian currency equivalent of $275 million. Ex. A. The signatories to the Agreement were VarigLog, VDB, VRG, GTI and GTI's parent company, GOL.

18.    Petitioners were not signatories to the Agreement.

19.    Among other things, the Agreement provided that a price adjustment be made within 180 days of the sale based upon an updated balance sheet of VRG that would be prepared by PriceWaterhouseCoopers ("PWC"). Ex. A, Clauses 5.1, 5.1.1. If there was a positive difference between the balance sheet prepared at the time of the Agreement and the updated balance sheet, GTI would pay the difference to VarigLog. Ex. A, Clause 5.2(a). Conversely, if there was a negative difference between the old and new balance sheets, the difference would be paid by VarigLog to GTI. Ex. A, Clause 5.2(b).

20.    GTI later sought from VarigLog and VDB a price adjustment pursuant to Clause 5.2 of the Agreement. That issue forms the basis for the Arbitration commenced by GTI before the ICC.

C.    GTI Files A Request For Arbitration

21.    The Agreement contains an arbitration clause that provides, among other things:

> Clause 14.1 – All the disputes arising out of or related to this Agreement included, among others, those involving its validity, effectiveness, violation, interpretation, expiration, termination and related matters, shall be settled by arbitration pursuant to the provisions in Law 9307/96 ("Arbitration Law"), in accordance with the below stipulated conditions.
>
> Clause 14.2 – The dispute shall be submitted to the CCI ("CCI"), pursuant to its Regulation ("Regulation") in effect on the date the arbitration request is filed. . . .
>
> Clause 14.6 – This Agreement shall be construed and governed by the Brazilian laws, and the Arbitration Panel shall decide the dispute and litigation in accordance with the Brazilian laws, without taking into consideration any international private law rule which may cause the laws of any other country or jurisdiction than Brazil to be applicable.

22.    On or about December 27, 2007, GTI submitted its Request for Arbitration to the ICC. The Request for Arbitration alleges that, on March 28, 2007, VarigLog and VDB

"executed an Agreement with GTI whereby they sold the latter all VRG shares for the total price" of $275 million. Ex. B ¶ 4.

23.    The Request for Arbitration further alleges that "[v]arious controversial points emerged" with respect to the price adjustment, and thus requests that, "given the impossibility of making such price adjustment as contractually provided for," the ICC "settle the divergences between" the balance sheets and "determine the price adjustment amount provided for in [the Agreement]." Ex. B ¶¶ 7, 10, 17.

24.    The Request for Arbitration does not allege, nor could it, that the MP Funds or Volo were signatories to the Agreement. Nevertheless, GTI named the MP Funds and Volo as respondents in the Arbitration.

D.    The MP Funds And Volo Object To Arbitration

25.    The Arbitration is in its earliest stages. Arbitrators have not yet been appointed or empanelled.

26.    Petitioners have presented to the ICC an objection to being named as respondents to the Arbitration because they are not parties to the underlying Agreement. The ICC, however, has deferred a decision on that issue until the arbitrators are appointed and, instead, has set a deadline of April 25, 2008, for petitioners to answer the Request for Arbitration.

27.    With the date for answering the Request for Arbitration approaching, petitioners now seek to enjoin the Arbitration from proceeding as against them.

E.    The MP Funds And Volo Are Likely To Succeed On The Merits

28.    Petitioners are not signatories to the Agreement. GTI acknowledges as much.

29.    GTI has not, and cannot, allege facts sufficient to support a veil piercing or alter ego argument -- i.e., that the MP Funds and Volo were somehow the alter egos of VDB and VarigLog at the time the Agreement was executed.

30.    Indeed, in July 2007, Volo commenced litigations against VDB and VarigLog in Brazil, New York and Switzerland.  VDB and VarigLog have commenced numerous actions against Volo in Brazil.  Thus, far from being in control of VDB and VarigLog, Volo has been litigating against VarigLog and VDB in three separate countries, including an action that was filed in this Court based on VDB's and VarigLog's default on eight loans from Volo (and a related entity) totaling approximately $88 million.  See Volo v. VarigLog, Index No. 602536/07 (Honorable Richard B. Lowe III).

31.    There is simply no basis for the suggestion that the MP Funds and Volo, which controlled only 20% of the voting stock of VDB, somehow controlled VDB and VarigLog when they entered into the Agreement.

F.    Irreparable Injury To The MP Funds And Volo

32.    Petitioners are not parties to the Agreement and have never agreed to arbitrate any dispute with GTI relating to the Agreement.  Nevertheless, GTI named petitioners as parties to the Arbitration.

33.    In the absence of an immediate stay of the Arbitration, petitioners will suffer irreparable injury by having to incur the costs and expenses associated with participating in the Arbitration.  This burden would be exacerbated by the fact that the Arbitration will take place in Brazil, that every aspect of the arbitration is to be conducted in Portuguese, and that it will be governed by the laws of Brazil.  Ex. A, Clauses 14.3; 14.6.  Petitioners will not be able to recover the expenses or lost time and effort defending against GTI's claims in the Arbitration should this Court later stay the Arbitration as against petitioners.

34.    Petitioners, moreover, will suffer irreparable harm if they are required to proceed with the Arbitration in Brazil while this proceeding is pending. Petitioners' answers to the Request for Arbitration must be filed on or before April 25, 2008. If petitioners refuse or fail to file their answers, the ICC Rules of Arbitration provide that "the arbitration shall proceed notwithstanding such refusal or failure." See ICC Rules of Arbitration, Art. 6(3). Petitioners thus would risk entry of an unfavorable award by default. If, on the other hand, petitioners file answers, they may be deemed to have "participated in the arbitration" and thus may be precluded from obtaining a stay of arbitration from this Court. Petitioners should not be left with this "Catch 22."

G.    The Balance Of Hardships

35.    The balance of hardships weighs in petitioners' favor.

36.    As noted above, in the absence of an injunction, petitioners will be faced with two troubling alternatives: (a) file answers in the Arbitration (in which case they will not only incur costs and expenses that may not be recoverable at a later date, but may also be deemed to have "participated in the arbitration," rendering a stay from this Court unavailable under § 7503(b)), or (b) refuse to file answers in the Arbitration (in which case the arbitration will proceed without petitioners, leaving the prospect of having a default award entered against them).

37.    GTI, by contrast, will suffer no harm if the Court stays the Arbitration against petitioners. GTI may continue to pursue its claims against the actual signatories to the Agreement — i.e., VarigLog and VDB. Or, alternatively, GTI may request that the Arbitration be stayed in its entirety pending this Court's determination of this petition for a permanent stay.

AS AND FOR PETITIONERS' CAUSE OF ACTION
(Stay Of Arbitration Under CPLR § 7503(b))

38.     Petitioners repeat and reallege each and every allegation in paragraphs 1 through 37 of this Petition.

39.     The MP Funds and Volo have never agreed, in writing or otherwise, to arbitrate any dispute with GTI related to the Agreement.

40.     Thus, no valid agreement exists between the MP Funds, Volo and GTI that would make petitioners proper parties to the Arbitration that GTI commenced before the ICC.

41.     As such, this Court should stay the Arbitration by GTI against the MP Funds or Volo.

WHEREFORE, Petitioners MP Funds and Volo demand a judgment against GTI, and seek an order:

(i)     Staying the Arbitration in its entirety pending the resolution of this Petition;

(ii)     Enjoining GTI, its agents, servants, officers, employees, and all those acting under its control and/or on its behalf and/or in connection with it, preliminarily and permanently, from pursuing the Arbitration with the MP Funds and Volo as respondents;

(iii)     Enjoining the ICC, its agents, servants, officers, employees, and all those acting under its control and/or on its behalf and/or in connection with it, preliminarily and permanently, from pursuing the Arbitration with the MP Funds and Volo as respondents;

(iv)     Granting petitioners their costs, disbursements, expenses and attorney's fees in this proceeding; and

(v)     Granting petitioners such other relief as this Court deems fair, just and proper.

Dated: New York, New York
        April 17, 2008

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: _____
        Kenneth A. Caruso
        A Member of the Firm
        1177 Avenue of the Americas
        New York, New York  10036
        (212) 508-6100

Attorneys for Petitioners

Of Counsel:
        Kenneth A. Caruso
        Jeffrey I. Wasserman
        Daniel S. Meyers

EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

North Partners Global Opportunities
Partner II LP et al.

v.

GTI S.A. et al.

INDIVIDUAL ASSIGNMENT PART 23

~~STIPULATION~~

INDEX NO. 08- 601164

MOTION CALENDAR NO.

DATE 4/13/08

~~IT IS HEREBY STIPULATED AND AGREED by and between the below-named attorney(s) as follows:~~

Petitioners hereby withdraw their renewed
prior to shareholder, without prejudice.

Attorney for ~~Plaintiff~~ Petitioners
JEFFREY I. WASSERMAN
~~Attorney for Defendant~~ Bracewell & Giuliani LLP

Date: 4/1/

So Ordered.

~~Attorney for Defendant~~

ENTER: _____
J.S.C.

SC-8G (rev 2/66)

EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------

In the matter of the application of:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

                              Petitioners,

              v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                              Respondents.

---------------------------------------------------------------

Index No.  601164/2008

**NOTICE OF PETITION**

 

 

**PLEASE TAKE NOTICE** that, upon the annexed petition of MatlinPatterson Global Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners (Cayman) II L.P. and Volo Logistics LLC ("Petitioners"), dated April 17, 2008, the Affidavit of Lawrence M. Teitelbaum, dated April 17, 2008, the exhibits thereto, and all prior pleadings, papers and proceedings herein, an application pursuant to CPLR § 7503(b) will be made at the Motion Submission Part, Room 130, 60 Centre Street, New York, New York 10007, on May 30, 2008, at 9:30 a.m., or as soon thereafter as counsel may be heard, for a judgment staying the arbitration filed by Respondent GTI S.A. against Petitioners before Respondent The ICC International Court of Arbitration of The International Chamber of Commerce, and for such other and further relief as may be just and proper.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR § 403(b), a demand is hereby made for the service of an answer and supporting affidavits, if any, at least seven

days before the aforesaid date of hearing, as this petition is served at least twelve days before

such time.

Dated: New York, New York
       May 9, 2007

                                        BRACEWELL & GIULIANI LLP

                                        By: _____
                                             Jeffrey L. Wasserman
                                        1177 Avenue of the Americas, 19th Floor
                                        New York, New York  10036-2714
                                        (212) 508-6100

                                        Attorneys for Petitioners

To:

Brian H. Polovoy, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York, 10022
*Attorneys for Respondent G.T.I. S.A.*

The ICC International Court of Arbitration
of the International Chamber of Commerce
Attn: Josefa Sicard-Mirabal
Director, Arbitration and ADR, North America
c/o US Council for International Business
1212 Avenue of the Americas
New York, NY 10036
*Respondent*

EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK



In the matter of the application of:

MATLINPATTERSON GLOBAL OPPORTUNITIES
PARTNERS II L.P., MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS (CAYMAN) II L.P.
and VOLO LOGISTICS LLC,

Index No. 601164/2008

                                        Petitioners,

**NOTICE OF MOTION
FOR PRELIMINARY
INJUNCTION**

                    v.

GTI S.A. and THE ICC INTERNATIONAL
COURT OF ARBITRATION OF THE
INTERNATIONAL CHAMBER OF COMMERCE,

                                        Respondents.

         **PLEASE TAKE NOTICE** that, upon the annexed affirmation of David A. Shargel,

dated May 8, 2008, the affidavit of Lawrence M. Teitelbaum, dated April 17, 2008, and the

exhibits thereto, the accompanying Memorandum of Law in Support of Motion For a

Preliminary Injunction Pending Determination of Petition to Stay Arbitration, dated May 8,

2008, and all the prior pleadings, papers and proceedings herein, petitioners MatlinPatterson

Global Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners

(Cayman) II L.P. and Volo Logistics LLC ("Petitioners"), will move this Court, pursuant to

CPLR § 6301 and CPLR Rule 406, at the IAS Motion Submission Park, Room 130, 60

Centre Street, New York, New York 10007, on May 30, 2008, at 9:30 a.m., or as soon

thereafter as counsel may be heard, for an order granting Petitioners' motion for a preliminary

injunction staying the arbitration filed by Respondent GTI S.A. against Petitioners before

Respondent The ICC International Court of Arbitration of The International Chamber of

Commerce pending final determination of Petitioners' petition to stay arbitration pursuant to

CPLR § 7503, and for such other and further relief as may be just and proper.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR Rule 2214(b),

answering papers and any notice of cross-motion, with supporting papers, if any, must be

served at least seven days before the return date.

Dated:  New York, New York
        May 9, 2007


                                        BRACEWELL & GIULIANI LLP

                                        By: _____
                                            Jeffrey I. Wasserman
                                            1177 Avenue of the Americas, 19th Floor
                                            New York, New York  10036-2714
                                            (212) 508-6100

                                        Attorneys for Petitioners


To:

Brian H. Polovoy, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York, 10022
*Attorneys for Respondent G.T.I. S.A.*

The ICC International Court of Arbitration
  of the International Chamber of Commerce
Attn:  Josefa Sicard-Mirabal
Director, Arbitration and ADR, North America
c/o US Council for International Business
1212 Avenue of the Americas
New York, NY 10036
*Respondent*

NEWYORK\25892.3

## AFFIRMATION OF SERVICE

I, Robert L. Whitener, hereby affirm under penalty of perjury that on May 20, 2008, I caused a true and correct copy of the Notice of Removal to the United States District Court for the Southern District of New York to be served by hand upon:

Kenneth A. Caruso
Jeffrey I. Wasserman
Daniel S. Meyers
BRACEWELL & GIULIANI LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 508-6100

Attorneys for Petitioners
MatlinPatterson Global Opportunities Partners II L.P.,
MatlinPatterson Global Opportunities Partners (Cayman) II L.P., and
Volo Logistics LLC

Dated:     New York, New York
           May 20, 2008

Robert L. Whitener

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
Index No. 601164/08

MatlinPatterson Global Opportunities Partners
II L.P., MatlinPatterson Global Opportunities
Partners (Cayman) II L.P., and Volo Logistics
LLC,

                              Petitioners,

              v.

GTI S.A. and The International Court of Arbitration
of the International Chamber of Commerce,

                              Respondents.

**NOTICE OF REMOVAL TO THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT
OF NEW YORK**

SHEARMAN & STERLING LLP
**Attorneys for Respondent GTI S.A.**
599 LEXINGTON AVENUE
NEW YORK, N.Y. 10022-6069
(212) 848-4000

NEW YORK
COUNTY CLERK'S OFFICE
MAY 20 2008
NOT COMPARED
WITH COPY FILE